# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYHEE HICKMAN and SHANAY BOLDEN, individually and on behalf of all persons similarly situated, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | No. 17-01038 |
| TL TRANSPORTATION, LLC, SCOTT FOREMAN, HERSCHEL LOWE, AMAZON.COM, LLC, and AMAZON LOGISTICS, INC., | : : : : : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                                                   **July 12, 2018**

## MEMORANDUM

This is a putative class action involving wage and hour claims asserted against a Maryland corporation and its individual corporate officers, both of whom reside in Maryland. Plaintiffs are employees who worked for Defendants as delivery associates in Pennsylvania [hereinafter the "Pennsylvania Plaintiffs"] and Maryland [hereinafter the "Maryland Plaintiffs"]. Plaintiffs filed this action in the Eastern District of Pennsylvania, which raises the question of whether Pennsylvania courts may assert personal jurisdiction over corporate officers who reside in Maryland. Those defendants have filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that their contacts with Pennsylvania are not related to Plaintiffs' claims arising under the Fair Labor Standards Act and state wage and hour laws. As to the Pennsylvania Plaintiffs, I disagree, and find both individual defendants' business-related contacts with this forum related to Plaintiffs' wage and hour claims, and their respective contacts sufficient to justify personal jurisdiction. The Maryland Plaintiffs' claim under their state's wage

1

and hour laws will be dismissed, however, because Plaintiffs have not shown these claims to be related to Foreman and Lowe's contacts with Pennsylvania.

## I. Pertinent Background

Plaintiff Tyhee Hickman worked as a delivery associate for Defendant TL Transportation [hereinafter "TLT"] in Pennsylvania from November 2016 through March 2017, and Plaintiff Shanay Bolden worked for TLT in Maryland from January 2016 through July 2016. TLT is a delivery service provider that operates under a contract with Defendant Amazon Logistics, Inc. In their work for TLT, Plaintiffs drove delivery trucks, and delivered packages from Amazon warehouses to its customers. Plaintiffs allege that they received payment for their work based on a "day rate," and argue that this compensation did not include overtime payment as required by the Fair Labor Standards Act [hereinafter "FLSA"], and applicable state wage and hour laws.

Defendant TLT is run by two individuals, Defendants Herschell Lowe and Scott Foreman. Foreman has been an owner and Vice President of TLT since spring 2015, and Lowe has served as President over the same period. Foreman and Lowe began their work for TLT by expanding the company's business within Maryland, Virginia, and New Jersey, and they later secured an agreement with Amazon to provide delivery services in Pennsylvania. They began doing business at their first Pennsylvania location in summer 2016, operating out of an Amazon warehouse in King of Prussia.

When TLT opened its King of Prussia operation, it already had a companywide pay policy in place. Plaintiffs allege that the payroll policy, which dated to July 2015, provided for a per-day rate of payment to delivery associates for each day that an associate worked, with the Maryland employees receiving a rate of $160 per day, and the Pennsylvania employees receiving $152 per day, regardless of the number of hours worked in a day. *See* Am. Compl. ¶ 58, ECF

No. 34. Foreman reports that he and Lowe made all business decisions, including payroll, human resources, and management decisions, in Maryland.

In connection with TLT's expansion, Foreman took regular trips to Pennsylvania, visiting each of the Pennsylvania facilities TLT opened. During these trips, he met with Amazon officials, TLT's managers, and held safety meetings. Foreman stated in his deposition: "I have site managers and a regional manager. So I'm just coming up to meet with them." Foreman Dep. 49:4–14, ECF No. 44-4.

Defendant Lowe also traveled to Pennsylvania in connection with his work for TLT, though less regularly than Foreman. He visited TLT's King of Prussia site on one occasion to observe a prospective safety consultant demonstrate a training session for TLT's delivery associates. On a separate occasion he conducted several interviews with prospective hires during a job fair held at a DoubleTree Hotel in Philadelphia, although the interviews were for positions as drivers at TLT's Swedesboro, New Jersey location.

