# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYHEE HICKMAN and SHANAY BOLDEN, individually and on behalf of all persons similarly situated, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | No. 17-1038 |
| TL TRANSPORTATION, LLC, SCOTT FOREMAN, HERSCHEL LOWE, AMAZON.COM, LLC, and AMAZON LOGISTICS, INC., | : : : : : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                                            August 16, 2018

## MEMORANDUM

This is a wage and hour action brought by employees who received compensation in the form of a flat daily payment of $160, a rate that purportedly includes payment for two hours of overtime each day, regardless of whether overtime hours are worked. The case raises the question of whether federal and state wage and hour laws permit an employer to compensate its employees for overtime hours using an incremental payment of lump-sum premiums. I conclude that under the Fair Labor Standards Act and interpretive rules promulgated by the Department of Labor, Defendant TL Transportation ("TLT") is not entitled to credit its purported premiums towards the overtime hours owed to employees because overtime compensation must be specifically linked to the hours an employee actually works. Because Defendants compensated Plaintiffs using a day rate that did not lawfully compensate its employees for overtime, Plaintiffs' Motion will be granted.

## I. Pertinent Background

Plaintiffs Tyhee Hickman and Shanay Bolden, on behalf of themselves and a putative class of other TLT employees, have brought federal and state wage and hour claims against their former employer, Defendant TLT.[1] Asserting claims under the federal Fair Labor Standards Act (FLSA), the Pennsylvania Minimum Wage Act (PMWA), and the Maryland Wage and Hour Law (MWHL), Plaintiffs allege that Defendants failed to provide compensation for overtime hours they worked. Specifically, Plaintiffs allege that each shift they worked lasted ten or more hours, Am. Compl. ¶ 55, ECF No. 20, and that they received pay at a flat "day rate" of $160 without regard to the number of hours they worked each day, Am. Compl. ¶ 58.

In its Answer, Defendant TLT denies this allegation as stated, but elaborates: "At various points throughout their employment, Hickman and Bolden were paid a rate of $14.55 for eight hours of work and $21.82 for two hours of work (though the rates sometimes changed), which equaled $160.00 a day." Answer ¶ 58, ECF No. 34. Plaintiffs suggest that this statement amounts to an admission that Defendant's pay policy qualified as a "day rate" that did not include compensation for overtime hours owed to Plaintiffs under FLSA and applicable state wage and hour regulations.

Plaintiffs originally moved for judgment on the pleadings. After holding a hearing, I converted the Motion to one for summary judgment, notified the parties, and allowed the parties time to file supplemental exhibits and briefing. Order, ECF No. 69. In these submissions, Plaintiffs have produced a sample of Plaintiff Shanay Bolden's earnings statements, which

---

[1] The other defendants are Amazon.com, LLC, Amazon Logistics, Inc., Scott Foreman, and Herschel Lowe. Plaintiffs have joined the Amazon Defendants on the theory that Amazon and TLT are "joint employers." Am. Compl. ¶ 34, ECF No. 20. Plaintiffs have moved for Partial Judgment on the Pleadings only against Defendant TLT. Though not a party to this Motion, however, Amazon has demonstrated significant interest in this matter by participating vigorously in the oral argument held on this Motion. *See* Tr., ECF No. 76.

indicate that in some weeks she worked up to seven days. ECF No. 75-9. Plaintiffs have also submitted Defendant TLT's Response to Plaintiffs' First Set of Requests for Admissions, in which TLT admits that Plaintiff Hickman worked 41 hours and 19 minutes for the workweek ending November 5, 2016, and that in five different weeks Plaintiff Bolden worked between forty and forty-six hours. ECF No. 75-8.[2] Plaintiffs' supplemental filings now provide undisputed proof that they in fact did at times work over forty hours in a week during their employment with TLT.

## II. Controlling Standard

Because Plaintiffs' Motion has been converted to a Motion for Summary Judgment, the Motion will be evaluated under the standards of Federal Rule of Civil Procedure 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). *See also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

## III. Discussion

Plaintiffs contend that, as a matter of law, Defendant TLT's payment of a flat rate of $160 per day did not compensate employees for overtime hours they worked, as required under FLSA and state wage and hour laws. Defendants counter that, because the rate of $160 per day included two hours of pay at an overtime rate, this payment method fully complied with FLSA's mandates. Plaintiffs' Motion thus raises the question of whether Defendants may count these

---

[2] At oral argument, counsel for Defendants contended that there were unresolved factual issues. When pressed to identify those issues, counsel's only answer was that the record did not reflect that any overtime hours had been worked. Whereupon, counsel for Plaintiffs immediately produced Defendants' answers to requests for admissions conceding that overtime had in fact been worked, hence the conversion of the Motion to one for summary judgment pursuant to Rule 12(d). *See* Tr. 24:9–20, 26:18–28:23, ECF No. 76.

two hours of extra compensation towards the overtime payment admittedly owed to Plaintiffs for any hours worked in excess of forty hours in a week. The parties' briefs and exhibits make clear that this presents a pure question of law regarding FLSA's overtime requirements.

