## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TYHEE HICKMAN, SHANAY BOLDEN, and MICHAEL EASTERDAY, on behalf of themselves and others similarly situated, | : : : : | NO. 2:17-cv-01038-GAM |
|  | : | CLASS/COLLECTIVE ACTION |
| **Plaintiffs,** | : : | JURY TRIAL DEMANDED |
| v. | : : |  |
| TL TRANSPORTATION, LLC, SCOTT FOREMAN, HERSCHEL LOWE, AMAZON.COM, LLC, and AMAZON LOGISTICS, INC., | : : : : |  |
|  | : |  |
| **Defendant.** | : |  |

### SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Tyhee Hickman ("Hickman"), Shanay Bolden ("Bolden"), and Michael Easterday ("Easterday") (collectively, "Plaintiffs"), through their undersigned counsel, individually, and on behalf of all persons similarly situated, file this Amended Class and Collective Action Complaint ("Complaint") against Defendant TL Transportation, LLC, Scott Foreman, Herschel Lowe, Amazon.com, LLC and Amazon Logistics, Inc., as joint employers (collectively, "Defendants"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), the Maryland Code, Labor and Employment Article §§ 3-401, *et seq.*, Pennsylvania common law, New Jersey State Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a, *et seq.* ("NJWHL").

Plaintiffs' FLSA claim is asserted as a collective action under FLSA Section 16(b), 29 U.S.C. § 216(b), while their PMWA, MWHL, NJWHL and common law claims are asserted as a class action under Federal Rule of Civil Procedure 23. *See Knepper v. Rite Aid Corp.*, 675 F.3d

249 (3d Cir. 2012) (FLSA collective action claims and federal Rule 23 class action claims may proceed together in same lawsuit).

This amendment is filed pursuant to FED. R. CIV. P. 15(a)(2) with Defendants' written consent, and it relates back to the date of the original pleading pursuant to FED. R. CIV. P. 15(c). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1.      Jurisdiction over the FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because the state law claims and federal statutory claim derive from a common nucleus of operative facts.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. The events giving rise to Plaintiff Hickman's claims occurred within this District. In addition, Defendants TL Transportation, LLC, Amazon.com, LLC and Amazon Logistics, Inc. are each organized or incorporated in Pennsylvania, and Defendants conduct business in this District.

## PARTIES

4.      Plaintiff Tyhee Hickman is a citizen of Pennsylvania and resides in Philadelphia, Pennsylvania. Plaintiff Hickman worked for Defendants as a Delivery Associate in Pennsylvania from November 2016 through March 2017. Pursuant to 29 U.S.C. § 216(b), Plaintiff Hickman has consented to be a plaintiff in this action. *See* Dkt. No. 1-2.

5.      Plaintiff Shanay Bolden is a citizen of Maryland and resides in Columbia, Maryland. Plaintiff Bolden worked for Defendants as a Delivery Associate in Maryland between January 13,

2016 and July 19, 2016. Pursuant to 29 U.S.C. § 216(b). Plaintiff Bolden has consented to be a plaintiff in this action. *See* Dkt. No. 1-3.

6.      Plaintiff Michael Easterday is a citizen of New Jersey and resides in Voorhees, New Jersey. Plaintiff Easterday worked for Defendants as a Delivery Associate in New Jersey between September 2016 and 2017. Pursuant to 29 U.S.C. § 216(b). Plaintiff Easterday has consented to be a plaintiff in this action. *See* Dkt. No. 83-1.

7.      Defendant TL Transportation, LLC ("TLT") is a limited liability company organized under the laws of Pennsylvania with principal offices in Columbia, Maryland. According to its company website, TLT "provides drivers for clients on the East Coast, and throughout the MidAtlantic Region." Those drivers are known as "Delivery Associates."

8.      Defendant Scott Foreman ("Foreman") is a citizen and resident of Maryland. Foreman is the Vice President and co-owner of TLT. Foreman has exerted a substantial amount of control over significant aspects of TLT's day-to-day operation during all relevant time periods. In managing the day-today operations of TLT, Foreman makes decisions concerning work staffing, personnel matters, pay policies, and compensation.

