**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **TYHEE HICKMAN, SHANAY BOLDEN, and O'DONALD HENRY, individually and on behalf of all persons similarly situated,** | : : : : | **Civil Action No.: 2:17-cv-01038-GAM** |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **TL TRANSPORTATION, LLC, SCOTT FOREMAN, HERSCHEL LOWE, AMAZON.COM, LLC, and AMAZON LOGISTICS, INC.,** | : : : : : | |
| **Defendants.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
<u>APPROVAL OF THE SETTLEMENT AGREEMENT</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     PROCEDURAL HISTORY ............................................................................ 4

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ................................. 7

    A.   The Settlement Class .................................................................................. 7

    B.   Distribution Of The Gross Settlement Amount And Release Of Claims ............. 8

    C.   Notice To Potential Settlement Class Members ................................... 11

IV.     DISCUSSION ............................................................................................... 12

    A.   Applicable Legal Standards ................................................................ 12

        1.   Legal Standard for Approval of FLSA Settlements................................ 12

        2.   Legal Standard for Approval of Rule 23 Class Action Settlements ........ 14

    B.   The Terms of the Proposed Settlement Are Fair and Reasonable When
         Considering the Uncertainty of Continuing To Litigate This Matter .................. 15

    C.   The Settlement Agreement Is The Product of Informed, Non-Collusive
         Negotiation And Does Not Present Any Grounds To Question Its Fairness ........ 20

    D.   The Additional Service Award To the Named Plaintiffs Is Justified And Should
         Be Approved ...................................................................................... 21

    E.   The Proposed Settlement Furthers the Purpose of the FLSA .............................. 23

    F.   The Court Should Preliminarily Certify the Proposed Settlement Class Under Fed.
         R. Civ. P. 23 ..................................................................................... 24

        1.   The Settlement Class is Sufficiently Numerous ..................................... 26

        2.   The Settlement Class Seeks Resolution of Common Questions.............. 26

        3.   The Claims Of The Named Plaintiffs Are Typical Of the Settlement Class
             ........................................................................................... 27

        4.   Class Counsel and Plaintiffs Meet The Adequacy Requirements Of The
             Settlement Class.................................................................................. 27

        5.   The Settlement Class Satisfies The Predominance And Superiority
             Requirements of FED. R. CIV. P. 23(b)(3) ................................................ 28

i

G.     The Proposed Notice Provides Adequate Notice To The Eligible Class Members
       And Satisfies Due Process ...................................................................................... 29

H.     The Proposed Implementation Schedule ............................................................... 30

V.     CONCLUSION ................................................................................................................. 30

# **TABLE OF AUTHORITIES**

Cases

*Altnor v. Preferred Freezer Services Inc.*,
  197 F. Supp. 3d (E.D. Pa. July 18, 2016) ............................................................ 13

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................................. 25

*Baby Neal ex rel. Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) .................................................................................... 25

*Badia v. HomeDeliveryLink, Inc.*,
  Nos. 2:12–6920 (WJM), 2:12–cv–07097, 2015 WL 5666077 (D.N.J. Sept. 25, 2015) .......... 23

*Bozak v. FedEx Ground Package Sys., Inc.*,
  No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014)............................................ 29

*Bredbenner v. Liberty Travel, Inc.*,
  No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011)........................................ 23

*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945)....................................................................................... 12, 24

*Brown v. True Blue, Inc.*,
  No. 10-514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013)................................ 13, 23

*Brumley v Camin Cargo Control, Inc.*,
  Nos. 08-1798, 10-2461 and 09-6128, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ................. 13

*Chaverria v. New York Airport Serv., LLC*,
  875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ...................................................................... 18

*Cheeks v. Freeport Pancake House*,
  796 F.3d  199 (2d Cir. 2915)................................................................................ 23

*Collier v. Montgomery Cnty. Hous. Auth.*,
  192 F.R.D. 176 (E.D. Pa. 2000)............................................................................. 26

*Craig v. Rite Aid Corp.*,
  No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ................................... 19

*Creed v. Benco Dental Supply, Co.*,
  No. 3:12–cv–01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) ....................... 23

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000)............................................................................. 21

*Cuttic v. Crozer-Chester Med. Ctr.*,
  868 F. Supp. 2d 464 (E.D. Pa. 2012) .................................................................. 12, 13

*Deitz v. Budget Renovations & Roofing, Inc.*,
  No. 4:12–cv–0718, 2013 WL 2338496 (M.D. Pa. May 29, 2013) ........................... 19

*Farris v. JC Penny Co. Inc.*,
  176 F. 3d 706 (3d Cir. 1999)................................................................................ 13

*Foster v. Kraft Foods Grp. Inc.*,
  Nos. 2:09-cv-00453-CB and 2:12-cv-00205-CB, 2013 WL 440992 (W.D. Pa. Jan. 15 2013) 23

*Fry v. Hayt & Landau*,
  198 F.R.D. 461 (E.D. Pa. 2000)................................................................... 26, 27, 28

*Gen. Tel. Co. of S.W. v. Falcon*,
  457 U.S. 147 (1982)........................................................................................... 27

*Girsh v. Jepson*,
   521 F. 2d 153 (3d Cir. 1975)...........................................................................13
*Godshall v. Franklin Mint Co.*,
   No. No. 01-cv-6539, 2004 WL 2745890 (E.D. Pa. Dec.1, 2004)...........................................23
*Hickman v. TL Transp., LLC*,
   318 F. Supp. 3d 718 (E.D. Pa. August 16, 2018)..................................................1
*In re Certainteed Fiber Cement Siding Litig.*,
   303 F.R.D. 199 (E.D. Pa. 2014)....................................................................19
*In re Chickie's & Pete's Wage & Hour Litig.*,
   No. 12-cv-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ...........................12, 13
*In re Constar Int'l, Inc. Sec. Litig.*,
   585 F.3d 774 (3d Cir. 2009)........................................................................25
*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)...........................................................14, 15, 25
*In re Janney*,
   No. 06-cv-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) .............................23
*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ...........................................................14, 15
*In re Mid-Atl. Toyota Antitrust Litig.*,
   564 F. Supp. 1379 (D. Md. 1983) ................................................................15
*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003)............................................................20
*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004).........................................................................25
*Kauffman v. U-Haul Int'l, Inc.*, 5:16-cv-04580,
   2019 WL 1785453 (E.D. Pa. April 24, 2019) .............................................13, 14
*Klingensmith v. BP Prods. N. Amer., Inc.*, No. 07-cv-1065,
   2008 WL 4360965 (W.D. Pa. Sept. 24, 2008)....................................................14
*Knepper v. Rite Aid Corp.*,
   675 F.3d 249 (3d Cir. 2012).........................................................................28
*Lalli v. Gen. Nutrition Ctrs., Inc.*,
   814 F.3d 1 (1st Cir. 2016)............................................................................16
*Lynn's Food Stores, Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir. 1982) ..................................................................13
*Martin v. Foster Wheeler Energy Corp.*,
   No. 3:06-cv-0878, 2008 WL 906472 (M.D. Pa. Mar. 31, 2008) ...........................21
*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)...................................................................................29
*Mumby v. Pure Energy Servs. (USA), Inc.*,
   636 F.3d 1266 (10th Cir. 2011) ..................................................................16
*Powell v. Carey Int'l., Inc.*,
   514 F. Supp. 2d 1302 (S.D. Fla. 2007) .........................................................16
*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ......................................................................20
*Reyes v. Altamarea Grp., LLC*,
   No. 10-cv-6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011)...........................23

