# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TYHEE HICKMAN, SHANAY BOLDEN, and O'DONALD HENRY, individually and on behalf of all persons similarly situated, | : : : | Civil Action No.: 2:17-cv-01038-GAM |
| **Plaintiffs,** | : : | |
| v. | : : | **Class & Collective Action** |
| TL TRANSPORTATION, LLC, SCOTT FOREMAN, HERSCHEL LOWE, AMAZON.COM, LLC, and AMAZON LOGISTICS, INC. | : : : : : | |
| **Defendants.** | : : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL ARGUMENT ........................................................................................ 2

    A.  The Fee Shifting Provisions of the Fair Labor Standards Act, Pennsylvania Wage and Hour Law, New Jersey Wage and Hour Law, and Maryland Wage and Hour Law Provide for the Award of Attorneys' Fees ..................................................................................... 2

    B.  The Size of the Fund Created and the Number of Beneficiaries, as Well as the Value of the Benefits Supports the Requested Fee ....................................................................... 5

    C.  The Skill and Efficiency of Class Counsel that Enabled them to Obtain this Result, the Complexity of the Litigation, and the Risk of Nonpayment Support the Requested Fee.... 9

    D.  The Lodestar Cross-Check Supports the Requested Fee ............................................ 11

    E.  The Awards in Similar Cases Supports the Requested Fee.......................................... 13

    F.  Class Counsel's Costs Should be Approved................................................................ 15

III.  CONCLUSION.................................................................................................. 16

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945) ................................................... 11

*Alegre v. Atlantic Central Logistics*, No. 15-2342 (SRC), 2015 WL 4607196 (D.N.J. July 31,
    2015)...................................................................................................... 14

*Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746 (E.D. Pa. 2016) .................. 3, 6, 13

*Bair v. Purcell*, 500 F. Supp. 2d 468 (M.D. Pa. 2007) .................................................... 3

*Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905, 09-124, 09-4587, 2011 WL 1344745 (D.N.J.
    Apr. 8, 2011) ........................................................................... 5, 6, 14, 15

*Brumley v. Camin Cargo Control, Inc.*, Nos. 08-1798, 102461, 09-6128, 2012 WL 1019337
    (D.N.J. Mar. 26, 2012) .............................................................................. 13

*Chemi v. Champion Mortg.*, No. 05-1238, 2009 WL 1470429 (D.N.J. May 26, 2009)............. 4, 7

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) .................................... 14

*Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 WL 7178338 (E.D. Pa. Dec. 9, 2016)11, 12

*Erie Cty. Retirees Assoc. v. Cty. Of Erie, Pa.*, 192 F. Supp. 2d 369 (W.D. Pa. 2002) ................ 14

*Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483 (E.D. Pa. 2018) ........................................... passim

*Green v. Ventnor Beauty Supply, Inc., 1:18-cv-15673-NLH-AMD*, 2019 WL 2099821 (D.N.J.
    May 14, 2019) ........................................................................................ 3

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)....................................... 5

*Henry v. Little Mint, Inc.*, No. 12-cv-3966, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ......... 14

*In re Abrams*, 605 F. 3d 238 (4th Cir. 2010) ................................................................ 11

*In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006)............................................... 4

*In re Cendant Corp. Litig.*, 264 F. 3d 201 (3d Cir. 2001)................................................. 9

*In re Cendant Corp. Prides Litig.*, 243 F. 3d 722 (3d Cir. 2002) ...................................... 5, 6

*In re Cendant Corp.*, 404 F.3d 173 (3d Cir. 2005) ........................................................ 4

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524 (3d Cir. 2009) ..................................... 4, 5

*In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).... 13

ii

*In re Janney Montgomery Scott, LLC*, No. 06-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) 4

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) . 4, 5, 6, 12

*In re Rite Aid Corp. Sec. Litig.*, 396 F. 3d 294 (3d Cir. 2005) ....................................................... 5

*In re Staples Wage & Hour Emp't Practices Litig.*, No. 08-5746, 2011 WL 5413221 (D.N.J. Nov. 4, 2011) ................................................................................................................................ 12

*Keller v. TD Bank, N.A.*, No. 12-5054, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) .................. 12

*Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1 (1st Cir. 2016) ....................................................... 8

*Mabry v. Hildebrandt, d/b/a Phila. Auto Body*, No. 14-5525, 2015 WL 5025810 (E.D. Pa. Aug. 24, 2015) ................................................................................................................................ 14