Despite their business-related contacts with this forum, Defendants Foreman and Lowe contend that their work-related contacts with Pennsylvania were not sufficiently related to Plaintiffs' wage and hour claims to allow a court in Pennsylvania to assert personal jurisdiction over them. Defendants also argue that, because the Maryland Plaintiffs had no contact with Pennsylvania in connection with their work for TLT, Foreman and Lowe's contacts with Pennsylvania were not related to the Maryland Plaintiffs' wage and hour claims.

## II. Standard

In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Because I have not held an evidentiary hearing, Plaintiffs

3

need only establish a prima facie case for personal jurisdiction. *Id*. (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)); *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). To meet this burden, Plaintiffs must demonstrate "with reasonable particularity sufficient contacts between the defendant and the forum state." *See Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Plaintiffs are entitled to have their allegations presumed true, with all factual disputes construed in their favor. *See Miller Yacht*, 384 F.3d at 97.

### III. Discussion

Under Federal Rule 4(e), a federal court may "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l Bank*, 819 F.2d at 436. Pennsylvania's long-arm statute provides that the jurisdiction of state tribunals reaches "to the full extent allowed under the Constitution of the United States and may be based on the most minimum contact with [Pennsylvania] allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Thus, the question here is whether personal jurisdiction may be asserted without violation of the Defendants' due process rights, which protect "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 319 (1945)).

As the Third Circuit has summarized the inquiry, specific personal jurisdiction exists if a court finds that (1) the defendants purposefully directed their activities at the forum; (2) the litigation arose out of or is related to one or more of these activities; and (3) jurisdiction

4

comports with fair play and substantial justice. *O'Connor*, 496 F.3d at 317 (citing *Burger King Corp.*, 471 U.S. at 472; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). While a court must separately analyze personal jurisdiction for each claim, *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001), in this case Plaintiffs' state and federal wage and hour claims, as well as claims for unjust enrichment, are similar in structure and arise from the same factual contentions, and are therefore subject to the same personal jurisdiction analysis. The claims of the Pennsylvania and Maryland Plaintiffs must be analyzed separately, however, because each involves distinct facts.

**A. Personal Jurisdiction over Pennsylvania Plaintiffs' Claims**

Defendants Foreman and Lowe assert that jurisdiction is not proper because Plaintiffs' claims do not arise from or relate to either individual's contacts with Pennsylvania, largely relying on the theory that Plaintiffs' FLSA and Pennsylvania Minimum Wage Act (PMWA) claims concern managerial decisions that Foreman and Lowe made in Maryland. Defs.' Br. 10–11, ECF No. 35-1. I find this argument without merit. Both Foreman and Lowe's contacts with Pennsylvania involved their employees' working conditions, and thereby provide a sufficient basis for jurisdiction over all claims the Pennsylvania Plaintiffs have asserted against them.

**1. Defendant Foreman**

Defendant Foreman has had numerous contacts with Pennsylvania related to TLT's expansion into the state. In his deposition, Foreman stated that he traveled to Philadelphia over the last three years at least twenty times for both personal and business reasons. Foreman Dep. 47:1–13, ECF No. 44-4. His contacts with Pennsylvania involved workforce management. In July 2016, TLT decided to expand its operations into Pennsylvania, beginning with a location in King of Prussia, PA. In his Declaration, Foreman stated that TLT held a job fair event in King of

5

Prussia in July 2016, that he attended the event, and that he "conducted about less than twenty interviews for applicants who wanted to work for TL Transportation LLC at its facility in King of Prussia, Pennsylvania." During the interviews, Foreman "explained how the applicants would be paid," though he "did not negotiate over any issue relating to their pay or payroll." Foreman Decl. ¶¶ 12–15, ECF No. 35-2. In his deposition, Foreman verified that these statements were accurate, Foreman Dep. 58:14–60:1, and further elaborated that he told the applicants during the interviews that they would receive an hourly rate and "also earn a guarantee of two overtime hours a day," *id.* at 60:6–15.