**A. Federal Wage and Hour Standards**

In its most basic terms, FLSA provides that an employer may not have an employee work for more than forty hours in a week without providing additional compensation for excess hours.[3] For work in excess of forty hours in a week, the employer must provide compensation at a rate of at least one and one-half times the "regular rate." *See* 29 U.S.C. § 207(a)(1).

FLSA itself does not set forth a formula for computing the regular rate, but the Department of Labor interprets the rate as a "rate per hour." This hourly rate is calculated by dividing all compensation an employee receives in a week, less any compensation that FLSA excludes from the regular rate, by the total number of hours the employee actually worked for the week. *See* 29 C.F.R. § 778.109. FLSA defines the "regular rate" as including "all remuneration for employment paid to . . . the employee," subject to the specific exclusions enumerated in 29 U.S.C. § 207(e). Relevant to this case, FLSA states that the "regular rate" does not include:

> extra compensation provided by a premium rate paid for certain hours worked by the employee in any day of workweek because such hours are hours worked in excess of eight in a day or in excess of [forty hours in a week] or in excess of the employee's normal working hours or regular working hours, as the case may be.

---

[3] This discussion focuses solely on FLSA's requirements, even though Plaintiffs also seek relief under the PMWA and the MWHL, because the state statutes mirror FLSA. As the Third Circuit and Pennsylvania courts have recognized, "When the PMWA 'substantially parallels' the FLSA, Pennsylvania and federal courts have used FLSA law for interpretative guidance because the statutes have similar purposes." *See Espinoza v. Atlas R.R. Constr., LLC*, 657 F. App'x 101, 105 (3d Cir. 2016) (quoting *Com. Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *aff'd* 859 A.2d 1253 (2004)). The same is true for the MWHL. *See Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003) ("The requirements under the MWHL mirror those of the federal law; as such, [the plaintiff's] claim under the MWHL stands or falls on the success of their claim under the FLSA.").

4

§ 207(e)(5).

Separately, FLSA also provides that when "extra compensation" is paid as described under subsection (e)(5), the payment "shall be creditable toward overtime compensation." § 207(h)(2). In other words, FLSA provides that if an employer pays an employee a premium that is excluded from the regular rate under subsection (e)(5), then the employer may count this premium towards the payment of overtime wages owed to an employee for hours worked in excess of forty hours.

Defendants read this section of the statute to mean that the purported overtime premium included in the $160 day rate qualifies as extra compensation as described in subsection (e)(5). They argue that, because subsection (e)(5) encompasses extra compensation paid both for hours worked over forty hours in a week, and for hours in excess of eight in a day, they are entitled to credit the two hours of purported overtime towards any overtime owed to Plaintiffs.

The Department of Labor, however, has interpreted the language of subsection (e)(5) differently. Under the DOL's rules, the analysis of whether a form of payment qualifies as an overtime premium hinges on whether the premium is paid based on the number of overtime hours *actually* worked. For example, if an employee works a "regular fixed number of hours" over forty hours each workweek, the rules state that the employer may pay the employee a "fixed sum in any such week for his overtime work, determined by multiplying his overtime rate by the number of overtime hours regularly worked." 29 C.F.R. § 778.309. A different rule applies when the number of overtime hours is not fixed. As the DOL rules state:

> A premium in the form of a lump sum which is paid for work performed during overtime hours *without regard to the number of overtime hours worked* does not qualify as an overtime premium even though the amount of money may be equal to or greater than the sum owed on a per hour basis.

5

29 C.F.R. § 778.310 (emphasis added).[4] Thus, if an employee's total hours fluctuate from week to week, an employer may use a lump sum payment to satisfy its overtime obligations to the employee only if the sum is based on the number of overtime hours actually worked.