9.      Defendant Hershel Lowe ("Lowe") is a citizen and resident of Maryland. Lowe is the founder and co-owner of TLT. Lowe has exerted a substantial amount of control over significant aspects of TLT's day-to-day operation during all relevant time periods. In managing the day-today operations of TLT, Lowe makes decisions concerning work staffing, personnel matters, pay policies, and compensation.

10.     Defendant Amazon.com, LLC is a limited liability company organized under the laws of Pennsylvania with principal offices in Seattle, Washington.

11.     Defendant Amazon Logistics, Inc. is a corporation organized under the laws of

3

Pennsylvania with principal offices in Seattle, Washington.

12.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of the Defendants.

13.     During times relevant, Plaintiffs are, or were, employees of Defendants and are covered by the FLSA, the PMWA, the MWHL, and NJWHL.

14.     Defendants are each an employer covered by the FLSA, the PMWA, the MWHL, and NJWHL.

15.     Defendants employ individuals, including Delivery Associates, in Virginia, Maryland, New Jersey, and Pennsylvania, as well as potentially other states.

16.     Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as described by 29 U.S.C. §§ 206-207.

17.     Defendants' annual gross sales exceed $500,000.

## CLASS DEFINITIONS

18.     Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following class:

> All current and former Delivery Associates employed by Defendants who performed work in the United States during the applicable limitations period (the "FLSA Class").

19.     Plaintiff Hickman brings Counts II and VI of this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following class:

> All current and former Delivery Associates employed by Defendants who performed work in Pennsylvania during the applicable limitations period (the "Pennsylvania Class").

4

20.    Plaintiff Bolden brings Count III of this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following class:

> All current and former Delivery Associates employed by Defendants who performed work in Maryland during the applicable limitations period (the "Maryland Class").

21.    Plaintiff Easterday brings Counts IV and V of this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following class:

> All current and former Delivery Associates employed by Defendants who performed work in New Jersey during the applicable limitations period (the "New Jersey Class").

22.    The Pennsylvania Class, Maryland Class, and New Jersey Class are collectively referred to as the "State Law Classes."

23.    The FLSA Class and State Law Classes are collectively referred to as the "Classes."

24.    Plaintiffs reserve the right to redefine the Classes prior to notice or class certification, and thereafter, as may be warranted or necessary.

## FACTS

**Defendants Are Joint Employers**

25.    Defendant TLT operates a carrier and logistics business, in providing trucks and drivers to deliver goods solely on behalf of Defendant Amazon.com and its affiliates. The goods are purchased by customers using Defendant Amazon.com, LLC's digital platform (the Amazon.com website).

26.    Defendant Amazon.com, LLC is an e-commerce company and one of the largest – if not the largest – internet retailers in the world, operating the website www.amazon.com. As of May 2017, *Forbes* estimated the net worth of Amazon.com to be as much as $427 billion.

27.    Defendant Amazon Logistics, Inc. is a subsidiary of Defendant Amazon.com, LLC

5

(together, the "Amazon Defendants"), which advertises for and provides Delivery Associates for

Amazon.com deliveries. Defendant Amazon Logistics, Inc. works with local delivery providers to

deliver packages from a central location to an Amazon.com customer.  Defendant TLT is a local

delivery provider for the Amazon Defendants.

28.      The Amazon Defendants require delivery providers, like Defendant TLT, "to

provide delivery vehicles, driver and safety training programs, and insurance coverage." Amazon

Logistics, Frequently Asked Questions, Overview <https://logistics.amazon.com/> (last visited

Nov. 22, 2017).

29.      Delivery providers must acknowledge that they "can fulfill [Amazon's] program

requirements." *Id.*

30.      Delivery providers are awarded areas "based on performance, rates, and need." *Id.*

31.      Delivery providers are given access to "[Amazon's] technology training resources,

videos, and delivery data." *Id.*

32.      The Amazon Defendants also supply delivery providers, such as Defendant TLT,

with business tools to "assist with planning, daily operations, routing guidance, and customer

service." *Id.*

33.      The Amazon Defendants pay delivery providers, including Defendant TLT,

pursuant to its standard Delivery Provider Terms of Service. *Id.*

34.      The Amazon Defendants control the work activities, condition and management of

their local delivery providers and the Delivery Associates, such as Plaintiffs.