*Rodriguez v. Republic Servs.*,
    No. 13–cv–20, 2013 WL 5656129 (W.D. Tex. Oct. 15, 2013) ............................... 16

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
    157 F. Supp. 2d 561 (E.D. Pa. 2001) ........................................................................ 20

S*tewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001)...................................................................................... 26

*Tavares v. S-L Distrib. Co., Inc.*,
    No. 1:13-cv-1313, 2016 WL 1743268 (M.D. Pa. May 2, 2016) ............................. 23

*Tompkins v. Farmers Ins. Exch.*,
    No. 5:14-cv-3737, 2017 WL 4284114 (E.D. Pa. Sept. 27, 2017)............................. 13

*UAW v. Gen. Motors Corp.*,
    No. 05-cv-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)............................ 20

*Wade v. Werner Trucking Co.*,
    No. 10-cv270, 2014 WL 2535226 (S.D. Ohio June 5, 2014) .................................. 29

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
    726 F.2d 956 (3d Cir. 1983)...................................................................................... 15

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984)...................................................................................... 25

*Wetzel v. Liberty Mut. Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975)...................................................................................... 25

*Young v. Tri Cnty. Sec. Agency, Inc.*, 13-cv-5971,
    2014 WL 1806881 (E.D. Pa. May 7, 2014) ...................................................... 22, 24

Statutes

29 U.S.C. § 202 ............................................................................................................. 24
29 U.S.C. § 216(b) ................................................................................................... passim
29 U.S.C. § 216(c) ........................................................................................................ 13
29 U.S.C. §§ 201 ......................................................................................................... 1, 4
Labor and Employment Article §§ 3-401 ...................................................................... 4

Regulations

29 C.F.R. § 778.112 ...................................................................................................... 16

Other Authorities

2 Newberg on Class Actions § 11.41 at 11–88 (3d ed.1992) ...................................... 14
Manual for Complex Litigation (Second) §30.44 ....................................................... 20
Manual for Complex Litigation (Third) § 30.41 ......................................................... 14
Manual for Complex Litigation (Third) § 30.42, at 238 (1997)................................... 14

## I.    INTRODUCTION

This class and collective action wage and hour lawsuit against Defendants TL Transportation, LLC ("TLT"), Scott Foreman ("Foreman"), and Herschel Lowe's ("Lowe") (collectively, the "TL Defendants") and Amazon.com, LLC, Amazon Logistics, Inc. (together, "Amazon")[1]; has been settled, and Plaintiffs Tyhee Hickman, Shanay Bolden, and O'Donald Henry[2] ("Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement. As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's preliminary approval.

This lawsuit concerns the TL Defendants' alleged unlawful policy and practice of failing to pay overtime compensation to Delivery Associates who, until April 15, 2017, were paid pursuant to a day rate compensation system in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), Pennsylvania, Maryland and New Jersey state laws, and whether Amazon bears legal responsibility for those violations. On August 16, 2018, the District Court ruled that the pay scheme at issue constituted a violation of the FLSA and related state laws. *See Hickman v. TL Transp., LLC*, 318 F. Supp. 3d 718 (E.D. Pa. August 16, 2018) (granting summary judgment to plaintiffs in holding that the day rate scheme by TLT violated the FLSA).[3]

The Parties subsequently agreed to engage in an Alternative Dispute Resolution ("ADR") process. Following the exchange of informal discovery, extensive arm's-length settlement negotiations, and three (3) in-person mediations at JAMS in Philadelphia, PA, the Parties were able to reach a class and collective settlement of this matter. *See* Declaration of Sarah R. Schalman-

---

[1] All Defendants are collectively referred to herein as "Defendants."

[2] On September 16, 2019, Plaintiffs filed a stipulated Third Amended Complaint, substituting Named Plaintiff Michael Easterday, who previously accepted an offer of judgment with O'Donald Henry as the New Jersey class representative. *See* Dkt. Nos. 112-114, 123.

[3] The TL Defendants would have the right to appeal this decision at the conclusion of the case.

Bergen ("Schalman-Bergen Decl.") ¶ 8. The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement") (attached as Exhibit 1).

The Settlement includes a gross cash payment by TLT of One Million Eight Hundred Thousand Dollars ($1,800,000.00) (the "Gross Settlement Amount"), inclusive of attorneys' fees and costs, settlement administration costs, and any service awards to the Named Plaintiffs that are approved by the Court. *See* Settlement Agreement ¶ 23(o). Every Eligible Class Member[4] will receive a Settlement Award, based on the number of weeks when he or she worked more than four days per week between March 8, 2014 through April 15, 2017 (the date when TLT changed its pay policies and practices), and none of the funds from the Gross Settlement Amount will revert to Defendants. *Id.* at ¶ 44.

In exchange, the Settlement Agreement contains a release of all FLSA and state wage and hour claims for unpaid overtime wages and liquidated or other damages from March 8, 2014 through April 15, 2017. *Id.* at ¶ 26. No Eligible Class Member shall be deemed to release an FLSA claim unless he/she cashes his/her Settlement Award check. *Id.* at ¶ 25.

Class Counsel believes that the negotiated Settlement Agreement provides an excellent settlement for the Plaintiffs and the Settlement Class, with respect to their claims for unpaid overtime wages resulting from the TL Defendants' alleged violations of the FLSA and related state law. *See* Schalman-Bergen Decl. ¶ 6; Declaration of Ryan Hancock ("Hancock Decl.") ¶ 9. Because of the lack of timekeeping records maintained by the TL Defendants, the parties each

---

[4]Eligible Class Member means all Settlement Class Members who do not file timely and valid exclusion requests from the Settlement. *Id.* at ¶ 23(aa). Settlement Class or Settlement Class Members means the Named Plaintiffs, all Opt-In Plaintiffs, and all current or former Delivery Associates who were employed by TL Transportation, LLC to deliver packages to Amazon customers in the United States between March 8, 2014 and April 15, 2017. *Id.* at ¶ 23(z). There are approximately 757 Settlement Class Members, including Plaintiffs. *Id.*

modeled various damage and claim scenarios utilizing various legal and factual assumptions, as well as payroll data from the TL Defendants and delivery data from Amazon, and presented them to each other under the supervision of the mediator. Schalman-Bergen Decl. ¶ 15. The **Net Settlement Amount** of approximately $1,102,500 (*i.e.* the amount that will actually be paid out to Settlement Class Members after deductions are made for fees, costs, service awards, and administration costs) represents approximately 157% percent of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions on time worked at a half time rate. *Id.* at ¶ 10.