*Maddy v. General Electric Co.*, No. 14-490-JBS-KMW, 2017 WL 2780741 (D.N.J. June 26, 2017) .............................................................................................................................. 4, 10

*McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014) ........... 14

*Mulroy v. National Water Main Cleaning Co. of New Jersey*, No. 12-3669, 2014 WL 7051778 (D.N.J. Dec. 12, 2014) ........................................................................................................ 4

*Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266 (10th Cir. 2011) ................................ 8

*Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) 9

*Oberneder v. Link Computer Corp.*, 548 Pa. 201 (1997) ............................................................... 3

*Oh v. AT&T Corp.*, 225 F.R.D. 142 (D.N.J. 2004) ...................................................................... 15

*Powell v. Carey Int'l., Inc.*, 514 F. Supp. 2d 1302 (S.D. Fla. 2007) ............................................. 8

*Rodriguez v. Republic Servs.*, No. SA–13–CV–20–XR, 2013 WL 5656129 (W.D. Tex. Oct. 15, 2013) ................................................................................................................................... 8

*Rouse v. Comcast Corp.*, No. 14115, 2015 WL 1725721 (E.D. Pa. Apr. 15, 2015) ............. 12, 14

*Salinas v. U.S. Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ........................................................................................................... 3

*Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114 (E.D. Pa. Sept. 27, 2017) ................................................................................................................................. 14

*Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) ................................................................................................................................. 14

iii

**Statutes**

29 U.S.C. § 216(b) ................................................................................. 3, 8, 14, 15

Md. Code, Lab & Empl. Art., § 3-427(b) .................................................................4, 15

N.J.S.A. 34:11-4.10.................................................................................... 3, 15

**Rules**

Federal Rule of Civil Procedure 23(h) ............................................................. 1

**Regulations**

29 C.F.R. § 778.112 ................................................................................. 8

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel for Plaintiffs Tyhee Hickman, Shanay Bolden, and O'Donald Henry, individually and on behalf of all others similarly situated, respectfully seeks reimbursement for attorneys' fees in the amount of one-third (1/3) of the Gross Settlement Amount, or  Six Hundred Thousand Dollars ($600,000.00) and the payment of out-of-pocket costs incurred by Class Counsel, which are currently $33,180.00, as established by the Settlement Agreement between the Named Plaintiffs and Defendants TL Transportation, LLC, Scott Foreman, Herschel Lowe, Amazon.com, LLC, and Amazon Logistics, Inc.[1]

The Settlement is an excellent result for the Settlement Class, benefiting approximately 757 former and current Delivery Associates who were employed by Defendant TL Transportation, LLC to deliver packages for the Amazon Defendants to Amazon customers. *See* Settlement Agreement ¶ 23(z). The Settlement includes a gross cash payment of One Million Eight Hundred Thousand Dollars and Zero Cents ($1,800,000.00) (the "Gross Settlement Amount"). *Id.* Settlement Agreement ¶ 23(o). Every Eligible Class Member[2] will receive a Settlement Award and the Settlement Agreement ensures that no award will be less than $100.00. *Id*. at ¶ 37(a), (b). This Settlement is fair, reasonable and beneficial to the members of the Settlement Class.

The procedural history of this case and the specific terms of the Settlement Agreement were set forth in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for

---

[1] Class Counsel anticipate that they may incur additional costs in connection with the Motion for Final Approval of the Settlement, which Class Counsel will include in their Final Approval Motion papers and address at the Final Approval Hearing.

[2] Eligible Class Member means all Settlement Class Members who do not file timely and valid exclusion requests from the Settlement. *Id.* at ¶ 23(aa). Settlement Class or Settlement Class Members means the Named Plaintiffs, all Opt-In Plaintiffs, and all current or former Delivery Associates who were employed by TL Transportation, LLC to deliver packages to Amazon customers in the United States between March 8, 2014 and April 15, 2017. *Id.* at ¶ 23(z). There are approximately 757 Settlement Class Members, including Plaintiffs. *Id.*

Preliminary Approval of the Settlement Agreement and accompanying Declaration of Sarah Schalman-Bergen filed on September 18, 2019. ECF No. 125. The Court entered an Order preliminarily approving the Settlement Agreement on October 23, 2019. ECF No. 126. The Settlement Agreement offers the Settlement Class significant advantages over continued prosecution of their case against Defendants: members of the Settlement Class will receive significant and certain financial compensation and will avoid the risks inherent in the continued prosecution of this case, in which the Defendants assert various defenses to their liability and damages. *See* Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") ¶¶ 21-23.