Additionally, Foreman traveled to Pennsylvania to oversee the company's daily operations. He states: "In order to get the King of Prussia facility operating, I occasionally traveled to Pennsylvania for TL Transportation LLC purposes from my home in Maryland. On these trips, I usually meet with managers and other on-site personnel. I do not usually meet with drivers, though I will exchange pleasantries with drivers if I see them on my visit." Foreman Decl. ¶ 16. TLT's managers and supervisors "oversee day-to-day operations" at the company's Pennsylvania facilities. *Id.* ¶ 22. At one point, Foreman traveled to Pennsylvania to attend a meeting with a safety consultant to discuss a program for improving driver safety. Foreman Dep. 64:3–66:23. In addition to its King of Prussia facility, TLT expanded its operation to two additional locations in Pennsylvania, Langhorne and Port Richmond. Foreman stated that he visited all three facilities, *id.* at 47:20–48:11, and that, for a period of time, he visited the facilities about three to four times per month, *id.* at 48:23–49:7.

Foreman's contacts with Pennsylvania have been extensive. The question, then, is whether these contacts were sufficiently related to Plaintiffs' claims to satisfy the requirements of due process. Defendants note that Foreman's activity in Pennsylvania did not specifically

involve any decisions related to the company's wage and hour policies, and argue that this is fatal to personal jurisdiction in this case. But this is an unreasonably restrictive view, because specific jurisdiction can exist either if the claims "'arise out of *or relate to*' at least one of [the defendant's] activities" in the forum. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (emphasis added). The Third Circuit has "not laid down a specific rule" for evaluating relatedness, and has instead "approached each case individually," *Miller Yacht*, 384 F.3d at 100, but Defendants' position that only specific decisions in the forum concerning wages can suffice is flatly inconsistent with the controlling standard.

It is clear that Foreman's contacts with this forum are "related" to Plaintiffs' claims. Foreman traveled to Pennsylvania to "get the King of Prussia facility operating," and "met with managers and other on-site personnel" on these trips. Foreman Decl. ¶ 16; Foreman Dep. 64:5–20. His contacts with Pennsylvania were clearly important to TLT's efforts in opening its King of Prussia facility. Because Plaintiff Hickman's wage and hour claims concern work he performed from this facility, Foreman's on-site involvement in setting up the King of Prussia operation has a close causative connection to Hickman's claims.

Foreman's contacts with the forum also have a causal relationship to the damages arising from the alleged wage and hour violations. Foreman oversees managers, who in turn run TLT's day-to-day business in Philadelphia; his oversight ultimately relates to the schedules and hours that delivery associates work. Liability under the FLSA and the PMWA turns on the number of hours an employee has worked in a given week or day. *See* 29 U.S.C. § 207(a)(2) (providing that an employer may not have an employee work for more than forty hours in a week without overtime compensation). Indeed, in response to Plaintiffs' allegations, Defendants in part argue that the drivers did not "regularly" work more than forty hours per week, and as a result were not

7

entitled to overtime wages. *See, e.g.*, Def. TLT's Answer ¶ 55, ECF No. 55. Additionally, the value of damages in this case will rise or fall depending on the number of hours employees worked in excess of forty hours in a week.

Given Foreman's conduct within Pennsylvania, jurisdiction over Plaintiffs' wage and hour claims is both reasonably proportional to his contacts with the forum and a foreseeable outcome. When Foreman traveled to Pennsylvania to oversee TLT's operations, he benefitted from state laws that allowed the business to operate within the forum. And by meeting with supervisors and greeting employees during his visits to sites in Pennsylvania, Foreman engaged in conduct that furthered TLT's management of its workforce. That certainly "related to" the wages that TLT's workforce receives.

In short, I am persuaded that contacts with the forum that influence hiring, the conditions of employment, and the hours an employee works in a day or a week, are sufficiently related to wage and hour clams to give rise to personal jurisdiction in that forum.