These rules are entirely consistent with the language of § 207(e). Subsection (e)(5) applies to extra compensation paid for "*certain hours worked* by the employee in any day of workweek *because* such hours are hours worked in excess" of eight in a day or forty in a week. § 207(e)(5) (emphasis added). Congress's use of the precise term "certain hours," coupled with the past tense of the verb "worked," together with its use of the conjunction "because," denote that subsection (e)(5) excludes from the regular rate only premiums paid for hours that an employee in fact *has* worked, and not hours that the employee is merely anticipated to work. Under subsection (h)(2), this also means that an employer may credit a premium towards overtime owed to an employee only if it is paid in connection with hours the employee actually worked.

Finally, as noted above, the DOL rules spell out methods for computing an employee's regular rate. *See generally* 29 C.F.R. §§ 778.109–778.122. The rules provide that the regular rate "is determined by dividing [the employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. The DOL

---

[4] The DOL has separately provided an interpretation of the conditions under which the § 207(e)(5) exclusion applies to premiums paid for the hours an employee works in excess of eight in a day. Again, the DOL's standards require that the employer pay the premium based on hours actually worked in excess of eight hours. As the interpretive rules state, an employer may credit premiums paid for work exceeding eight hours in a day towards overtime owed to the employee, and exclude the premium from the regular rate, if this premium is paid pursuant to an employment contract, but only if "the payment of such contract overtime compensation is in fact contingent upon the employee's having worked in excess of 8 hours in a day . . . ." 29 C.F.R. § 778.202(a).

overtime rules also set forth a specific formula for computing the regular rate and overtime owed when an employee receives a "day rate":

> If the employee is paid a flat sum for a day's work or for doing a particular job, *without regard to the number of hours worked in the day or at the job*, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

29 C.F.R. § 778.112 (emphasis added). Thus, if an employee receives compensation in the form of a day rate, § 778.112 clarifies that the regular rate includes all compensation provided under the day rate, that the regular rate is then calculated by dividing this sum by the total hours worked in a week, and that the employer may not credit any portion of the day rate towards overtime premiums owed to an employee. This standard is fully consistent with the language of subsections (e)(5) and (h)(2), as well as § 778.310.

Because the DOL's rules are a reasonable interpretation of FLSA's wage and hour requirements, they are entitled to considerable deference. The Department of Labor has maintained regulations interpreting FLSA's overtime provisions since 1950. *See* Overtime Compensation, 15 Fed. Reg. 623 (Feb. 4, 1950) (to be codified at 29 C.F.R. pt. 778); Overtime Compensation, 30 Fed. Reg. 1076 (Feb. 2, 1965) (to be codified at 29 C.F.R. pt. 778) (reorganizing material in Part 778 and making "limited substantive revisions"). The DOL issued its rules soon after Congress amended FLSA in 1949 to define the term "regular rate," an amendment that introduced the rules currently codified in § 207(e). *See* Fair Labor Standards Amendments of 1949, Pub. L. No. 81-393, 63 Stat. 910 (1949). Considering that the DOL formalized its interpretive guidance in the Code of Federal Regulations, has maintained these rules for nearly seventy years, and is the agency charged under FLSA with administering and enforcing the statute, the Secretary's interpretation of the overtime requirements is entitled to full

7

deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See Barnhart v. Walton*, 535 U.S. 212, 222 (2002) (explaining that notice and comment rulemaking is not necessary for an agency interpretation to receive deference under *Chevron*); *Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 267 (5th Cir. 2000) (finding that Congress delegated authority to the Secretary of Labor to interpret the meaning of "regular rate" in § 207, and finding that the DOL's interpretation is entitled to *Chevron* deference); *Condo v. Sysco Corp.*, 1 F.3d 599, 604–5 (7th Cir. 1993) (applying *Chevron* analysis to another DOL rule interpreting FLSA's overtime provisions, 29 C.F.R. § 778.114, finding that Congress delegated interpretive authority to the DOL, and concluding that the rule is entitled to deference).

Furthermore, the DOL's interpretation of subsection (e)(5) advances Congress's objectives in enacting FLSA. In establishing federal wage and hour standards, Congress aimed both to "spread employment by placing financial pressure on the employer through the overtime pay requirement . . . ," and to "compensate employees for the burden of a workweek in excess of the hours fixed in the Act." *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944) (citing *Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 47 (1943)). The DOL's requirement that a premium be paid based on the number of hours actually worked furthers these objectives. As the DOL explains in support of the standard it adopted in § 778.310:

> If the rule were otherwise, an employer desiring to pay an employee a fixed salary regardless of the number of hours worked in excess of the applicable maximum hours standard could merely label as overtime pay a fixed portion of such salary sufficient to take care of compensation for the maximum number of hours that would be worked. The Congressional purpose to effectuate a maximum hours standard by placing a penalty upon the performance of excessive overtime work would thus be defeated. For this reason, where extra compensation is paid in the form of a lump sum for work performed in overtime hours, it must be included in the regular rate and may not be credited against statutory overtime compensation due.