35.      Plaintiff Hickman was employed from November 2016 through March 2017 as a

Delivery Associate in the Defendants' King of Prussia, Pennsylvania location, in making deliveries

of packages on behalf of the Amazon Defendants.

36.     Plaintiff Bolden was employed from January 13, 2016 through July 19, 2016 as a Delivery Associate in the Defendants' Lansdowne, Maryland location, in making deliveries of packages on behalf of the Amazon Defendants.

37.     Plaintiff Easterday was employed from September 21, 2016 through 2017 as a Delivery Associate in the Defendants' Swedesboro, New Jersey location, in making deliveries of packages on behalf of the Amazon Defendants.

38.     At all relevant times, the Amazon Defendants have been affiliated with and/or operating with Defendant TLT with respect to the Plaintiffs and other similarly situated employees such that the Amazon Defendants, on the one hand, and the other Defendant, on the other, are the "joint employers" of Plaintiffs and other similarly situated employees.

39.     Based on information and belief, during the relevant time period, Defendants have employed over 100 individuals under the Delivery Associate job title.

40.     Defendants characterize and reference their Delivery Associates as being "the face of Amazon.com."

41.     On information and belief, the Amazon Defendants make the final Delivery Associate hiring decision. Following their hiring, Delivery Associates are trained by the Amazon Defendants.

42.     The mandatory training, conducted by the Amazon Defendants, covered the Amazon Defendants' policies and procedures, including but not limited to: how to scan a package; how to use the Amazon Defendants' handheld GPS-tracking device, known as a "Rabbit"; and how to drop packages off in compliance with the Amazon Defendants' policies, procedures and concession rates (the failure to properly deliver a package).

43.     On information and belief, the Amazon Defendants disciplined Delivery Associates

for violations of their policies and procedures.

44.    Throughout their employment with Defendants, Delivery Associates are subject to additional training by the Amazon Defendants in complying with their operational procedures and in meeting their work expectations.

45.    Defendant TLT's King of Prussia, Pennsylvania location is located within one of Defendant Amazon.com, LLC's fulfillment centers, which is controlled and operated by the Amazon Defendants.

46.    Defendant TLT's Lansdowne, Maryland location is also located within one of Defendant Amazon.com, LLC's fulfillment centers, which is controlled and operated by the Amazon Defendants.

47.    Defendant TLT's Swedesboro, New Jersey location is also located within one of Defendant Amazon.com, LLC's fulfillment centers, which is controlled and operated by the Amazon Defendants.

48.    Each workday morning, the Amazon Defendants conduct on-going training and discussion with Delivery Associates to address employee performance or concession rates.

49.    The Amazon Defendants set the delivery route of each Delivery Associate.

50.    While on route, if a Delivery Associate has a problem delivering packages, the employee is to call the Amazon Defendants directly for direction, supervision, and to broker customer contact.

51.    Every day, the Amazon Defendants send an email documenting each Delivery Associate's job performance.

52.    The Amazon Defendants track and control the collection and dissemination of the Delivery Associate's job performance.

53.    If a Delivery Associate has too many "concessions", Defendants require the Delivery Associate to undergo addition training related to the Amazon Defendants' policies and procedures. If a Delivery Associate does not take the Amazon Defendants' training, the employee is sent home and not allowed to work until the re-training is completed. For example, during his employment with Defendants, Plaintiff Hickman was ordered to retake the Amazon Defendants' training two or three times.

54.    Defendant TLT provides Delivery Associates, such as the Plaintiffs, with a vehicle.

55.    While the vehicles used by Delivery Associates are provided by Defendant TLT, those vehicles must adhere to the Amazon Defendants' requirements. Vehicles must be "cargo vans with at least 300 cubic feet of cargo capacity." Amazon Logistics, Inc., Frequently Asked Questions, Requirements <https://logistics.amazon.com/> (last visited Nov. 22, 2017).