Plaintiffs respectfully submit that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for preliminary approval under federal law and falls well within the range of reasonableness. Accordingly, Plaintiffs request that the Court issue an Order: 1) granting preliminary approval of the proposed Settlement Agreement as a fair, reasonable and adequate under Rule 23(e); 2) granting approval to the terms and conditions contained in the Settlement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act; 3) confirming its July 13, 2018 Order conditionally certifying the Settlement class as a collective pursuant to 29 U.S.C. § 216(b), pending final approval of the settlement; 4) preliminarily certifying the Settlement Class with respect to the state law claims under Rule 23; 5) preliminarily appointing Plaintiffs Tyhee Hickman, Shanay Bolden, and O'Donald Henry as Representatives of the Settlement Class; 6) preliminarily appointing Berger Montague PC and Willig, Williams & Davidson as Class Counsel for the Settlement Class; 7) approving the Angeion Group as Settlement Administrator and preliminarily approving the costs of administration; 8) approving the plan of notice to the Settlement Class Members, including approving the Notice attached to the Settlement Agreement as Exhibit A; and 9) approving the proposed schedule and

procedure for the final approval of this Settlement. Defendant does not oppose this Motion.

## II.    PROCEDURAL HISTORY

On March 8, 2017, Plaintiffs Tyhee Hickman and Shanay Bolden, former non-exempt hourly employees of TLT, filed a Class and Collective Action Complaint against Defendant TLT alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Pennsylvania Minimum Wage act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Maryland Code Annotated, Labor and Employment Article §§ 3-401, *et seq.* and Pennsylvania common law (Dkt. No. 1.; Settlement Agreement ¶ 2.)

On June 8, 2017, the Court issued an order staying the case pending mediation.  (Dkt. No. 12.)   TLT thereafter produced data and information to facilitate informed settlement discussions, including an electronic database containing payroll data for a sample of Delivery Associates who worked for TLT between February 27, 2016, and April 15, 2017, at three of its locations (King of Prussia, Swedesboro, and Baltimore). Settlement Agreement ¶ 3.

Plaintiffs and TLT participated in mediation before the Hon. James R. Melinson, Chief U.S. Magistrate Judge for the Eastern District of Pennsylvania (Ret.) at JAMS in Philadelphia, PA on October 17, 2017. A settlement was not reached. Settlement Agreement ¶ 4.

On November 28, 2017, Plaintiffs filed their First Amended Complaint to include Amazon.com, LLC, Amazon Logistics, Inc., and Scott Foreman and Herschel Lowe (the two sole members of TLT) as additional Defendants and joint employers.   (Dkt. No. 20; Settlement Agreement ¶ 5.) TLT filed its Answer on February 5, 2018, denying liability.  (Dkt. No. 34.)  The Amazon defendants filed their Answer on March 2, 2018 denying liability and denying that they jointly employed TLT employees.  (Dkt. No. 38; Settlement Agreement at ¶ 6.) On February 5, 2018, Defendants Foreman and Lowe filed a Motion to Dismiss based on lack of personal jurisdiction and venue in Pennsylvania.  (Dkt. No. 35.)  The Court denied the motion in all grounds

except with respect to Plaintiffs' Maryland state law claims (which proceeded in the litigation against TLT and Amazon). (Dkt. No. 72; Settlement Agreement ¶ 7.)

The Parties participated in a second mediation session before the Hon. James R. Melinson (Ret.), at JAMS in Philadelphia, PA on March 15, 2018.  A settlement was not reached. Settlement Agreement ¶ 8.

On March 23, 2018, Plaintiffs filed their motion for partial judgment on the pleadings on TLT's admission, in its Answer, regarding its day rate payment scheme.  (Dkt. No. 43.)  The Court held oral argument and then converted the motion to a partial summary judgment motion.  (Dkt. Nos. 67, 69; Settlement Agreement ¶ 9.)

The Parties stipulated to notice after the Plaintiffs filed their motion for conditional certification and to facilitate notice pursuant to 29 U.S.C. § 216(b) ("Notice Motion).  *See* Dkt. Nos. 46 & 64.  Notice was distributed on August 10, 2018 to 757 individuals.  As of this date, 297 individuals filed their consent forms to participate in this lawsuit, including Plaintiffs. (Dkt. Nos. 13, 83, 85, 87-90, 94, 96-101, 107- 110, 115; Settlement Agreement ¶ 10.)

On August 16, 2018, the Court granted Plaintiffs' Motion for Summary Judgment, holding that TLT compensated Plaintiffs using a day rate that did not lawfully compensate its employees for overtime, in violation of the Fair Labor Standards Act ("FLSA") and applicable state law.  (Dkt. No. 81; Settlement Agreement ¶ 11.)

On November 1, 2018, Plaintiffs filed their Second Amended Complaint ("SAC") adding violations of the New Jersey State Wage and Hour Law and adding Michael Easterday as a Plaintiff and representative of the New Jersey class. (Dkt. No. 102; Settlement Agreement ¶ 12.)

On October 26, 2018, Defendant TLT served Offers of Judgment pursuant to Fed. R. Civ. P. 68 on 185 of the Opt-In Plaintiffs. The 185 Offers of Judgment totaled $101,579.50, plus

"reasonable attorney's fees, expenses, and costs accrued and attributed to the prosecution of [the Opt-In Plaintiff's] specific claims … to the date of th[e] Offer of Judgment in an amount to be determined by the Court." Sixteen (16) Opt-In Plaintiffs filed their acceptance of offers of judgment from TLT, including Named Plaintiff Easterday, totaling $16,065.50. (Dkt. Nos. 31, 106-1, 106-2, 106-3, 106-4, 106-5, 106-6, 106-7, 106-8, 106-9, 106-10, 106-11, 106-12, 106-13, 106-14, 112; Settlement Agreement ¶ 13.) The Court entered the judgments and released their claims against TLT. (Dkt. Nos. 31, 50, 106, 111, 113, 114.) No attorneys' fees were paid on these amounts.

Plaintiffs served a Rule 30(b)(6) deposition notice regarding Defendant TLT's payroll systems, and took the deposition of Shirley Washington on December 14, 2018.  The parties thereafter agreed to postpone the depositions of the remaining Rule 30(b)(6) witnesses, and TLT serving offers of judgment, so that that the parties could participate in mediation. Settlement Agreement ¶ 14.

In advance of mediation, TLT produced supplemental payroll data, and Amazon produced delivery data, which Class Counsel reviewed and analyzed. *Id.* ¶ 15. On July 29, 2019, the Parties participated in mediation before an experienced mediator, Stephen Sonnenberg, Esq. *Id.* ¶ 16. As a result of the mediation, and subsequent arms' length negotiations, the Parties have agreed to settle the Action according to the terms of this Settlement Agreement.

On September 16, 2019, pursuant to the terms of the Settlement Agreement and with consent of Defendants, Plaintiffs filed their Third Amended Complaint, substituting Michael Easterday for O'Donald Henry as the representative Named Plaintiff for the New Jersey class, in light of Mr. Easterday's acceptance of an offer of judgment. (Dkt. Nos. 112-114, 123, E. A)

As a result of the mediation and arm's-length negotiations between the Parties, the Parties

have agreed to settle the Action in accord with the terms of the Settlement Agreement. Accordingly, the Parties now present the Settlement Agreement to the Court for its approval. The Settlement offers significant advantages over the continued prosecution of this case, as the Plaintiffs and the Settlement Class will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendants would assert various defenses to liability. *See* Schalman-Bergen Decl. ¶ 11. The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Settlement Class are provided with notice of the Settlement Agreement and its terms. *See id* ¶ 23.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

### A.    The Settlement Class

The Settlement Agreement provides that the Settlement Class includes "the Named Plaintiffs, all Opt-in Plaintiffs, and all current or former Delivery Associates who were employed by TL Transportation, LLC to deliver packages to Amazon customers in the United States between March 8, 2014 and April 15, 2017." Settlement Agreement ¶ 23(z).