Class Counsel now seek their reasonable attorneys' fees in the amount of one-third of the Gross Settlement Amount (*i.e*, $600,000.00), and payment of out-of-pocket costs incurred by Class Counsel of $33,180.00. *See* Settlement Agreement ¶35(b). These amounts will compensate Class Counsel for work already performed in this case and for all of the work remaining to be performed in this case, including making sure that the Settlement is fairly administered and implemented and obtaining dismissal of the action.

Class Counsel's request is appropriate, given their efforts in litigating this case and successfully negotiating a class-wide Settlement that greatly benefits the Settlement Class Members. The requested attorneys' fees are also in line with Third Circuit precedent for attorneys' fees in similar cases. Pursuant to the terms of the Settlement Agreement, the Defendants do not oppose this Motion.

## II.    LEGAL ARGUMENT

### A.    The Fee Shifting Provisions of the Fair Labor Standards Act, Pennsylvania Wage and Hour Law, New Jersey Wage and Hour Law, and Maryland Wage and Hour Law Provide for the Award of Attorneys' Fees

In resolving FLSA claims, the Court "shall, in addition to any judgment awarded to the…. Plaintiff[s] allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

2

*Altnor v. Preferred Freezer Servs., Inc.,* 197 F. Supp. 3d 746, 764-765 (E.D. Pa. 2016) (citing 29 U.S.C. § 216(b)); *Green v. Ventnor Beauty Supply, Inc*., 1:18-cv-15673-NLH-AMD, 2019 WL 2099821, at *2 (D.N.J. May 14, 2019) ("Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages under the FLSA.") (citing 29 U.S.C. § 216(b)). *See also Salinas v. U.S. Xpress Enters., Inc.,* No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127, at *8 (E.D. Tenn. Mar. 8, 2018) ("The FLSA contains a fee-shifting provision that provides that the prevailing party shall recover reasonable attorney's fees and litigation costs. Award of attorney fees under the FLSA are mandatory, though the Court has discretion over the amount of fees due the attorneys.") (citing 29 U.S.C. §. 216(b)).

Similarly, a plaintiff in a Pennsylvania, New Jersey, and Maryland Wage and Hour case may recover attorneys' fees and expenses under the statute's fee-shifting provision. *See* Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 331.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…"); Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.9a(f) ("The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant"). "'[A]n award of attorneys' fees to a prevailing employee in an action brought under the Wage Payment and Collection Law is mandatory,' but the Court retains discretion to determine the amount." *Bair v. Purcell*, 500 F. Supp. 2d 468, 494 (M.D. Pa. 2007) (citing *Oberneder v. Link Computer Corp*., 548 Pa. 201 (1997) (determining that the statutory language of "shall" in 43 P.S. § 260.9a(f) mandates such payment). *See* also New Jersey Wage Payment Act, N.J.S.A. 34:11-4.10 ("…the employee may recover in a civil action the full amount of any wages due, or any

wages lost because of any retaliatory action taken in violation of subsection of this section, plus an amount of liquidated damages equal to not more than 200 percent of the wages lost or of the wages due, together with costs and reasonable attorney's fees as are allowed by the court..."); and Maryland Wage and Hour Law, Md. Code, Lab & Empl. Art., § 3-427(b) ("…reasonable counsel fees and other costs…").

Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp.*, 404 F.3d 173, 187 (3d Cir. 2005). Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the percentage of the recovery approach. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). When calculating attorneys' fees in common fund cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). "Indeed, it is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Mulroy v. National Water Main Cleaning Co. of New Jersey*, No. 12-3669, 2014 WL 7051778, at *6 (D.N.J. Dec. 12, 2014) (citing, *e.g.*, *In re Janney Montgomery Scott, LLC*, No. 06-3202, 2009 WL 2137224, at *14 (E.D. Pa. July 16, 2009) and *Chemi v. Champion Mortg.*, No. 05-1238, 2009 WL 1470429, at *10 (D.N.J. May 26, 2009)); *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018) ("In the Third Circuit, '[t]he percentage-of-recovery method is generally favored in cases involving a common fund' and is also the prevailing methodology used by courts in the Third Circuit for wage and hour cases.") (citations omitted). *See also Maddy v. General Electric Co.,* No. 14-490-JBS-KMW, 2017 WL