The cases on which the defense relies do not persuade me to the contrary. Defendants cite *Sudofsky v. JDC Inc.*, 2003 WL 22358448 (E.D. Pa. 2003), a case in which an individual traveled to Pennsylvania a single time for business reasons. With little analysis, the court summarily concluded that "[o]nly violations of the [Pennsylvania Wage Payment and Collection Law] occurring within the Commonwealth are a proper basis for jurisdiction." *Id.* at *3 (citing only *Central Pennsylvania Teamsters Pension Fund v. Burten*, 634 F. Supp. 128, 132 (E.D. Pa. 1986)). *Burten*, in turn, misapplied Pennsylvania's long-arm statute. That statute, set forth in the Judicial Code, provides for jurisdiction either if the defendant's activities fall within one of ten enumerated categories, 42 Pa. Cons. Stat. § 5322(a), or, in the alternative, to the limits allowed by due process, § 5322(b). The Third Circuit has therefore held that a court need not look

8

beyond the constitutional question in deciding the existence of jurisdiction. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir. 1985). As stated by the Pennsylvania Superior Court, the enumerated categories in subsection (a) of the statute merely describe "circumstances which the legislature presumed to meet the minimum requisites of due process," *Scoggins v. Scoggins*, 555 A.2d 1314, 1319 (Pa. Super. 1989), rather than specific requirements that must be met. The *Burten* court, while ostensibly recognizing the breadth of subsection (b), proceeded to base its dismissal on the failure of the plaintiff to fit the defendant's contacts within a specific category of subsection (a), something not required by the statute. Consequently, these cases are of limited precedential value, particularly where the Third Circuit has made clear that jurisdiction is not limited to cases where a claim "arises out of" a defendant's contacts.

Defendants also cite *Pieretti v. Dent Enterprises, Inc.*, 2011 WL 6425333 (E.D. Pa. 2011). To the extent that it relies upon *Sudofsky* and *Burten*, I would be reluctant to follow it, but it is in any event readily distinguishable because the defendant there did not engage in any supervision or management of the workforce while in Pennsylvania, but only in marketing. *Id.* at *2.

Finally, I do not see the Supreme Court's decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), as having materially changed the law on specific jurisdiction or having any applicability here. In *Walden*, the Supreme Court found that the district court in Nevada did not have jurisdiction over a Drug Enforcement Administration agent who had no contacts whatsoever with Nevada, and whose allegedly unlawful conduct took place in Georgia. *Id*. at 1119–20. Not surprisingly, the Court rejected the expansionist theory that Nevada could assert jurisdiction over a defendant simply because he knew that the *plaintiffs* had significant connections to Nevada.

*Id.* at 1124–26. In my view, *Walden*, which was unanimous, is best understood as an error-correcting decision by the Court, not one that posited new limitations on specific jurisdiction.

I also find jurisdiction over Foreman consistent with "fair play and substantial justice." On this point, Defendants rely on the conclusory assertion that Pennsylvania has little interest in this dispute. *See* Defs.' Mot. 14. To the contrary, the state's interest is significant. After all, the Pennsylvania Plaintiffs are proceeding in part under the state's wage and hour laws, which Pennsylvania enacted to afford rights and guarantees to employees working in the state. The state has a significant interest in regulating local labor markets and the conduct of employers operating within Pennsylvania, as well as protecting workers from violations of federal and state wage standards. Additionally, Defendant Foreman will not face significant inconvenience in defending this litigation in Pennsylvania. As evidenced by his many trips to this forum, the Eastern District of Pennsylvania is easily accessible from Maryland.

**2. Defendant Lowe**

Admittedly, Defendant Lowe has had fewer contacts with Pennsylvania than Defendant Foreman. Yet, given his role in establishing TLT's pay policy and his position within the company, combined with his business-related contacts with Pennsylvania, Lowe could fairly anticipate defending himself in wage and hour litigation brought in this forum. As explained above, a top-ranking manager need only engage in management and supervisory activities in a forum to be subject to personal jurisdiction for wage and hour claims.