29 C.F.R. § 778.310.  As this explanatory comment demonstrates, the DOL shaped its interpretive rules to further Congress's goal of using wage premiums as an incentive to reduce employees' overtime hours.  Read as a whole, the overtime provisions, in addition to implementing the plain language of the statute, ensure that an employer internalizes the cost of each hour of overtime an employee works in a week.

## B.  Defendants' Pay Policy

Applying these rules, it is clear that Defendants cannot credit the purported premiums included in their pay policy toward overtime payments owed to Plaintiffs.  The fundamental flaw with TLT's pay policy is that it does not obligate TLT to pay additional compensation for having an employee work more than forty hours in a given week.  Under TLT's system, an employee receives the same pay each day, even if unforeseen challenges require the employee to work more than ten hours in a day to complete a route.  An employee also receives the same rate each day even if the employee has already worked forty hours that week.  Under this system, TLT has no incentive to limit an employee's hours.  The pay policy allows TLT to schedule routes with little concern for the inconvenience an employee may experience in working an eleven or twelve hour day.  And most critically, in choosing between having one employee work five days in a week, or instead hiring another driver to work the fifth day, TLT's policy leaves no incentive for the company to choose the latter:  both options result in the same wage cost to the employer.  In sum, TLT's policy defeats two of FLSA's core purposes—reducing employee's overtime hours, and expanding the pool of available employment.

Under the standards established by § 207(e)(5) and 29 C.F.R. § 778.310, Defendants may not credit the two hours of overtime premiums paid each day towards the overtime actually owed to TLT's employees if the premiums are paid without regard to the number of overtime hours

9

worked. The record demonstrates that the purported overtime premiums had no connection to the number of overtime hours Plaintiffs actually worked. There is no dispute that Plaintiffs received a daily sum of $160 for their work. Defendant's Answer states: "At various points throughout their employment, Hickman and Bolden were paid a rate of $14.55 for eight hours of work and $21.82 for two hours of work (though the rates sometimes changed), which equaled $160.00 a day." Answer ¶ 58. *See also* Pls.' Supplemental Br., Ex. 2, ECF No. 75-3 (an undated letter from TLT regional manager Hugh Brinsfield explaining that Plaintiff Shanay Bolden was paid $14.55 for eight hours and $21.82 for two hours each day, totaling a "daily pay rate" of $160). A sample of Bolden's earnings statements offers further confirmation that Defendants used the pay rates they described. For the week ending March 19, 2016, Bolden received $814.8 for fifty-six "regular" hours and $302.55 for fourteen "overtime" hours, reflecting payment for seven days of work at $160 per day. In the week ending May 14, 2016, she received $465.60 for thirty-two "regular" hours and $174.60 for eight "overtime" hours, reflecting payment for four days of work at $160 per day. *See* Pls.' Supplemental Br., Ex. 8, ECF No. 75-9.

Bolden's earnings statements illustrate the disconnect between the number of overtime hours she actually worked in a week, and the purported overtime premiums she received. FLSA requires that overtime premiums be paid for hours actually worked in excess of forty in a week. But here, the pay scheme provides for overtime compensation based on the number of days worked, not the number of overtime hours actually worked. These payments are best characterized as an incremental series of lump-sum premiums paid over the course of a week. For example, in the week when she worked seven days, Bolden was owed thirty overtime hours, assuming she worked ten hours each day, as TLT "expected" employees to do. But she only received compensation at an "overtime" rate for fourteen hours of work, totaling $302.55, since

TLT's model awards premiums in increments of two hours per day.  As a result, Bolden received overtime payment for less than half of the thirty overtime hours that she actually worked.  On the other hand, for her forty-hour week, she received eight hours of overtime payment, even though she was owed no overtime for that week—that is, assuming she in fact worked ten hours per day, and nothing more.