56.    The vehicles provided to Delivery Associates by Defendant TLT weigh less than 10,000 pounds.

57.    Delivery Associates are also provided and required to wear an Amazon shirt, Amazon cap, and an Amazon jacket (as seen below).



58.    Delivery Associates are provided with and are required to use an Amazon.com "Rabbit," a handheld device that provides the addresses of Amazon.com customers. The "Rabbit" is also used for navigation assistance, package scanning, and as a phone. The "Rabbit" also allows

the Amazon Defendants to contact and track a Delivery Associate's movement and work progress.

59.    The Amazon Defendants have direct access to the "Rabbit" devices, which are given to and used by each and every Delivery Associate.

60.    Plaintiffs were regularly scheduled to work four (4) to five (5) days a week, with each shift entailing ten (10) hours or more. Indeed, Plaintiffs regularly worked more than forty (40) hours a week. Plaintiffs observed that other Class Members routinely worked similar hours.

61.    On average, Plaintiff Hickman delivered between 165-200 Amazon.com packages per shift, Plaintiff Bolden delivered between 140-200 Amazon.com packages per shift, and Plaintiff Easterday delivered between 150-220 Amazon.com packages per shift. Plaintiffs observed that other Class Members routinely delivered a similar number of packages.

62.    Plaintiffs were not provided lunch breaks. Accordingly, Plaintiffs routinely worked through their lunch without extra pay and were unable to take short breaks due to the high volume of deliveries. Plaintiffs observed other Class Members routinely work similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

**Delivery Associates Are Paid on a Day Rate Basis**

63.    Delivery Associates are paid a flat day rate regardless of how many hours actually work. Plaintiff Hickman was paid a flat rate of $152.00 a day, Plaintiff Bolden was paid a flat rate of $160.00 a day, and Plaintiff Easterday was paid a flat rate of $150.00 a day.

64.    Plaintiffs and other Delivery Associates regularly work over 40 hours per week. For example, it was not unusual for Plaintiff Hickman to work between 42 and 52 hours in a given week. Plaintiff Bolden worked between 42 and 52 hours in a week. Plaintiff Easterday worked between 50 and 72 hours per week.

65.     At times, two Delivery Associates were assigned to a vehicle at the same time.  In those instances, rather than receive a full day rate for each person, each would receive only a portion of the day rate.

66.     Defendants pay their Delivery Associates, such Plaintiffs and other Class Members, pursuant to the same unlawful day rate pay policy, without paying overtime for work performed amounting to more than forty hours per week.

67.     Defendants attempt to characterize the day rate payment that it pays to Plaintiffs and Class Members as hourly plus overtime, but it does so in a manner that does not comply with the FLSA, nor with Pennsylvania, Maryland, or New Jersey state law.  Specifically, Defendants state that the day rate scheme is based on eight (8) regular hours of work and two (2) hours overtime. Yet Defendants pay Plaintiffs and Class Members their flat sum for days that they work regardless of the number of hours worked. *See* 29 C.F.R. § 778.112 ("If the employee is paid a flat sum for a day's work … without regard to the number of hours worked in the day or at the job … [h]e is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.").

68.     Additionally, the purported "overtime pay" is not actually overtime compensation pursuant to the FLSA, Pennsylvania, Maryland, or New Jersey law, as it is payable for hours worked within the basic or normal workday and without regard to whether the hours are in excess of 40 hours per week.  Plaintiffs and the Classes are in actual fact compensated on a daily rate pay basis, and yet are not paid overtime as required by the law. *See, e.g.,* 29 C.F.R. § 778.310.

## Defendants' Failure to Properly Pay Delivery Associates Is Willful

69.     Defendants have failed to make, keep and preserve records with respect to Plaintiffs and other members of the FLSA Class and State Law Classes sufficient to determine their lawful wages, actual hours worked and other conditions of employment as required by federal and state

law. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week); 43 P.S. § 333.108 and 34 PA. CODE § 231.31(requiring employers to maintain payroll records including the exact number of hours worked each day and each week); MD. CODE, Lab. & Emp. §§ 3-424, 3-425 (same); N.J. Stat. Admin. Code § 12:56-4.1 (same).