The Parties have agreed that, for settlement purposes only, the requisites for establishing collective action certification pursuant to 29 U.S.C. § 216(b) have been satisfied, and the Settlement Class may be certified pursuant to Fed. R. Civ. P. 23. *Id.* at ¶ 29(a). Notice of the settlement will be provided to the above-defined Settlement Class in the form of the proposed Settlement Notice ("Notice") attached to the Settlement Agreement as Exhibit A by first class mail and email (where available). *Id.* at ¶ 23(cc); Ex. A. Every Eligible Class Member (*i.e.*, Settlement Class Members who do not exclude themselves from the Settlement) will be paid a Settlement Award. *Id.* at ¶ 38.

**B.      Distribution Of The Gross Settlement Amount And Release Of Claims**

Pursuant to the Settlement Agreement, Defendant TLT shall electronically transfer one-third of the Gross Settlement Amount (*i.e.*, $1,800,000.00) to the Settlement Administrator within 10 business days after the Court grants preliminary approval to the Settlement. *Id.* at ¶ 34(a). No later than ten (10) business days after the Effective Date, Defendant TLT shall electronically transfer the balance of the Gross Settlement Amount to the Settlement Administrator. *Id.* Upon receipt by the Settlement Administrator, these funds shall be transferred immediately into a Qualified Settlement Fund. *Id*. The Qualified Settlement Fund will be administered by a Court-appointed Settlement Administrator, the Angeion Group, an independent and highly experienced third-party claims administration company. *Id.* at ¶¶ 23(x), 34(a), 34(b).

The Gross Settlement Amount includes amounts to cover: (1) service awards for their efforts in bringing and prosecuting this matter to Named Plaintiff Tyhee Hickman in the amount of $15,000, Named Plaintiff Shanay Bolden in the amount $15,000, and Named Plaintiff O'Donald Henry in the amount of $2,500; (2) the payment of attorneys' fees in the amount of up to one-third (1/3) of the Gross Settlement Amount ($600,000.00), which will compensate Class Counsel for all work performed in the litigation as of the date of the Settlement Agreement, plus all work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Action, plus the payment of out-of-pocket costs incurred by Class Counsel, not to exceed Forty Thousand Dollars ($40,000); and (4) a maximum of Twenty-Five Thousand Dollars $25,000 for the Settlement Administrator's costs of the settlement administration. *Id.* at ¶¶ 23(0); 23(r). Class Counsel will file a Motion for Approval of Attorneys' Fees and Costs and for Final Approval of the Settlement prior to the Court's final fairness hearing.

Pursuant to the Settlement Agreement, if the Court approves the amounts set forth above, the Net Settlement Amount would be approximately One Million, One Hundred and Two Thousand, and Five Hundred Dollars ($1,102,500). Awards to Eligible Class Members will be made from the Net Settlement Amount. Specifically, all Eligible Class Members will receive a *pro rata* share of the Net Settlement Amount based on the total number of work weeks during which the Eligible Class Member worked four or more days and was employed by Defendant TLT to deliver packages to Amazon customers in the United States between March 8, 2014 and April 15, 2017. *Id.* at ¶ 37(b).

In addition, the amount of $100.00 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Members so that each Eligible Class Member receives at least $100.00 in exchange for his/her release of claims pursuant to the Settlement Agreement. *Id.* at ¶ 37(a). All Settlement Award determinations shall be based on Defendant's previously produced payroll and timekeeping data for Settlement Class Members. *Id.* at ¶ 28.

Fifty percent (50%) of each Settlement Award to Eligible Class Members shall be treated as back wages and, accordingly, on each Settlement Award, the Settlement Administrator shall effectuate federal and applicable state income and employment tax withholding as required by law with respect to 50% of each Settlement Award distributed, and Defendant TLT shall pay the employer's share of all required FICA and FUTA taxes on such amounts, in addition to the Gross Settlement Amount. *Id.* at ¶ 39. Defendant TLT shall pay these taxes, which amounts shall be deposited into the Qualified Settlement Fund after the Settlement Awards are mailed to Eligible Class Members, in addition to the Gross Settlement Amount. *Id.* Amounts withheld as the employee's share of FICA and FUTA taxes, as well as amounts paid into the Qualified Settlement

Fund by Defendant as representing the employer's share of FICA and FUCA taxes, will be remitted by the Settlement Administrator from the Qualified Settlement Fund to the appropriate governmental authorities. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes. *Id.*

Settlement Awards for each Eligible Class Member will be mailed to them within thirty (30) days after the Final Approval Order, or as soon as reasonably practicable. *Id.* at ¶ 42. Checks issued by the third-party Settlement Administrator shall remain valid and negotiable for 180 days from the date of their issuance. *Id.* at ¶ 43. If, at the conclusion of the 180-day check void period, there are any monies remaining in the Qualified Settlement Fund, those monies shall be paid to the Parties' agreed upon *cy pres* recipient, Philadelphia Legal Assistance, subject to the Court's approval in the Final Approval Order. *Id.* at ¶ 44. There will be no reversion of any portion of the Gross Settlement Amount to Defendant at any time. *Id.*

In exchange for the Settlement benefits, Named Plaintiffs and all Eligible Class Members who worked in Pennsylvania, Maryland, or New Jersey shall release "finally, forever and with prejudice . . . any and all state law claims for unpaid overtime, state wage and hour, and related common law claims against Defendants that accrued during their work with Defendants during the Class Period, without limitations, all state claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses." *Id.* at ¶ 26. Eligible Class Members who cash or deposit their Settlement Award check will be deemed to have released their FLSA claims. *Id.* Defendants agree that participation in the settlement and release of the Eligible Class Members' Released Claims may not be used to assert collateral estoppel, *res judicata*, waiver or any other claim preclusion of FLSA claims not included in the Eligible Class

10

Members' Released Claims with respect to individuals who did not specifically release those FLSA claims in this Agreement. *Id.* No releases shall be effective until the Effective Date of the Settlement Agreement. *Id.* at ¶ 20.

### C.   Notice To Potential Settlement Class Members

The Settlement Agreement provides what Plaintiffs believe is the fairest and most practicable procedure for notifying Settlement Class Members of the terms of the Settlement Agreement and their respective rights and obligations under the Agreement – direct mail and electronic mail ("email"). *Id.* at ¶ 29(f). Under the terms of the Settlement Agreement, within five (5) business days after the Court's Preliminary Approval Order, Defendant TLT and Class Counsel shall jointly provide the Settlement Administrator with an electronic database containing the names, last known addresses, last known telephone numbers, last known email addresses (if any) for Settlement Class Members. *Id.* at ¶ 28(c). In order to provide the best notice practicable, the Settlement Administrator will take reasonable efforts to identify current addresses via public and proprietary systems. *Id. at ¶* 28(e).