4

2780741, at *6 (D.N.J. June 26, 2017) (granting 33 ½ fee request, and noting that percentage-of-recovery method is the prevailing methodology in the Third Circuit for wage-and-hour cases) (citing *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905, 09-124, 09-4587, 2011 WL 1344745, at *19 (D.N.J. Apr. 8, 2011)).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court considers ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of Settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) and *In re Prudential*, 148 F.3d at 342); *Galt*, 310 F. Supp. 3d at 497 (noting that court's analysis of fee request under percentage method is guided by *Gunter* factors). The Third Circuit has stressed that these factors "need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest." *In re Rite Aid Corp. Sec. Litig.*, 396 F. 3d 294, 301 (3d Cir. 2005).

These factors support approval of the requested fee and are discussed below.

**B. The Size of the Fund Created and the Number of Beneficiaries, as Well as the Value of the Benefits Supports the Requested Fee**

"As a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases." *Bredbenner,* 2011 WL 1344745, at *19 (citing *In re Cendant Corp.*

*Prides Litig*. 243 F. 3d 722, 736 (3d Cir. 2002)). "This inverse relationship rests on the assumption that the increase in a recovery's size is often due to the size of the class and not the efforts of counsel." *Altnor,* 197 F. Supp. 3d at 765 (citing *In re Prudential,* 148 F. 3d at 339).

The Settlement achieved in this case, while substantial, does not create a "mega-fund." *Bredbenner*, 2011 WL 1344745, at *19; *see also Cendant*, 243 F.3d at 736-37. Moreover, the results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. There is no claims process, and a Settlement Class Member need not take any action in order to receive a settlement award. Under the Settlement Agreement, the amount of $100.00 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Member so that each Eligible Class Member receives at least $100.00 in exchange for their release in this Settlement Agreement. *See* Settlement Agreement ¶ 37(a). In addition to the $100.00 payment, the Settlement Agreement provides that each Eligible Class Member will receive a *pro rata* share of the Net Settlement Amount based on the total number of work weeks in which the Eligible Class member worked four or more days per week. *Id.* at ¶ 37(b). All Settlement Award determinations shall be based on Defendant TLT's previously produced payroll and timekeeping data for Settlement Class Members. *Id*. at ¶ 38.

As a result of the mediation and arm's-length negotiations between the Parties, the Parties agreed to settle the Action in accord with the terms of the Settlement Agreement. The Settlement offers significant advantages over the continued prosecution of this case: The Gross Settlement Amount of $1,800,000.00 provides Settlement Class Members with compensation towards the alleged underpaid overtime premiums, and it was carefully negotiated based on a substantial investigation by Class Counsel, and the review and analysis of documents produced by the Named

Plaintiffs and the Defendants in preparation for mediation. Schalman-Bergen Decl. at ¶¶ 8-9, 11, 17, 19-20. **The Net Settlement Amount of approximately $1,102,500 (*i.e.*, the amount that will actually be paid out to Settlement Class Members after deductions are made for fees, costs, service awards, and administration costs) represents approximately 157% percent of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions on time worked at a half time rate**. *Id.* at ¶ 26. Further, there will be no reversion of any portion of the Gross Settlement Amount to Defendants at any time. *See* Settlement Agreement ¶ 44.

If the Settlement is approved, Class Counsel estimates that the average award paid to Settlement Class Members will be approximately $2,377.81. These amounts are meaningful to the low wage workers who form the Settlement Class. Schalman-Bergen Decl. at ¶ 29.

For these reasons, the Settlement creates a substantial benefit for members of the Settlement Class. *See, e.g., Galt*, 310 F. Supp. 3d at 497 (finding fact that class members comprised of 361 nurses will benefit from $520,000 common fund created by the Settlement Agreement weighed in favor of approving 35% fee); *Chemi*, 2009 WL 1470429, at *10 ("While the current matter does not qualify as a 'very large settlement,' it is still significant that Plaintiffs have secured $1.2 million for the 917 class members").

The benefits of the Settlement are particularly true when taking into consideration the risks inherent in continuing this litigation in which Defendants would assert various defenses to liability, with the possibility of no recovery for Class Members, or a recovery less favorable that the amounts provided by the Settlement. Some of the risks were the usual risks faced in wage and hour litigation, and others were risks unique to this case. There was a risk that Plaintiffs would not succeed in establishing joint employer liability and damages at trial against all of the Defendants.