Lowe has had two significant contacts with Pennsylvania.[1] He traveled to Pennsylvania once in fall 2016 to interview a prospective safety consultant, and another time in spring 2016 to

---

[1] Though his Declaration mentioned numerous contacts with Pennsylvania, *see* Lowe Decl. ¶¶ 12, 16–17, ECF No. 35-3, Lowe retreated in his subsequent deposition, contending that he in fact traveled to Pennsylvania only two times for business related to TLT. In his deposition, in direct contradiction to his Declaration, Lowe stated that he did not travel to King of Prussia, PA, to attend a TLT job fair, *id.* at

10

interview drivers to work at a TLT location in Swedesboro, New Jersey. Lowe Dep. 66:6–69:5, 69:20–74:17, 74:24–76:22, ECF No. 44-5. Lowe admitted that he met with the consultant in Pennsylvania so he could watch the consultant present his training program to TLT employees and decide whether it was "useful." *See id.* at 69:20–71:19. In Pennsylvania, Lowe observed the consultant "going over safety tips" with "all of our drivers." *Id.* at 74:10–13. In the session, the consultant discussed various aspects of driver safety: "Following distance. Blind spots. Backing up. An array of safety things." *Id.* at 74:14–15. Lowe also indicated that TLT decided to hire the consultant. *Id.* at 72:2–3.

As with Foreman, these contacts are related to Plaintiffs' claims. Lowe entered Pennsylvania to observe how the consultant interacted with TLT's employees, specifically at the location in King of Prussia. According to Foreman, he and Lowe decided to hire a consultant because TLT "always strive[s] to be a better company and to put safer people on the road." Foreman Dep. 65:7–16. Additionally, Foreman stated that he had become aware through customer complaints of "a number of incidents with respect to unsafe driving," specifically in Pennsylvania. *Id.* at 65:18–66:13. Lowe's involvement in hiring a safety consultant furthered the company's expansion into Pennsylvania, as well as its efforts to regulate workplace conditions generally, and thus constitutes a significant contact that is related to Plaintiffs' wage and hour claims. Just one contact with a forum can give rise to personal jurisdiction if it "creates a 'substantial connection' with the forum." *Burger King*, 471 U.S. at 476 n.18; *Miller Yacht*, 384 F.3d at 96. Lowe's meeting in Pennsylvania was intended to produce lasting improvements in the company's performance, and alter the ways delivery associates carried out their work, thus

---

78:16–79:20, did not visit the King of Prussia location to meet with managers, and did not travel to Pennsylvania "once every couple of months" for work-related purposes, *id.* at 80:10–82:18. According to Lowe, when he read the Declaration before signing it, he mistakenly believed that the statement described both his conduct and Foreman's. *Id.* at 82:23–83:10.

establishing a meaningful connection with Pennsylvania. Because the meeting involved employee performance, I find that it relates to the claims in this case.

Lowe also entered Pennsylvania to hold interviews in Philadelphia in spring 2016 to further the expansion of TLT. Lowe held the interviews in a DoubleTree Hotel in Philadelphia, and met with five applicants, Lowe Dep. at 76:11–18, though he contended that he interviewed applicants for positions only in TLT's Swedesboro, New Jersey location, *id.* at 74:24–75:12, 76:19–22. But as Foreman acknowledged in his deposition, after TLT shuttered its Swedesboro facility, it transferred its New Jersey employees to Pennsylvania to staff its new King of Prussia location. Foreman Dep. 62:3–21. Lowe interviewed delivery associates for the Swedesboro location not long before the facility closed in November or December 2016. *See* Lowe Dep. 75:17–21. This illustrates the regional and interconnected nature of TLT's business. As the transfer of employees between locations indicates, an employee TLT hired to work in Swedesboro, roughly twenty-five miles away from Philadelphia, and a little over thirty miles from King of Prussia, could later be moved to a Pennsylvania location. In this respect, the interviews Lowe conducted in this forum are better understood as furthering the expansion of TLT's workforce within the Delaware Valley metropolitan region, lending additional support to finding Lowe's contacts related to the Pennsylvania Plaintiffs' wage and hour claims.