Under some circumstances, subsections (e)(5) and (h)(2) also allow an employer to credit premiums paid for hours that an employee has actually worked in excess of eight in a day.  The record here, however, shows that the daily rate of $160, which includes the purported two hours of premium payment, was paid based on what TLT expected employees would work in excess of eight hours in a day, without regard to the number of hours TLT's employees actually worked in any given day.  As explained above, subsection (e)(5) excludes premium payments paid for "certain hours worked by the employee . . . because such hours are hours worked in excess of eight in a day."  This language suggests that the payment must be made based on the hours an employee actually worked—not based on the hours an employer may anticipate.  Here, the two hours of purported overtime incorporated in the flat rate were clearly paid without regard to the number of hours any employee worked in excess of eight hours in a day.

As TLT plainly stated in its "Welcom [sic] Aboard" letter, "Pay 160.00 per day based on 8 hrs regular and 2 hours overtime.  If you finish early you will be paid of [sic] entire day."  Pls.' Supplemental Br., Ex. 1, ECF No. 75-2.  This note suggests that TLT intended to pay an employee the full two hours of extra compensation even when an employee worked fewer than ten hours in a day.

The record also suggests that Plaintiffs often worked more than ten hours each day.  Though Defendants may have designed the pay policy to apply to a ten-hour day, Hickman states

11

that he worked more than ten hours each day delivering packages. Hickman Decl. ¶ 18, ECF No. 75-4. Indeed, he paints a picture of a work environment in which hours could at time be unpredictable, explaining that the volume of packages, the route provided by the company-supplied GPS device, and encounters with traffic required him to work over ten hours in a day to complete his deliveries. *Id.* ¶ 19. He arrived at work each day "around 6:00 a.m. to 6:30 a.m.," would attend a meeting with Amazon employees at 7:30 a.m., and would "generally return to the warehouse around 7:00 p.m." after completing his delivery route. *Id.* ¶¶ 10, 12, 22. Bolden states that she also worked more than ten hours per day, and that she "reported to work at 6:30 a.m. each day," and attended a "morning briefing" led by Amazon employees at 7:00 a.m., and would have to "stay out in route until each package had been delivered" if she had not "finished delivering packages by 4:30 p.m." Bolden Decl. ¶¶ 17–19, 24–25.

Defendants' Admissions, read in in conjunction with Plaintiff Bolden's earning statements, support Plaintiffs' Declarations. Defendants admitted that on the week ending May 14, 2016, Plaintiff Bolden "worked more than 40 hours and less than 46 hours . . . ." Def. TLT's Resp. to Pls.' First Set of Requests for Admissions 2, ECF No. 75-8. Despite having worked over forty hours that week, Bolden's earnings statement for that week shows that she received pay for four days of work at the flat rate of $160, consisting of thirty-two hours of "regular" pay, and eight hours of "overtime." *See* Pls.' Supplemental Br., Ex. 8, ECF No. 75-9. Thus, these facts suggest that, in addition to having no correlation to the number of overtime hours actually worked, Defendants' payment of two hours of purported premiums each day did not correspond with the number of hours in excess of eight hours Plaintiffs worked each day.

Defendants have offered no evidence calling these facts into question. At best, they argue that on two occasions, Plaintiff Hickman received an adjustment to his compensation

12

based on the number of hours worked. On one day, October 29, 2016, when he worked for twelve hours and sixteen minutes, TLT's records included a notation: "Pay 2 HRs OT." For December 11, 2016, a day when Hickman shared a route with another driver, TLT's records state, "Pay 1/2 Day." Foreman Decl., Ex. 1, ECF No. 74-1. But these two anomalies do nothing to call into question the broader picture established by the record. Plaintiffs' Declarations state that they generally worked days that varied in duration based on the obstacles they encountered along their routes, that they worked over ten hours in a day, and received a flat $160 for their work. And as indicated in Defendants' introductory letter to employees, an employee was entitled to a full day of pay if they worked less than a full ten hours. Thus, Defendants' two cited departures from the otherwise routinely applied standard $160 per day flat rate raise no real dispute as to whether its policy was to pay the daily rate without regard to the number of hours actually worked.

And most critically, even if TLT regularly adjusted pay based on the hours Plaintiffs worked in a day, DOL rules still do not allow Defendants to count the extra compensation towards overtime owed to Plaintiffs. In further interpretation of subsection 207(e)(5), the DOL provides in 29 C.F.R. § 778.202(a) that if an employment *contract* promises an employee a premium for work in excess of eight hours in a day, and the premium is contingent on the employee working more than eight hours, the employer may credit this premium towards overtime compensation owed to the employer. *See supra* note 2. This is the only DOL overtime rule that could possibly allow TLT to credit its purported premium payments towards overtime owed to Plaintiffs. But Defendants have offered no indication that Plaintiffs worked for TLT under such a contract, leaving no uncertainty in the record.