70.     Even though the FLSA, the PMWA, MWHL, and NJWHL entitle day-rate and hourly employees to extra overtime premium compensation for hours worked over 40 per week, *see*, e.g., 29 C.F.R. § 778.112; 34 PA. CODE § 231.43(b); MWHL, §§ 3-401, *et seq.*, NJHWL, N.J. Stat. Ann. § 34:11-56a4, Defendants do not pay their Delivery Associates, such as Plaintiffs, any extra overtime premium compensation for their overtime hours worked.

71.     Defendants knew or absent their own recklessness should have known that Plaintiffs and Class Members were not exempt from the FLSA or state minimum wage and overtime requirements.

72.     By failing to pay the overtime premium to Plaintiffs and other Delivery Associates, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA, PMWA, MWHL, and NJWHL provisions.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

73.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class defined above.

74.     Plaintiffs desire to pursue their FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

75.     Plaintiffs and the FLSA Class are "similarly situated," as that term is used in 29

U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

76.     Specifically, Defendants failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

77.     The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any payroll companies Defendants use.

78.     Defendants employ many FLSA Class Members throughout the United States. These similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action as a class action pursuant to FED. R. CIV. P. 23 on behalf of themselves and the State Law Classes as defined above.

80.     The members of the State Law Classes are so numerous and dispersed that joinder of all members is impracticable. Upon information and belief, there are more than fifty (50) members in each of the State Law Classes.

81.     Plaintiffs will fairly and adequately represent and protect the interests of the State Law Classes because there is no conflict between the claims of Plaintiffs and those of the State Law Classes, and Plaintiffs' claims are typical of the claims of the State Law Classes. Plaintiffs' undersigned counsel is competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like the one at bar.

82.     There are questions of law and fact common to the proposed State Law Classes, which predominate over any questions affecting only individual Class members, including, without limitation: whether Defendants violated and continue to violate federal and state law (including that of Pennsylvania and Maryland) through their policies and practices of not paying their Delivery Associates for all hours worked and overtime compensation.

83.     Plaintiffs' claims are typical of the claims of the State Law Classes in the following ways, without limitation:  (a) Plaintiffs are members of the State Law Classes; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the State Law Classes; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the State Law Classes and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the State Law Classes; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the State Law Classes members.

84.     Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the State Law Classes predominate over any questions affecting only individual Class members.

85.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The State Law Classes are readily identifiable from Defendants' own employment records. Prosecution of separate actions by individual members of the State Law Classes would create the risk of inconsistent or varying adjudications with respect to individual State Law Classes members that would establish incompatible standards of conduct for Defendants.

86.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the State Law Classes members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

87.     Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the State Law Classes.  Plaintiffs envision no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiffs and the FLSA Class)**

88.     All previous paragraphs are incorporated as though fully set forth herein.

89.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

90.     Defendants are subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

91.     At all relevant times, each of the Defendants were, and continue to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

92.     During all relevant times, the members of FLSA Class, including Plaintiffs, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

93.     Plaintiffs and the FLSA Class are not exempt from the requirements of the FLSA. Plaintiffs and the FLSA Class are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

94.     Defendants' compensation scheme applicable to Plaintiffs and the FLSA Class failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

95.     Defendants knowingly failed to compensate Plaintiffs and the FLSA Class at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

96.     Defendants also failed to create, keep and preserve records with respect to work performed by Plaintiffs and the FLSA Class sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA, 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

97.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

### COUNT II
### Violation of the Pennsylvania Minimum Wage Act
### (On Behalf Plaintiff Hickman and the Pennsylvania Class)

98.     All previous paragraphs are incorporated as though fully set forth herein.

99.     The PMWA requires that covered employees be compensated for all hours worked.

*See* 43 P.S. § 333.104(a) and 34 PA. CODE § 231.21(b).

100.    The PMWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular hourly rate at which he or she is employed. *See* 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

101.    Defendants are subject to the overtime requirements of the PMWA because Defendants are employers under 43 P.S. § 333.103(g).