Within fifteen (15) business days after the Court's Preliminary Approval Order, the Settlement Administrator shall mail and email (if email addresses are available) an agreed upon and Court-approved Notice to Named Plaintiffs, Opt-in Plaintiffs, and Settlement Class Members. *Id.* at *¶* 29(e). Any Notices returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within three (3) business days following receipt of the returned mail. *Id.* at *¶* 29(f). If any Notice is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts to search for the correct address and shall promptly re-mail the Settlement Notice to any newly found addresses. *Id*. In no circumstance shall such re-mailing extend the Notice Deadline. *Id.*

Settlement Class Members who worked in the state of Pennsylvania, Maryland, or New

Jersey shall have sixty (60) calendar days from the time the Notice is initially mailed by the Settlement Administrator to object to or opt-out of the Settlement ("Notice Deadline"). *Id.* at ¶¶ 23(s), 30. Such Settlement Class Members who wish to object to the Settlement may do so by submitting a written statement objecting to Class Counsel and counsel for Defendant on or before the Notice Deadline. *Id.* at ¶ 30. Additionally, such Settlement Class Members who wish to exclude themselves from the Settlement ("opt out") must mail to Class Counsel or the Settlement Administrator a written statement indicating that they do not wish to participate on or before the Notice Deadline, or be bound by the Settlement. *Id.* at ¶ 31.

Defendants will not take any adverse action against any individual on the grounds that he/she is eligible to participate or does participate in the Settlement. *Id* at ¶ 29(g).

## IV.   DISCUSSION

Plaintiffs respectfully request that the Court enter the accompanying proposed order preliminarily approving the Settlement under Rule 23 and approving the terms as a fair and reasonable resolution of a *bona fide* dispute under the FLSA.

### A.   Applicable Legal Standards

#### 1.   Legal Standard for Approval of FLSA Settlements

The FLSA provides that employers who violate its provisions "shall be liable to the employee … affected in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be…." 29 U.S.C. § 216(b). While the FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement, *see, e.g., Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945), FLSA claims may be settled or compromised where a district court approves the settlement pursuant to 29 U.S.C. § 216(b). *See, e.g., In re Chickie's & Pete's Wage & Hour Litig*., No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (citing *Cuttic v. Crozer-Chester Med. Ctr.,* 868 F. Supp. 2d 464, 466

(E.D. Pa. 2012)).[5]

A district court's approval of an FLSA collective action settlement requires only a determination that the compromise reached "'is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.'" *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *7 (E.D. Pa. Sept. 27, 2017) (citing *Cuttic*, 868 F. Supp. 2d at 466 (quoting *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).[6]

While the United States Court of Appeals for the Third Circuit has not yet specifically detailed the contours of this standard, "district courts in this Circuit have referred to the considerations set forth in *Lynn's Food Stores*." *Chickie's*, 2014 WL 911718 at *2 (citing *Brown v. True Blue, Inc*., No. 10-514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013)); *Kauffman v. U-Haul Int'l, Inc.,* 5:16-cv-04580, 2019 WL 1785453, at *2 (E.D. Pa. April 24, 2019) (citing *Farris v. JC Penny Co. Inc.,* 176 F. 3d 706, 711 (3d Cir. 1999).[7]

"Under *Lynn's Food Stores*, a district court may find that a proposed settlement resolves a *bona fide* dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute.'" *Chickie's*, 2014 WL 911718 at *2 (citing *Lynn's Food Stores,* 679 F.2d at 1354)). "Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." *Kauffman*, 2019 WL 1785453, at

---

[5] FLSA claims may also be compromised or settled where the Secretary of Labor supervises an employer's payment to employees under 29 U.S.C. § 216(c).  *See, e.g., Chickie's*, 2014 WL 911718, at *2 (citing *Cuttic,* 868 F. Supp. 2d at 466).

[6] *See also Brumley v Camin Cargo Control, Inc*., Nos. 08-1798, 10-2461 and 09-6128, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food*, 679 F.2d at 1354) (collecting cases).

[7] While the Third Circuit has not definitively set out factors for evaluating the fairness of a settlement in an FLSA collective action, some district courts in this Circuit have utilized the factors used for assessing the fairness of class action settlements under Rule 23(e) that are set forth in *Girsh v. Jepson*, 521 F. 2d 153 (3d Cir. 1975). *See, e.g., Altnor v. Preferred Freezer Services Inc.*, 197 F. Supp. 3d at 746, 764 (E.D. Pa. July 18, 2016).

*2. "Additionally, a strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length." *Id.* (citation omitted).

As set forth below, the proposed Settlement in this case meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. Moreover, the proposed Settlement falls well within the range of possible approval, because it is both substantively and procedurally fair. As such, the Settlement should be approved.

### 2.      Legal Standard for Approval of Rule 23 Class Action Settlements

Rule 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis. Fed. R. Civ. P. 23(e) outlines a two-step process by which district courts must first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified. *See, e.g.*, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41.

Plaintiffs now seek preliminary approval of the settlement pursuant to Fed. R. Civ. P. 23(e). "The preliminary determination establishes an initial presumption of fairness." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995). A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* at 785 (citing 2 Newberg on Class Actions § 11.41 at 11–88 (3d ed.1992)); MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42, at 238 (1997); *see also Klingensmith v. BP Prods. N. Amer., Inc.*, No. 07-cv-1065, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008) (holding "the settlement merits preliminary approval [as the settlement was] reached as a result of arm's-length negotiation between experienced counsel aided by an experienced mediator."); *In re Linerboard Antitrust*

14

*Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

The standard for final approval of a settlement is that the settlement is fair, adequate, and reasonable to the class. *Walsh v. Great Atl. & Pac. Tea Co., Inc*., 726 F.2d 956, 965 (3d Cir. 1983). When deciding preliminary approval, a court does not conduct a "definitive proceeding on fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atl. Toyota Antitrust Litig*., 564 F. Supp. 1379, 1384 (D. Md. 1983); *see also In re Gen. Motors Corp.*, 55 F.3d at 785 (holding that the "preliminary determination establishes an initial presumption of fairness"). That determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the settlement is assessed. *See, e.g.*, *In re Linerboard Antitrust Litig*., 292 F. Supp. 2d at 638.

As set forth below, the proposed Settlement in this case falls well within the range of possible approval because it meets each of the requirements of substantive and procedural fairness. In addition, the proposed Settlement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. As such, there are no grounds to doubt the reasonableness of the Settlement.

**B.      The Terms of the Proposed Settlement Are Fair and Reasonable When Considering the Uncertainty of Continuing To Litigate This Matter**

Here, the proposed Settlement meets both the standard for preliminary approval under Rule 23(e) as well as under the FLSA. The Gross Settlement Amount provides Settlement Class Members with certain payment of wages that would have been owed if the case had been taken to trial, and it was carefully negotiated based on a substantial investigation by Class Counsel, detailed

15

damages analyses, and the review and analysis of documents produced by Plaintiffs and Defendants in preparation for mediation. *See* Schalman-Bergen Decl. ¶ 9.