While the Court had already ruled on liability – *i.e.* holding that unpaid wages were owed

where a Settlement Class Member worked more than forty hours per week -- the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to the following:

1) the amount of time that Delivery Associates spent performing their work[3];

2) whether damages should be paid at a half-time rate or a time-and-a-half rate[4];

3) whether Defendants would be able to meet their burden of demonstrating that the TL Defendants' unlawful pay system was taken in good faith with reasonable grounds for their belief that they were complying with the FLSA pursuant to 29 U.S.C. § 216(b) such that they would avoid the imposition of liquidated damages;

4) whether Amazon would be held liable for the alleged pay violations of TLT;

5) whether the Court would certify a class action under Rule 23 or grant final certification of a collective action under the FLSA; and

6) whether Plaintiffs and/or Defendants would appeal myriad legal or factual determinations, including class/collective action treatment, liability, and damages.

---

[3] Because the TL Defendants did not keep accurate time records of the time that Delivery Associates worked during the relevant time period, the Parties had to use various assumptions to estimate time worked for purposes of calculating damages. Both parties modeled these damages by analyzing Amazon's delivery data, which includes various times when the Delivery Associates scan and/or deliver packages to Amazon customers. The parties engaged in numerous meet and confer calls so that Class Counsel could understand the data and could engage in fully informed settlement negotiations. As part of their exposure analysis, Class Counsel's in house data analyst matched payroll records produced by TLT with the delivery data produced by Amazon, and built in various factual assumptions on time worked in addition to the time that was captured by Amazon's delivery data. Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this issue.

[4] Plaintiffs argued that, because Defendant TLT admitted that Delivery Associates were paid other forms of compensation for services, the exception to the general rule that overtime must be paid at a time-and-a-half rate as set forth in 29 C.F.R. § 778.112 would not apply. *See* 29 C.F.R. § 778.112 (permitting overtime to be paid at a half time rate where an employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services); *see also Rodriguez v. Republic Servs.*, No. SA–13–CV–20–XR, 2013 WL 5656129, at *2 (W.D. Tex. Oct. 15, 2013). Defendants raised various factual and legal arguments disputing that damages would be ordered to be paid at a time-and-a-half rate. *See, e.g., Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 10 (1st Cir. 2016); *Powell v. Carey Int'l., Inc.*, 514 F. Supp. 2d 1302, 1313 (S.D. Fla. 2007); *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1268 (10th Cir. 2011). Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this issue.

Schalman-Bergen Decl. ¶ 23.

As a result, continued litigation would require significant factual development and any verdict at trial could be delayed based on appeals by Defendants. *Id. See Maddy v. General Electric*, 2017 WL2780741 at *7 ("[T]here is tremendous benefit to the Class Members in light of the stage of the litigation, the remaining hurdles prior to even arriving at a trial date, and the risks associated with continued litigation").

    **C.**    **The Skill and Efficiency of Class Counsel that Enabled them to Obtain this Result, the Complexity of the Litigation, and the Risk of Nonpayment Support the Requested Fee**

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Galt*, 310 F. Supp. 3d at 497 (citing *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *20 (E.D. Pa. Apr. 22, 2005); *In re Cendant Corp. Litig.*, 264 F. 3d 201, 256 (3d Cir. 2001)).

Here, Class Counsel includes attorneys with significant employment law as well as class and collective action experience in prosecuting wage theft actions under the FLSA and applicable state wage laws. *See* Schalman-Bergen Decl. ¶¶ 2-4; Declaration of Ryan Allen Hancock ("Hancock Decl.") ¶¶ 2, 4. The Settlement reached with Defendants, which involves complex provisions that are specific to the FLSA and state wage and hour laws. Accordingly, this factor favors the requested fee. *See Galt*, 310 F. Supp. 3d at 497-98 (finding that "Class Counsel in this matter has requisite experience handling complex wage and hour class actions, and they have represented the Plaintiffs and the prospective class competently and diligently throughout the course of this litigation" weighed in favor of awarding 35% fee).