Defendant Lowe's role in formulating the company's wage policy further justifies personal jurisdiction. Lowe admitted that he was involved in deciding the pay rate the delivery associates received. Lowe Dep. 53:24–54:6. Lowe was also involved in communicating with Amazon about expanding into Pennsylvania, signed a "work order" agreeing to provide delivery services for Amazon in Pennsylvania, and decided with Foreman on the locations TLT would open in the state. *Id.* at 31:23–37:6. Though Lowe and Foreman developed and instituted the

12

pay policy before TLT decided to expand its operations into Pennsylvania, they directed the policy at employees in the state by opening Pennsylvania facilities and hiring delivery associates at the new locations. *See* Foreman Dep. 14:20–16:20; Foreman Decl. ¶ 14. When Lowe entered this forum, he did so to support the expansion of TLT's business, which was subject to the pay policies he designed.

As a TLT executive, Lowe benefited from the company's expansion into the state, and he entered the forum in furtherance of that interest. I thus find jurisdiction over Lowe proportional to his contacts with Pennsylvania, and that he could fairly anticipate defending himself against wage and hour litigation initiated by Pennsylvania employees.

For the same reasons set forth above, jurisdiction over Defendant Lowe would also comport with fair play and substantial justice. Lowe would not be unduly inconvenienced by defending himself in this forum. I therefore conclude that Lowe is subject to personal jurisdiction in this action.

**B. Personal Jurisdiction over the Maryland Plaintiffs' Claims**

Relying on *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), Defendants Foreman and Lowe further argue that this court does not have personal jurisdiction over them for the Maryland Plaintiffs' claim arising under the Maryland Wage and Hour Law in Count III. *See* Defs.' Br. 13, ECF No. 35-1; Defs.' Reply 6, ECF No. 48.

In *Bristol-Myers*, the Supreme Court considered whether a California state court could exercise specific personal jurisdiction over nonresident plaintiffs' products liability claims. 137 S. Ct. at 1777. Nonresident plaintiffs had joined California residents in asserting that a pharmaceutical product produced by the defendant had harmed their health. While the Court recognized that the California court could exercise personal jurisdiction over the *resident*

13

plaintiffs' claims, it held that California tribunals could not exercise jurisdiction over the nonresidents' claims. The Court observed that the "nonresident plaintiffs did not allege that they obtained [defendant's product] through California physicians or from any other California source; nor did they claim that they were injured by [the drug] or were treated for their injuries in California." *Id.* at 1778. As the Court explained, for a "state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* at 1780. Because the nonresident plaintiffs' relationship with the defendant involved no contact or conduct that occurred in California, the Court reasoned that the lack of "connection between the forum and the specific claims at issue" divested the state court of jurisdiction over their claims. *Id.* at 1781.

Applying this reasoning, Defendants argue that Bolden has not alleged any violations of the Maryland Wage and Hour Law that related to or arose from Defendants Foreman and Lowe's contacts with Pennsylvania. Indeed, the First Amended Complaint states that Plaintiff Bolden is a Maryland citizen, resides in Columbia, Maryland, and worked for Defendants at their Lansdowne, Maryland location "as a Delivery Associate in Maryland between January 13, 2016 and July 19, 2016." Am. Compl. ¶¶ 5, 33, ECF No. 34. She asserts her claim in Count III on behalf of a putative class consisting of "[a]ll current and former Delivery Associates employed by Defendants who performed work in Maryland during the applicable limitations period . . . ." *Id.* ¶ 19. Nowhere does the Complaint suggest that Bolden had contacts with Pennsylvania in connection with her work for Defendants.