13

Under Defendants' pay policy, any purported overtime premiums issued to its employees were paid without regard to the number of overtime hours actually worked. Applying the DOL's rules interpreting subsections (e)(5) and (h)(2), TLT may not credit these premiums towards the overtime owed to its employees for work performed beyond forty hours in any given week. The payment of $160 each day also qualifies as a "day rate" under 29 C.F.R. § 778.112 because it was paid without regard to the number of hours Plaintiffs worked each day.[5]

Defendant's remaining arguments are unpersuasive. In their Supplemental Memorandum, Defendants rely primarily on "procedural" issues that supposedly should prevent this Court from granting Plaintiffs' Motion. Defendants state that although TLT did not move to dismiss, it purportedly preserved defenses relating to venue and personal jurisdiction that must be addressed before summary judgment. At this stage in the case, even if they are not waived, these previously undeveloped arguments are too weak to prevent me from granting Plaintiffs' Motion. I already considered and rejected these same arguments when raised by the individual Defendants. *See* Mem., ECF No. 72. TLT has merely rehashed these same arguments, which I will again reject.[6]

Finally, Defendants argue that a factual issue remains because it is unclear if their system of compensation involves a day rate. They do not, however, succeed either in coherently

---

[5] I note that Defendants place significant emphasis on an opinion from the Eastern District of Kentucky. *Adams v. Nature's Expressions Landscaping Inc.*, 2017 WL 4844560, at *7 (E.D. Ky. 2017). But aside from not having binding authority, *Adams* is hardly applicable to this case. The pay scheme in *Adams* involved an employment *contract* that promised overtime payment for hours worked in excess of eight in a day. Accordingly, the court had no reason to consider § 778.310, the overtime rule that is controlling in this case, and instead looked to § 778.202, the provision applying to overtime payments made pursuant to an employment contract.

[6] It bears mention that this case was filed in March 2017, and at the parties' request, I stayed the matter and granted three extensions to pursue mediation. Substantial judicial time has been invested in management of this action, and for practical purposes TLT has consented to jurisdiction. *See In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994); *In re: Asbestos Prod. Liab. Litig.*, 661 F. App'x 173, 177 (3d Cir. 2016).

describing that system, or explaining how it complies with FLSA. Nor do they explain how the two instances they cite represent an application of a formal payroll policy, rather than mere aberrations.[7] In a FLSA case, an employer can hardly cite its inability to describe its own payroll system as creating an issue of fact.

Furthermore, even if the rule stated in § 778.112 did not apply, TLT would ultimately need to employ some other method for computing an employee's regular rate for any given workweek. Any calculation of the regular rate would include the full amount of $160 per day that Defendants paid. That is because, as explained above, the daily sum of $160 does not consist of any overtime payment that Defendant may exclude from the regular rate under subsection (e)(5). The regular rate would then be computed by dividing the sum of all payments of $160 the employee received for each day worked, along with all other compensation not subject to any exclusion under § 207(e), by the total hours the employee worked that week. *See* 29 C.F.R. § 778.109. Regardless of the method used, the regular rate will thus include the entire flat rate of $160 it paid to employees for each day they worked, and Defendants will owe additional overtime payment to Plaintiffs for hours they worked over forty in a week. Any dispute Defendants have raised over whether Plaintiffs received payment in the form of a "day rate" is therefore immaterial to the resolution of Plaintiffs' Motion.

## IV. Conclusion

Plaintiffs' Partial Motion for Judgment on the Pleadings, which I have converted to a Motion for Summary Judgment, will be granted. The lump sum payment of two hours of purported overtime premiums, which Defendants included in Plaintiffs' daily flat rate of $160, was made without regard to the number of overtime hours Plaintiffs worked each week. Thus,

---

[7] In that regard, the instance in which a driver was paid for a half day would appear to violate the terms of its Welcome Letter, which states that a flat rate of $160 per day is paid even if the employee works less than ten hours in a day.

15

under FLSA and the DOL's interpretive rules, Defendants may not credit any portion of the $160 paid per day towards overtime compensation owed to Plaintiffs for their work that exceeded forty hours in a week.

       /s/ Gerald Austin McHugh
United States District Judge