102.    Plaintiff Hickman and the Pennsylvania Class are not exempt from the PMWA.

103.    During all relevant times, Plaintiff Hickman and the Pennsylvania Class were covered employees entitled to the above-described PMWA's protections. *See* 43 P.S. § 333.103(h).

104.    Defendants' compensation scheme that is applicable to Plaintiff Hickman and the Pennsylvania Class failed to comply with 43 P.S. §§ 333.104(a) and (c), 34 PA. CODE §§ 231.1(b) and 43(b).

105.    Defendants failed to compensate Plaintiff Hickman and the Pennsylvania Class for all hours worked. *See* 34 PA. CODE § 231.41(b).

106.    Defendants failed to compensate Plaintiff Hickman and the Pennsylvania Class at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

107.    Pursuant 43 P.S. § 333.113, employers, such as the Defendants, who fail to pay an employee wages in conformance with the PMWA shall be liable to the employee for the wages or expenses that were not paid, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT III
### Violation of the Maryland Wage and Hour Law
### (On Behalf Plaintiff Bolden and the Maryland Class)

108.   All previous paragraphs are incorporated as though fully set forth herein.

109.   The Maryland Wage and Hour Law ("MWHL") requires that covered employees be compensated for all hours worked.

110.   The MWHL also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular hourly rate at which he is employed. *See* MWHL, §§ 3-415, 420.

111.   Plaintiff Bolden and the Maryland Class are not exempt from the MWHL.

112.   Defendants are subject to the overtime requirements of the MWHL because Defendants are employers under MWHL, § 3-401.

113.   During all relevant times, Plaintiff Bolden and the Maryland Class were covered employees entitled to the above-described MWHL's protections pursuant to MWHL, § 3-401.

114.   Defendants failed to compensate Plaintiff Bolden and the Maryland Class for all hours worked.

115.   Defendants failed to compensate Plaintiff Bolden and the Class at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of the MWHL.

116.   Defendants' violations of the MWHL were repeated, willful, intentional, and in bad faith.

117.   Pursuant to MWHL, § 3-427, employers, such as Defendants, who fail to pay an employee wages in conformance with the MWHL shall be liable to the employee for the wages or expenses that were not paid, court costs and attorneys' fees incurred in recovering the unpaid

wages.

## COUNT IV
### Violation of the New Jersey Wage and Hour Law
### (On Behalf Plaintiff Easterday and the New Jersey Class)

118.    All previous paragraphs are incorporated as though fully set forth herein.

119.    The New Jersey Wage and Hour Law ("NJWHL") requires that covered employees be compensated for all hours worked.

120.    The NJWHL also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular hourly rate at which he is employed. *See* NJWHL, N.J. Stat. Ann. § 34:11-56a4.

121.    Plaintiff Easterday and the New Jersey Class are not exempt from the NJWHL.

122.    Defendants are subject to the overtime requirements of the NJWHL because Defendants are employers under NJWHL, N.J. Stat. Ann. § 34:11-56a1(g).

123.    During all relevant times, Plaintiff Easterday and the New Jersey Class were covered employees entitled to the above-described NJWHL's protections pursuant to NJWHL, N.J. Stat. Ann. § 34:11-56a1(h).

124.    Defendants failed to compensate Plaintiff Easterday and the New Jersey Class for all hours worked.

125.    Defendants failed to compensate Plaintiff Easterday and the New Jersey Class at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of the NJWHL.

126.    Defendants' violations of the NJWHL were repeated, willful, intentional, and in bad faith.

127.    Pursuant to NJWHL, N.J. Stat. Ann. § 34:11-56a25, employers, such as

Defendants, who fail to pay an employee wages in conformance with the NJWHL shall be liable to the employee for the wages or expenses that were not paid, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT V**
**Violation of the New Jersey Wage Payment Law (N.J. Stat. § 34:11-4.2 and § 34:11-4.4)**
**(On Behalf Plaintiff Easterday and the New Jersey Class)**

128.    All previous paragraphs are incorporated as though fully set forth herein.

129.    Defendants are subject to the overtime requirements of the NJWHL because Defendants are employers under NJWHL, N.J. Stat. Ann. § 34:11-4.1(a).