During the course of their extensive settlement negotiations, the Parties exchanged data regarding all Settlement Class Members, and performed and exchanged detailed exposure models and analyses, in addition to exchanging detailed mediation statements and engaging in numerous discussions regarding the various issues in the case. *See id.* at ¶ 14. While the Court had already ruled on liability – *i.e.* holding that unpaid wages were owed where a Settlement Class Member worked more than forty hours per week -- the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to the following:

1)      the amount of time that Delivery Associates spent performing their work[8];

2)      whether damages should be paid at a half-time rate or a time-and-a-half rate[9];

---

[8] Because the TL Defendants did not keep accurate time records of the time that Delivery Associates worked during the relevant time period, the Parties had to use various assumptions to estimate time worked for purposes of calculating damages. Both parties modeled these damages by analyzing Amazon's delivery data, which includes various times when the Delivery Associates scan and/or deliver packages to Amazon customers. The parties engaged in numerous meet and confer calls so that Class Counsel could understand the data and could engage in fully informed settlement negotiations. As part of their exposure analysis, Class Counsel's in house data analyst matched payroll records produced by TLT with the delivery data produced by Amazon, and built in various factual assumptions on time worked in addition to the time that was captured by Amazon's delivery data. Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this issue. Schalman-Bergen Decl. ¶ 16.

[9] Plaintiffs argued that, because Defendant TLT admitted that Delivery Associates were paid other forms of compensation for services, the exception to the general rule that overtime must be paid at a time-and-a-half rate as set forth in 29 C.F.R. § 778.112 would not apply. *See* 29 C.F.R. § 778.112 (permitting overtime to be paid at a half time rate where an employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services); *see also Rodriguez v. Republic Servs.*, No. SA–13–CV–20–XR, 2013 WL 5656129, at *2 (W.D. Tex. Oct. 15, 2013). Defendants raised various factual and legal arguments disputing that damages would be ordered to be paid at a time-and-a-half rate. *See, e.g., Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 10 (1st Cir. 2016); *Powell v. Carey Int'l., Inc.*, 514 F. Supp. 2d 1302, 1313 (S.D. Fla. 2007); *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1268 (10th Cir. 2011). Ultimately the Gross

3)      whether Defendants would be able to meet their burden of demonstrating that the TL Defendants' unlawful pay system was taken in good faith with reasonable grounds for their belief that they were complying with the FLSA pursuant to 29 U.S.C. § 216(b) such that they would avoid the imposition of liquidated damages;

4)      whether Amazon would be held liable for the alleged pay violations of TLT;

5)      whether the Court would certify a class action under Rule 23 or grant final certification of a collective action under the FLSA; and

6)      whether Plaintiffs and/or Defendants would appeal myriad legal or factual determinations, including class/collective action treatment, liability, and damages.

Ultimately, the Settlement that the Parties reached reflects what Class Counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded in litigation. *See id.* at ¶ 18. The **Net Settlement Amount** of approximately $1,102,500 (*i.e.* the amount that will actually be paid out to Settlement Class Members after deductions are made for fees, costs, service awards, and administration costs*)* represents approximately 157% percent of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions on time worked at a half time rate. *Id.* at ¶ 10.

This is an excellent result for the Settlement Class Members, especially considering the risks of continued litigation. First, there was a risk that Plaintiffs would not succeed in maintaining a collective or class through trial. *See id.* at ¶ 18. Second, a trial on the merits would involve significant risks for Plaintiffs as to both liability on the issue of joint employment by Amazon and the appropriate rate and calculation of damages, and any verdict at trial could be delayed based on appeals by Defendants. *See id.* By contrast, Settlement Class Members will be entitled to receive significant and certain sums of money for their unpaid wages that the Court agreed were owed to them prior to TLT changing its pay system.

---

Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this issue. Schalman-Bergen Decl. ¶ 17.

In addition, the proposed allocation formula is fair and reasonable and should be preliminarily approved. *See Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Settlement Class Members do not need to take any action in order to receive a Settlement Award. Under the proposed allocation formula, each Eligible Class Member will receive a minimum amount of one hundred dollars in addition to settlement shares that bear a reasonable relationship to his/her potential damages (*i.e.*, a *pro* rata portion of the Net Settlement Amount that is calculated by identifying each week that an Eligible Class Member worked four or more days[10] during the applicable Class Period, for which he or she will be entitled to one (1) settlement share, subsequently dividing the Net Settlement Amount by the total number of settlement shares for all Eligible Class Members to reach a per-share dollar figure, and finally multiplying that per share dollar figure by each Eligible Class Member's number of settlement shares). Settlement Agreement ¶ 37. This allocation formula takes into account that Settlement Class Members had different schedules, worked different amounts of overtime hours on a weekly basis, and, if they prevailed, would be entitled to different amounts of damages. The Notice will also provide the minimum amount that each Settlement Class Member can expect to receive from the Settlement. *See* Settlement Agreement, Exhibit A.

Many of these Settlement Class Members (169) also had previously considered and turned down offers of judgment served on them by TLT, at the risk that costs would be taxed against

---

[10] Delivery Associates were scheduled to work ten hours per day, so would not be expected to work more than forty hours in a week if they worked fewer than four days. *See* Dkt. No. 74, Declaration of Scott Foreman ("TLT scheduled and expected its delivery associates to work 10 hours a day and paid its employees eight hours at their regular rate and two hours at their overtime rate for each day worked.").

Plaintiffs if the amount finally obtained was not more favorable than the unaccepted offer. *See* Rule 68(d). The Settlement Agreement provides Settlement Class Members with more money than was offered by the TLT Defendants in their offers of judgment (Settlement Agreement ¶ 37(b)(iii)), and also provides that 16 Settlement Class Members who previously accepted their offers of judgment will be entitled to the difference between this proposed settlement and the amounts they accepted, in light of the fact that the Court's orders only dismissed their claims against TLT. *See* Dkt. Nos. 50, 111, 114 (Orders entering Partial Judgment pursuant to Rule 54(b) in favor of Opt-In Plaintiffs and against Defendant TL Transportation).[11]

Where, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the class members, it is an indication that the proposed settlement is fair, reasonable, and adequate. *See Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) (finding preliminary approval of settlement appropriate where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources.").[12] In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

---

[11] Class Counsel will provide a further analysis on this issue in connection with their Motion for Final Approval, once the minimum settlement shares have been calculated.

[12] *See also In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact. . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12–cv–0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013) ("The Court sees no reason to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate.").

**C.    The Settlement Agreement Is The Product of Informed, Non-Collusive Negotiation And Does Not Present Any Grounds To Question Its Fairness**

It is well-established that, in determining whether a proposed settlement should be preliminarily approved, courts may consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations." *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001) (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) §30.44). Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *See, e.g.*, *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiation at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("settlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight"); *UAW v. Gen. Motors Corp.*, No. 05-cv-73991, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (holding in an FLSA case, that "the endorsement of the parties' counsel is entitled to significant weight.").

The Settlement was the result of contested litigation, factual discovery, and arm's-length negotiations. *See* Schalman-Bergen Decl. ¶ 7. The proposed Settlement was reached only after (1) the exchange of substantial documents and records; (2) multiple pre-settlement conference calls; (3) multiple depositions (4) extensive briefing and oral argument on a motion for summary judgment; (5) preparation and exchange of mediation statements; and (6) three (3) in-person mediations in Philadelphia, Pennsylvania before experienced mediators, which included additional extensive arm's-length negotiations between counsel for the Parties both before and after the mediation. *See id.* at ¶ 12. As described above, Class Counsel extensively investigated the

applicable law as applied to the relevant facts, and the potential defenses thereto. The Gross Settlement Amount is based on an intensive review of the facts and law. *See id.* at ¶ 13.