The Settlement was reached after an intensive arm's length Alternative Dispute Resolution

("ADR") process. The Parties participated in three (3) in-person mediation sessions in Philadelphia, Pennsylvania before Hon. James R. Melinson (Ret.) on October 17, 2017 and March 15, 2018 and Stephen Sonnenberg, Esq. on July 29, 2019. *See* Settlement Agreement ¶¶ 4, 8, 16. In connection with the ADR process, the Parties agreed to exchange informal discovery so that they could engage in meaningful, good faith and informed settlement discussions. Specifically, the Defendants agreed to produce and did produce a sample of available electronic payroll records, delivery data, as well as policy documents for Delivery Associates who worked for Defendant TL Transportation, LLC. *Id.* at ¶¶ 3, 15.

Following the first two unsuccessful ADR attempts, Plaintiffs filed a partial judgment on the pleadings regarding Defendant TLT's payment scheme. *Id.* at ¶ 9. The Court after briefing and oral argument converted the motion to a partial motion for summary judgment. ECF No. 67 and ECF No. 69. The Court granted Plaintiffs' motion on August 16, 2018. ECF No. 81. Litigation of this matter was complex and laborious: Plaintiffs oversaw the notice administration process in which 757 individuals received notice and filed opt-in consent forms with the Court. Plaintiffs also filed two Amended Complaints, responded to a Motion to Dismiss, conducted three (3) depositions of Defendant TLT's representative, and responded to hundreds of offers of judgment from Defendant TLT. *See* Settlement Agreement ¶¶ 5,7, 10, 12, 13.

Prior to the mediations, the Parties engaged in multiple pre-mediation meet and confer calls. In preparation for these mediations, Class Counsel prepared and provided a comprehensive damages analysis to Defendants' counsel. Schalman-Bergen Decl. at ¶ 20.

Further, Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money with absolutely no guarantee of any recovery. Schalman-Bergen Decl. ¶¶ 31-32. These factors all weigh in favor

of the requested fees. *See* Maddy, 2017 WL 2780741 at *7 (finding *Gunter* factors satisfied, and granting 33½% fee, noting that the "issues in this case were thoroughly contested and this matter was 'hard-fought' by skilled, professional counsel" that the case was brought to a close prior to trial, and that "[s]imply stated, class counsel took this case on a pure contingency basis, waiving recoupment of all costs"); *Galt,* 310 F. Supp. 3d at 498 (fact that class counsel took case on a contingent fee basis facing the risk of non-payment if they failed to obtain an adequate recovery yet devoted significant time to the matter, weighed in favor of awarding 35% fee).[5]

### D.     The Lodestar Cross-Check Supports the Requested Fee

Moreover, the time Class Counsel has expended on this lawsuit provides a reasonable comparison for the fee award. Class Counsel attaches declarations concerning the time worked on this case, with a description of the work performed and the reasons therefore, along with their hourly billing rates (which are the elements that determine lodestar). *See* Schalman-Bergen Decl. ¶¶ 35, 44-51; Hancock Decl. ¶ 6.

Class Counsel in this case has collectively spent approximately 1,593.3 hours prosecuting this litigation, and their current collective lodestar is approximately $709,335.50. Schalman-Bergen Decl. ¶ 39. This lodestar was calculated using Class Counsel's firms' standard hourly rates, which have been approved by courts around the country, including Courts in this Circuit. *Id.* ¶ 37.

---

[5] Courts have recognized that "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation… and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams*, 605 F. 3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id*. Moreover, the FLSA is a remedial statute designed to protect the rights of workers. *5 A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of the FLSA. Otherwise highly-skilled counsel would shy away from risky and expensive litigation (like this case) and employees seeking to vindicate their rights would have difficulty obtaining qualified counsel.

*See, e.g.*, *Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 WL 7178338, at *10 (E.D. Pa. Dec. 9, 2016) (approving Berger & Montague's hourly rates as reasonable and "within the range charged by attorneys with comparable experience levels for litigation of a similar nature."); *Hively v. Archer Well Co., Inc. et al.*, No. 13-cv-106 (W.D. Pa. Aug. 12, 2014) (approving Berger & Montague's hourly rates). Class Counsel's lodestar will increase as they will continue to perform work on this case, due to the need to communicate with Settlement Class Members, oversee the settlement process, and attend the Final Approval hearing. Schalman-Bergen Decl. ¶ 39; Hancock Decl. ¶ 10.