More importantly, Plaintiffs do not appear to have contested Defendants' arguments for applying *Bristol-Myers* to the claim in Count III. Plaintiffs have not presented any reason for distinguishing *Bristol-Myers* from this action, and have otherwise asserted no arguments for

14

finding their state claim related to the contacts giving rise to jurisdiction in Pennsylvania. I will therefore dismiss Count III as to Defendants Foreman and Lowe.[2]

**C. Venue**

Defendants have also moved to dismiss Plaintiffs' claims against Foreman and Lowe under Federal Rule of Civil Procedure 12(b)(3), arguing that venue is improper as to the two individual defendants. This argument lacks merit. The basis for venue here is 28 U.S.C. § 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Defendants contend that because they executed decisions related to TLT's pay policies in Maryland, a "substantial portion" of the events giving rise to Plaintiffs' claims did not occur in the Eastern District of Pennsylvania. But the Pennsylvania Plaintiffs' claims arise from work they performed based out of TLT's Pennsylvania facilities, all of which are located in this district. This by itself clearly establishes that a "substantial part of the events or omissions giving rise to the claim" occurred in this venue.

Defendants rely upon *Shay v. Sight & Sound Systems, Inc.*, 668 F. Supp. 2d 80, 84 (D.D.C. 2009), a FLSA action in which the plaintiffs' chosen venue was rejected as improper. But the court's venue analysis in *Shay* hinged on its finding that the plaintiffs had failed to

---

[2] To be clear, Defendants have not suggested that *Bristol-Myers* requires dismissal of Plaintiff Bolden's FLSA claims. There are also compelling reasons to doubt that the reasoning in *Bristol-Myers* applies to the claims of putative class members who worked for TLT in Maryland. Unlike the mass tort action arising under state law in *Bristol-Myers*, this is an opt-in class action arising under a federal statute that applies to all fifty states. Furthermore, the Supreme Court in *Bristol-Myers* specifically reserved for another day the question of "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1784. Based on these distinctions, many district courts faced with this issue have convincingly found that *Bristol-Myers* does not prevent a plaintiff in federal court from asserting federal claims on behalf of a nationwide class. *See, e.g.*, *Swamy v. Title Source, Inc.*, 2017 WL 5196780, at *2 (N.D. Cal. 2017) (finding that "*Bristol-Myers* does not apply to divest courts of personal jurisdiction in FLSA collective actions"); *Chernus v. Logitech, Inc.*, 2018 WL 1981481, at *7 (D.N.J. 2018) ("[M]ost of the courts that have encountered this issue have found that *Bristol-Myers* does not apply in the federal class action context.").

provide "any specific facts to show that they performed work in the [venue.]" *Id.* Here, in contrast, the Pennsylvania Plaintiffs specifically allege that they performed work in this venue. Furthermore, as Plaintiffs rightly note, another District of Columbia court later declined to follow *Shay* in a FLSA case similar to this action, *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 30 (D.D.C. 2013). There, the court found that venue was proper where the employees performed a "substantial percentage" of their work within the venue, even though the employer made all company policy decisions in another state. *Id.*[3]

Because a substantial part of the events giving rise to Plaintiffs' claims in Counts I, II, and IV occurred in the Eastern District of Pennsylvania, Defendants' Motion to Dismiss for Lack of Venue is denied.

## IV. Conclusion

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is granted only as to the Maryland Plaintiffs' claim in Count III against Defendants Foreman and Lowe. The Maryland Plaintiffs nonetheless remain parties to this action, as Defendants TLT, Amazon Logistics, and Amazon.com have not raised any challenges to jurisdiction. Defendants' Motions are denied in all other respects.

/s/ Gerald Austin McHugh
United States District Judge

---

[3] As to Plaintiffs' unjust enrichment claim in Count IV, Defendants seem to imply that venue is improper because it would be based solely on the fact that Plaintiffs experienced an economic harm within the forum, and argue that this harm alone is an insufficient basis for venue. See Defs.' Br. 16, ECF No. 35-1 (citing *Loeb v. Bank of Am.*, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003) and *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994)). But this ignores the fact that Plaintiffs' unjust enrichment claims also arise from facts relating to their work in Pennsylvania.

16