130.    As employees, Plaintiff Easterday and the New Jersey Class are entitled to the protections of the New Jersey Wage Payment Law ("NJWPL"). N.J. Stat. Ann. § 34:11-4.1(b)

131.    The NJWPL requires that Plaintiff Easterday and the New Jersey Class receive all wages owed. *See* N.J. Stat. § 34:11-4.2.

132.    The NJWPL generally prohibits employers, such as Defendants, from making withholdings from the wages of Plaintiff Easterday and the New Jersey Class. *See* N.J. Stat. § 34:11-4.4.

133.    As set forth herein, Defendants failed to compensate Plaintiff Easterday and the New Jersey Class for all hours worked.

134.    Defendants failed to compensate Plaintiff Easterday and the New Jersey Class at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week.

135.    Defendants violated the NJWPL by failing to pay Plaintiff Easterday and the New Jersey Class all of their wages due.

136.    Plaintiff Easterday and the New Jersey Class are entitled to damages in an amount

to be proven at trial.

## COUNT VI
## Unjust Enrichment
## (On Behalf of Plaintiff Hickman and the Pennsylvania Class)

137.   All previous paragraphs are incorporated as though fully set forth herein.

138.   Defendants have received and benefited from the uncompensated labors of Plaintiff Hickman and the Pennsylvania Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

139.   At all relevant times hereto, Defendants devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiff Hickman and the Pennsylvania Class without properly paying compensation for all hours worked including overtime compensation.

140.   Contrary to all good faith and fair dealing, Defendants induced Plaintiff Hickman and the Pennsylvania Class to perform work while failing to properly compensate for all hours worked as required by law including overtime compensation.

141.   By reason of having secured the work and efforts of Plaintiff Hickman and the Pennsylvania Class without proper compensation as required by law, Defendants enjoyed reduced overhead with respect to its labor costs and therefore realized additional earnings and profits to its own benefit and to the detriment of Plaintiff Hickman and the Pennsylvania Class. Defendants retained and continue to retain such benefits contrary to the fundamental principles of justice, equity and good conscience.

142.   Accordingly, Plaintiff Hickman and the Pennsylvania Class are entitled to judgment in an amount equal to the benefits unjustly retained by the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others

similarly situated:

  a.  An order permitting this litigation to proceed as an FLSA collective action
      pursuant to 29 U.S.C. § 216(b);

  b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all
      potential FLSA Class members;

  c.  An order permitting this litigation to proceed as a class action pursuant to
      FED. R. CIV. P. 23 on behalf of the State Law Classes, with Plaintiffs serving
      as the Class Representatives and their undersigned counsel as Class
      Counsel;

  d.  Back pay damages (including unpaid overtime compensation, unpaid
      spread of hours payments and unpaid wages) and prejudgment interest to
      the fullest extent permitted under the law;

  e.  Liquidated damages to the fullest extent permitted under the law;

  f.  Litigation costs, expenses and attorneys' fees to the fullest extent permitted
      under the law; and

  g.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

Dated: October 31, 2018                    Respectfully submitted,

                                           Shannon Carson (PA 85957)
                                           Sarah R. Schalman-Bergen (PA 206211)
                                           Lane L. Vines (PA 80854)
                                           Camille Fundora (PA 312533)
                                           BERGER MONTAGUE PC
                                           1818 Market Street, Suite 3600
                                           Philadelphia, PA  19103
                                           Tel.: (215) 875-3000
                                           Fax: (215) 875-4620
                                           scarson@bm.net
                                           sschalman-bergen@bm.net
                                           lvines@bm.net
                                           cfundora@bm.net

Ryan Allen Hancock (PA 92590)
Bruce Ludwig (PA 23251)
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA  19103
Tel.: (215) 656-3600
Fax: (215) 567-2310
rhancock@wwdlaw.com
bludwig@wwdlaw.com

*Attorneys for Plaintiffs*
*and the Proposed Classes*