Class Counsel are experienced and respected class action litigators, who specialize in wage theft actions on behalf of workers brought under the Fair Labor Standards Act and related state wage laws. *See id.* at ¶¶ 2-5, Ex. A; Hancock Decl. ¶¶ 2, 4-6. Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believe this Settlement will provide a substantial benefit to each of the Settlement Class Members. *See* Schalman-Bergen Decl. at ¶ 19; Hancock Decl. at ¶ 10.

In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the parties.

**D.    The Additional Service Awards To the Named Plaintiffs Are Justified And Should Be Approved**

Pursuant to the Settlement Agreement, Plaintiffs Tyhee Hickman, Shanay Bolden, and O'Donald Henry request approval for service awards for their efforts in bringing and prosecuting this matter in the amount of Fifteen Thousand Dollars ($15,000.00) each to Named Plaintiffs Tyhee Hickman and Shanay Bolden, and Two Thousand, Five Hundred Dollars ($2,500) to Named Plaintiff O'Donald Henry.  Settlement Agreement ¶¶ 23(r). Subject to Court approval, this amount will be paid to the Named Plaintiffs from the Gross Settlement Amount and shall be in addition to their recovery of unpaid overtime by their participation as Eligible Class Members who will receive a Settlement Award.

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citation omitted); *see also Martin v. Foster Wheeler Energy Corp.*, No. 3:06-cv-0878, 2008 WL 906472, at *8-*9 (M.D. Pa.

Mar. 31, 2008) (approving incentive award for named representatives at a total of $10,000.00). It is particularly appropriate to compensate named representative plaintiffs with service awards where they have actively assisted Class Counsel in their prosecution of the litigation for the benefit of a class. *Young v. Tri Cnty. Sec. Agency, Inc.*, 13-cv-5971, 2014 WL 1806881, at *1-8 (E.D. Pa. May 7, 2014) (approving incentive award for named representative in action alleging violations of the FLSA and PMWA, where named plaintiff released all waivable claims arising out of employment and made significant contributions to the litigation).

Here, the proposed additional payment is justified by the benefits that Plaintiffs' diligent efforts have brought to the Settlement Class Members. Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. *See* Schalman-Bergen Decl. ¶ 21; Hancock Decl. ¶ 11. They worked with Class Counsel, providing background information about their employment, about Defendant's policies and practices, and about the allegations in this lawsuit. Schalman-Bergen Decl. ¶ 21; Hancock Decl. ¶ 11.  Plaintiff Hickman attended two of the mediation sessions. Schalman-Bergen Decl. ¶ 21; Hancock Decl. ¶ 11. These individuals work in an industry in which workers are largely fungible, and they bravely took the risk to step forward on behalf of their fellow workers, knowing that their name would be a on a public docket available through an internet search, and knowing that prospective employers might take their participation in such a lawsuit into consideration when making hiring decisions.  *See* Schalman-Bergen Decl. ¶ 21; Hancock Decl. ¶ 11. They risked their reputation in the community and in their field of employment in order to participate in this case on behalf of the Class. *See* Schalman-Bergen Decl. ¶ 21; Hancock Decl. ¶ 11. The lesser service award allotted to Plaintiff Henry simply reflects the shorter length of time that he has served as a Named Plaintiff in this case, which began with Plaintiffs' filing of the Third Amended Complaint on September 16, 2019. Schalman-Bergen Decl.

¶ 21; Hancock Decl. ¶ 11.

The additional payment requested in this case is also in line with those approved in wage and hour collective and class actions throughout the Third Circuit and around the country. *See, e.g., Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (D.N.J. Apr. 8, 2011) (citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney*, No. 06-cv-3202, 2009 WL 2137224 at *12 (E.D. Pa. July 16, 2009) (approving $20,000.00 enhancement awards for each of three named plaintiffs in wage and hour settlement).[13]

For these reasons, the service award payments of $15,000 each to Named Plaintiffs Tyhee Hickman and Shanay Bolden, and $2,500 to Named Plaintiff O'Donald Henry should be preliminarily approved as fair and reasonable.

**E.     The Proposed Settlement Furthers the Purpose of the FLSA**

Finally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. *See Brown*, 2013 WL 5408575, at *3 (finding settlement agreement frustrated the implementation of the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards); *Cheeks v. Freeport Pancake House*, 796 F.3d  199 (2d Cir. 2915) (outlining

---

[13] *See also, e.g., Tavares v. S-L Distrib. Co., Inc.*, No. 1:13-cv-1313, 2016 WL 1743268, at *9 (M.D. Pa. May 2, 2016) ($15,000 service award each to both named plaintiffs); *Badia v. HomeDeliveryLink, Inc.*, Nos. 2:12–6920 (WJM), 2:12–cv–07097, 2015 WL 5666077, at *9 (D.N.J. Sept. 25, 2015) (service awards of $15,000 each to 6 named plaintiffs); *Creed v. Benco Dental Supply, Co.*, No. 3:12–CV–01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) ($15,000 service award to named plaintiff); *Foster v. Kraft Foods Grp. Inc.*, Nos. 2:09-cv-00453-CB and 2:12-cv-00205-CB, 2013 WL 440992, at *2 (W.D. Pa. Jan. 15 2013) (approved service awards of $15,000); *Godshall v. Franklin Mint Co.*, No. No. 01-cv-6539, 2004 WL 2745890, *4 (E.D. Pa. Dec.1, 2004) ($20,000 incentive approved each to 2 named plaintiffs). *Reyes v. Altamarea Grp., LLC*, No. 10-6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving $15,000 service award to each of three representative plaintiffs where wage settlement fund was $300,000).

provisions that frustrate the purpose of the FLSA).

Indeed, the settlement furthers the purposes of the FLSA by providing Eligible Class Members with substantial recovery towards their alleged unpaid overtime that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency....").

Specifically, the Settlement's release provisions are limited to wage and hour claims that occurred prior to April 15, 2017, and Settlement Class Members will not release FLSA claims unless they cash or deposit their Settlement Check. Settlement Agreement ¶ 26.  The Settlement contains no confidentiality or indemnification provisions, nor any prohibitions on future employment. *See generally* Settlement Agreement.  The Settlement is non-reversionary, and all Class Members will automatically receive a check for wages without the need to submit a Claim Form. *Id.*  Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### F.    The Court Should Preliminarily Certify the Proposed Settlement Class Under Fed. R. Civ. P. 23[14]

In order to obtain class certification, a party must show that all four prerequisites of Rule

---

[14] For a collective action to proceed under section 216(b) of FLSA, two requirements must be met: (1) all members of the collective action must affirmatively consent to join; and (2) all members of the collective action must be "similarly situated." *See Young*, 2014 WL 1806881, at *2. Because the requirements of Rule 23 are more stringent than Section 216(b) of the FLSA, Plaintiffs contend that they have also met the criterion for confirmation of the Court's July 13, 2018 Order conditionally certifying the Settlement Class as a collective pursuant to 29 U.S.C. § 216(b),

23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b). *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011 (1975)). A case may be certified as a class action under Rule 23 when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985). These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).

Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These dual requirements are commonly referred to as "predominance" and "superiority," respectively. *See, e.g.*, *In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

A party that seeks to certify a settlement class must satisfy the same requirements necessary to maintain a litigation class. *In re Gen. Motors Corp.*, 55 F.3d at 778 (discussing and approving use of settlement-only classes). The substantive terms of the settlement agreement may factor into certain aspects of the certification calculus. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

---

pending final approval of the settlement. Plaintiffs will seek final certification of the Settlement Class in their Motion for Final Approval.

619 (1997). Pursuant to Fed. R. Civ. P. 23(c)(1), the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (*citing Collier v. Montgomery Cnty. Hous. Auth.*, 192 F.R.D. 176, 181 (E.D. Pa. 2000)).

Plaintiffs move for preliminary certification of proposed Settlement Class under Pennsylvania, Maryland and New Jersey state law under Fed. R. Civ. P. 23(b)(3), and request that the Court preliminarily find that all of the requirements for class certification are satisfied for settlement purposes only. Pursuant to the terms of the Settlement Agreement, Defendants have stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Fed. R. Civ. P. 23 have been and are met. *See* Settlement Agreement ¶ 21.

### 1.      The Settlement Class is Sufficiently Numerous

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry*, 198 F.R.D. at 467. The proposed Settlement Class here easily meet the numerosity requirement because, through Defendants' payroll records, approximately 229 members have been identified who worked in Pennsylvania, approximately 253 members have been identified who worked in Maryland, and approximately 94 members have been identified who worked in New Jersey. *See* Schalman-Bergen Decl. ¶ 22.; S*tewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (although "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing "that the potential number of plaintiffs exceeds 40."). Numerosity is satisfied.

### 2.      The Settlement Class Seeks Resolution of Common Questions

The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if the Named Plaintiff shares at least one question of fact or law with the grievances of the prospective class. *See Stewart*

26

*v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, the claims of Named Plaintiffs and the members of the Settlement Class arise from their common work as Delivery Associates, working under Defendant TLT's common pay policies and alleged failure to pay them the proper amount of overtime premiums. This pay plan applied to all Members of the Settlement Class, who all performed similar work on similar schedules. Amazon also raised the same joint employer defense to all Delivery Associates. These sample common questions of law and fact, which Plaintiffs contends apply uniformly to all members of the Settlement Class, is sufficient to satisfy the commonality requirement.

### 3. The Claims Of The Named Plaintiffs Are Typical Of the Settlement Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied for purposes of preliminarily approving the settlement, because Plaintiffs' claims are reasonably coextensive with those of absent class members, and because Plaintiffs possess the same interest and suffered the same injury as the absent class members. *See Fry*, 198 F.R.D. at 468; *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). Plaintiffs' claims for unpaid overtime compensation during weeks when they worked as delivery drivers are typical of the claims of the proposed Settlement Class.  In an abundance of caution, Named Plaintiff Michael Easterday, who previously accepted an offer of judgment has been substituted with Opt-In Plaintiff O'Donald Henry, who also performed work in New Jersey. *See* Dkt. No. 123.  The typicality requirement is satisfied here.

### 4. Class Counsel and Plaintiffs Meet The Adequacy Requirements Of The Settlement Class

To meet the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4), a named plaintiff must show: 1) that the potential named plaintiff has the ability and the incentive to represent the claims of the class vigorously; 2) that he or she has obtained adequate counsel; and 3) that there is no conflict between the individual's claims and those asserted on behalf of the class.

27

*Fry*, 198 F.R.D. at 469.

The adequacy of representation requirement is met here because Plaintiffs have the same interests as the members of the proposed Settlement Class. There is no conflict between the Plaintiffs and the Settlement Class in this case, and Plaintiffs' claims are in line with the claims of members of the Settlement Class. Plaintiffs have and will continue to aggressively and competently assert the interests of the proposed Settlement Class. Further Class Counsel are skilled and experienced in wage and hour class action litigation and have significant experience in representing workers in wage theft actions. *See* Schalman-Bergen Decl. ¶¶ 2-5; Hancock Decl. ¶¶ 2, 4-6. The adequacy requirement is satisfied.

### 5. The Settlement Class Satisfies The Predominance And Superiority Requirements of FED. R. CIV. P. 23(b)(3)

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

For the reasons discussed above, the Settlement Class satisfies the predominance requirement. In addition, allowing the members of the Settlement Class the opportunity to participate in class settlements that yield an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. Moreover, the Third Circuit has ruled that there is no reason to preclude federal jurisdiction over class actions asserting claims under state statutory wage and overtime laws paralleling the FLSA. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012). Accordingly, Plaintiffs respectfully request that the Court provisionally

certify the Settlement Class for settlement purposes only.

> **G.    The Proposed Notice Provides Adequate Notice To The Eligible Class Members And Satisfies Due Process**

The United States Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Opt-in Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class").

Here, the proposed Notice and manner of distribution negotiated and agreed upon by the Parties is "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B), and related FLSA case law. All Settlement Class Members have been identified in a class list, and the Notice will be mailed directly to the last known address of each member (and those addresses that the Settlement Administrator is able to find using reasonable investigatory methods). The Notice will also be emailed to Settlement Class Members whose email addresses are known.

The proposed Notice, which is attached to the Settlement Agreement as Exhibit A, is clear and straightforward, and provides information on the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to Settlement Class Members, including the minimum amount each will be entitled to receive, the allocation formula, the scope of the release, the request for attorneys' fees and costs, and the

procedures and deadlines for making a claim for a settlement award, opting out of the Settlement or submitting objections. *See* Settlement Agreement, Ex. A.

Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class or collective notice disseminated under authority of the Court, and should be approved.

### H.     The Proposed Implementation Schedule

The Settlement Agreement contains a proposed schedule for notice and final approval of the Settlement Agreement. The proposed schedule, which Plaintiffs respectfully request that this Court approve, is as follows:

| | |
|---|---|
| Defendant TLT to send CAFA Notice | Within ten (10) business days after submission of the Settlement Agreement to the Court |
| Defendant TLT and Class Counsel Provide Settlement Class Contact Information | Within ten (5) business days after the Court's Preliminary Approval Order |
| Notice Sent | Within (15) business days after the Court's Preliminary Approval Order |
| Plaintiffs' Motion for Approval of Attorneys' Fees and Costs | Forty-Five (45) days after the Settlement Notice is initially mailed. |
| Deadline to Postmark Objections or Requests for Exclusion ("Objection and Exclusion Deadline") | Sixty (60) days after the Settlement Notice is initially mailed. |
| Plaintiffs' Motion for Final Approval | Five (5) business days prior to Final Approval Hearing. |
| Final Approval Hearing | At the Court's convenience, approximately one hundred (100) days after the Court's Preliminary Approval Order. |

## V.     CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this Unopposed Motion for Preliminary Approval, and sign the accompanying proposed preliminary approval order.

Dated: September 18, 2019

Respectfully Submitted,

BERGER MONTAGUE PC

/s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
sschalman-bergen@bm.net
crodriguez@bm.net

Ryan Allen Hancock
WILLIG, WILLIAMS, & DAVIDSON
1845 Walnut Street 24th Floor
Philadelphia, PA 19103
Telephone (215) 656-3600
rhancock@wwdlaw.com

*Attorneys for Plaintiffs and the Settlement Class*