Accordingly, the proposed attorneys' fee award of $600,000 represents a multiplier of only 0.85 of Class Counsel's *actual, current lodestar*, not including all work that will be necessary to bring this settlement to a conclusion. Schalman-Bergen Decl. ¶ 39. This cross-check provides a reasonable comparison, and is far below the range of lodestar multipliers that have been approved by other district courts. In *Prudential*, the Third Circuit noted, based on a review of common fund cases, "[m]ultipliers ranging from one to four are frequently awarded in common fund cases, when the lodestar method is applied." *In re Prudential*, 148 F.3d at 341; *see also, e.g.,* Order Granting Motion for Final Approval of Fair Labor Standards Act Settlement, *Holbert, et. al. v. Waste Mgmt., Inc., et. al.*, No. 18-cv-02649, (E.D. Pa. Aug. 7, 2019) ECF No. 52 (approving settlement agreement and attorneys' fees with an actual lodestar multiplier of 4.74 and projected lodestar multiplier of 3.85); *Devlin*, 2016 WL 7178338 at *10 (approving attorneys' fees $516,667.00, which is a lodestar multiplier of 2.32 in wage and hour case); *Rouse v. Comcast Corp.,* No. 14115, 2015 WL 1725721, at *12-14 (E.D. Pa. Apr. 15, 2015) (approving attorneys' fees equaling 35% of the total settlement fund, which constituted a lodestar multiplier of 2.08 in wage and hour case); *Keller v. TD Bank, N.A.*, No. 12-5054, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014) (approving lodestar multiplier "slightly above 3" in FLSA lawsuit); *In re Staples Wage & Hour*

*Emp't Practices Litig.*, No. 08-5746, 2011 WL 5413221, at *5 (D.N.J. Nov. 4, 2011) (approving lodestar multiplier of 2.75 in FLSA case).

Further, as noted above, the lodestar will increase – and the multiplier will *decrease* – as Class Counsel spends additional hours to perform the work that remains to be performed to bring this case to a conclusion and ensure that Settlement Class Members receive their Settlement Awards. In light of the above, Class Counsel's lodestar supports the requested fee.[6]

### E.   The Awards in Similar Cases Supports the Requested Fee

The requested fee is also consistent with awards in similar cases. The Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees. *See Galt*, 310 F. Supp. 3d at 498 & n. 69 ("As discussed, most fee awards in common fund cases range from 19% to 45% of the settlement fund, with 25% being the median. More specifically, fee awards ranging from 30% to 43% have been awarded in cases with funds ranging from $400,000 to $6.5 million—funds which are comparatively smaller than many common funds.") (collecting cases); *Brumley v. Camin Cargo Control, Inc.*, Nos. 08-1798, 102461, 09-6128, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) (collecting cases where attorneys' fees around 30 percent of settlement funds were found reasonable); *In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995).

Here, Class Counsel's request for one-third (1/3) of the Gross Settlement Fund is consistent with the norms of wage and hour class and collective litigation in this Court and district courts in

---

[6] Although the lodestar cross-check supports the 1/3 fee request here, it has been noted that "the lodestar cross-check remains non-dispositive, and its relevance is increasingly challenged by the realities of today's legal practice…[W]hen many areas of legal practice today are no longer founded on standard hourly rates and more commonly driven by fixed fees, blended rates and contingency fee agreements, the lodestar cross-check has become largely illusory." *Altnor*, 197 F. Supp. 3d at 767.

this Circuit and across the country. Indeed, in the Third Circuit, "the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry v. Hildebrandt, d/b/a Phila. Auto Body*, No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases); *Bredbenner*, 2011 WL 1344745 (approving an award of 32.6% of the Settlement fund).[7] And courts around the country have "routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases." *See Henry v. Little Mint, Inc.*, No. 12-cv-3966, 2014 WL 2199427, at *15 (S.D.N.Y. May 23, 2014) (noting that request for fees was "in line with decisions from across the country that have awarded one-third or more in wage-and-hour

---

[7] *See also Erie Cty. Retirees Assoc. v. Cty. Of Erie, Pa*., 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. § 216(b); *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *10 (E.D. Pa. Sept. 27, 2017) (approving attorneys' fees equaling 35% of the common fund); *Rouse*, 2015 WL 1725721, at *14 (same); *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *6 (E.D. Pa. June 4, 2014) (awarding attorneys' fees which represent 32.7% of the settlement fund); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (concluding "that an award of one- third of the Settlement fund is reasonable in consideration of other courts' awards"); *Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (noting that study of class action fee awards within the Third Circuit found that average attorney's fees percentage in such cases was 31.71% and median award was 33.3%); *see also Dunkel v. Warrior Energy Servs., Inc.*, No. 2:13-cv-695-MRH (W.D. Pa. Apr. 18, 2016) (approving a requested fee award of one third of the total settlement amount to the same Class Counsel here in a wage and hour settlement); *Niver v. Specialty Oilfield Sol., Ltd.*, No. 14-cv-1599 (W.D. Pa. Oct. 7, 2015) (approving fee award of 33.33% of the total settlement amount to class counsel in wage and hour settlement); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) (same); *Caudell v. RDL Energy Servs., LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (same); *Bearden v. Precision Air Drilling Servs., Inc.*, No. 2:11-cv-01511-NBF (W.D. Pa. Sept. 26, 2012) (same); *Thomas v. Allis-Chalmers*, No. 2:10-cv-01591-RCM (W.D. Pa. Sept. 11, 2012) (same). *See also Alegre v. Atlantic Central Logistics*, No. 15-2342 (SRC), 2015 WL 4607196, at *6-7 (D.N.J. July 31, 2015) (in holding that a 30% fee was appropriate in the NJWHL case at issue, the court explained that "[a] reasonable approach… is to look to cases from this district arising under similar facts. This reveals that the median in the Third Circuit is roughly thirty percent (30%) of a common fund.…….[A]ttorney's fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions.") (citation omitted).

settlements" and citing cases).

Finally, the request of attorneys' fees of one-third (1/3) of the Settlement fund also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at *21.

Accordingly, the fees approved in similar cases further support the requested fee here.

**F.      Class Counsel's Costs Should be Approved**

In addition to being entitled to reasonable attorneys' fees, the FLSA and Pennsylvania, New Jersey and Maryland wage and hour laws provide for the reimbursement of costs. *See* 29 U.S.C. § 216(b) ("The court [], in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); Pennsylvania Minimum Wage Act, 43 P.S. § 331.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…"); New Jersey Wage Payment Act, N.J.S.A. 34:11-4.10 ("…the employee may recover in a civil action the full amount of any wages due, or any wages lost because of any retaliatory action taken in violation of subsection of this section, plus an amount of liquidated damages equal to not more than 200 percent of the wages lost or of the wages due, together with costs and reasonable attorney's fees as are allowed by the court..."); and Maryland Wage and Hour Law, Md. Code, Lab & Empl. Art., § 3-427(b) ("…reasonable counsel fees and other costs…").  Here, Class Counsel's current costs are $33,180.00. Pursuant to the Settlement Agreement, Class Counsel's request for costs will not exceed $40,000.00 as payment for their out-of-pocket costs incurred in litigating this action. *See* Settlement Agreement ¶¶ 23(r), 35(b).

Class Counsel's costs include reasonable out-of-pocket expenditures. *See Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2)

local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund *pro hac vice* to be reasonable).

The expenses incurred in this litigation to date are described in the accompanying declarations of the law firms involved in this litigation. *See* Schalman-Bergen Decl. ¶ 41; Hancock Decl. ¶¶ 11-12. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as mediation fees, court costs, depositions costs, copying fees, delivery costs (including costs for printing and sending claim forms to Settlement class members), and computerized legal research.

All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Defendants do not object to the request for costs.

## III.        CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that this Court approve the award of attorneys' fees to Class Counsel in the amount of $600,000.00 and approve reimbursement of costs to Class Counsel, which are currently $33,180.00. Plaintiffs will submit a proposed order in connection with their Motion for Final Approval prior to the Court's Final Fairness Hearing scheduled for February 18, 2020.

Dated: January 10, 2020                              Respectfully submitted,

                                                     */s/ Sarah R. Schalman-Bergen*
                                                     Sarah R. Schalman-Bergen
                                                     Camille Fundora Rodriguez
                                                     BERGER MONTAGUE PC
                                                     1818 Market Street, Suite 3600
                                                     Philadelphia, PA 19103

Tel: (215) 875-3000
Fax: (215) 875-4604
sschalman-bergen@bm.net
crodriguez@bm.net

Ryan Allen Hancock
WILLIG, WILLIAMS &
DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Tel: (215) 656-3600
rhancock@wwdlaw.com

*Attorneys for Plaintiffs and
Settlement Class Members*