IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TYHEE HICKMAN, SHANAY BOLDEN, and O'DONALD HENRY**, individually and on behalf of all persons similarly situated, | : <br> : Civil Action No.: 2:17-cv-01038-GAM <br> : <br> : |
| **Plaintiffs**, | : Class & Collective Action <br> : |
| v. | : <br> : |
| **TL TRANSPORTATION, LLC, SCOTT FOREMAN, HERSCHEL LOWE, AMAZON.COM, LLC, and AMAZON LOGISTICS, INC.** | : <br> : <br> : <br> : <br> : |
| **Defendants.** | : |

### DECLARATION OF SARAH R. SCHALMAN-BERGEN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR <u>ATTORNEYS' FEES AND COSTS</u>

I, Sarah R. Schalman-Bergen, hereby declare that the following is true and correct:

1. I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted to this Court. I am a shareholder at Berger Montague PC ("Berger Montague") and Co-Counsel for Plaintiffs and the Settlement Class in the above-captioned litigation.

2. Berger Montague specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States. Berger Montague currently consists of over 65 attorneys who represent plaintiffs in complex civil litigation, class action, and collective action litigation, with offices in Philadelphia, Minneapolis, San Diego, and Washington D.C. The firm's Employment Law Department has extensive experience representing employees in class action and collective action litigation. Berger Montague has played lead roles in major cases for over 49 years, resulting in recoveries collectively totaling well over $30 billion for our clients and the classes they have represented. A copy of our firm's resume is attached as Exhibit

A to my Declaration filed with Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement. (Dkt. No. 125-3, Ex. A.)

3. I am the Co-Chair of the Employment Law Department at Berger Montague, and I have an extensive background in litigation on behalf of employees. I have served and currently serve as lead or co-lead counsel in many employment class and collective action cases in federal courts across the country, brought under the Fair Labor Standards Act and related state wage laws, including unpaid wages and unpaid overtime compensation cases similar to this Lawsuit. Berger Montague has successfully resolved numerous unpaid overtime cases in district courts across the United States, including in the Eastern District of Pennsylvania and the other district courts in the Third Circuit. This level of experience enabled our firm to undertake this matter and to efficiently and successfully prosecute, negotiate, and resolve the claims on behalf of Plaintiffs and the Settlement Class Members.

4. Practice in the area of wage and hour class and collective action litigation requires skills, knowledge, and experience in two distinct subsets of the law: (a) the substantive employment law applicable to such cases; and (b) the substantive and procedural aspects of prosecuting class and collective actions. Expertise in one of these areas does not necessarily translate into expertise in the other. Plaintiffs' Counsel in such cases – in order to be successful – must have deep expertise in both. The issues presented in this case required more than just a general appreciation of wage and hour law and/or class action/collective action procedures, as these areas of practice are often changing. Here, Class Counsel's knowledge and expertise was utilized to drill down on and narrow the key issues and ultimately, was leveraged to reach a fair and reasonable $1.8 million settlement in an efficient manner.

5. My firm served as co-lead counsel in the case with Willig, Williams & Davidson.

Our firms worked together on the case and divided work tasks so as to avoid duplication of effort in representing Plaintiffs and Settlement Class Members.

6. I respectfully submit this declaration in support of Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs. The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify thereto.

**Relevant Settlement Background**

7. On March 8, 2017, Plaintiffs Tyhee Hickman and Shanay Bolden, former non-exempt hourly employees of Defendant TL Transportation, LLC ("TLT"), filed a Class and Collective Action Complaint against Defendant TLT alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), the Pennsylvania Minimum Wage act ("PMWA"), 43 P.S. §§ 333.101, et seq., the Maryland Wage and Hour Law ("MWHL"), Maryland Code Annotated, Labor and Employment Article §§ 3-401, *et seq.* and Pennsylvania common law. (Dkt. No. 1.)

8. On June 8, 2017, the Court issued an order staying the case pending mediation. (Dkt. No. 12.) TLT thereafter produced data and information to facilitate informed settlement discussions, including an electronic database containing payroll data for a sample of Delivery Associates who worked for TLT between February 27, 2016, and April 15, 2017, at three of its locations (King of Prussia, Swedesboro, and Baltimore).

9. Plaintiffs and TLT participated in mediation before the Hon. James R. Melinson, Chief U.S. Magistrate Judge for the Eastern District of Pennsylvania (Ret.) at JAMS in Philadelphia, PA on October 17, 2017. A settlement was not reached.

10. On November 28, 2017, Plaintiffs filed their First Amended Complaint to include Amazon.com, LLC, Amazon Logistics, Inc. (together, "Amazon"), and Scott Foreman and

3

Herschel Lowe (the two sole members of TLT) as additional Defendants and joint employers. (Dkt. No. 20.) TLT filed its Answer on February 5, 2018, denying liability. (Dkt. No. 34.) The Amazon defendants filed their Answer on March 2, 2018 denying liability and denying that they jointly employed TLT employees. (Dkt. No. 38.) On February 5, 2018, Defendants Foreman and Lowe filed a Motion to Dismiss based on lack of personal jurisdiction and venue in Pennsylvania. (Dkt. No. 35.) The Court denied the motion in all grounds except with respect to Plaintiffs' Maryland state law claims (which proceeded in the litigation against TLT and Amazon). (Dkt. No. 72.)

11. The Parties participated in a second mediation session before the Hon. James R. Melinson (Ret.), at JAMS in Philadelphia, PA on March 15, 2018. A settlement was not reached.

12. On March 23, 2018, Plaintiffs filed their motion for partial judgment on the pleadings on TLT's admission, in its Answer, regarding its day rate payment scheme. (Dkt. No. 43.) The Court held oral argument and then converted the motion to a partial summary judgment motion. (Dkt. Nos. 67, 69.) The Court granted Plaintiffs' Motion for Summary Judgment, holding that TLT compensated Plaintiffs using a day rate that did not lawfully compensate its employees for overtime, in violation of the Fair Labor Standards Act ("FLSA") and applicable state law. (Dkt. No. 81.)

13. The Parties stipulated to notice after the Plaintiffs filed their motion for conditional certification and to facilitate notice pursuant to 29 U.S.C. § 216(b) ("Notice Motion). (Dkt. Nos. 46 & 64). Notice was distributed on August 10, 2018 to 757 individuals of which 297 individuals filed their consent forms to participate in this lawsuit, including Plaintiffs. (Dkt. Nos. 13, 83, 85, 87-90, 94, 96-101, 107- 110, 115.)

14. On November 1, 2018, Plaintiffs filed their Second Amended Complaint ("SAC")

adding violations of the New Jersey State Wage and Hour Law and adding Michael Easterday as a Plaintiff and representative of the New Jersey class. (Dkt. No. 102.)

15. On October 26, 2018, Defendant TLT served Offers of Judgment pursuant to Fed. R. Civ. P. 68 on 185 of the Opt-In Plaintiffs. The 185 Offers of Judgment totaled $101,579.50, plus "reasonable attorney's fees, expenses, and costs accrued and attributed to the prosecution of [the Opt-In Plaintiff's] specific claims … to the date of th[e] Offer of Judgment in an amount to be determined by the Court." Sixteen (16) Opt-In Plaintiffs filed their acceptance of offers of judgment from TLT, including Named Plaintiff Easterday, totaling $16,065.50. (Dkt. Nos. 31, 106-1, 106-2, 106-3, 106-4, 106-5, 106-6, 106-7, 106-8, 106-9, 106-10, 106-11, 106-12, 106-13, 106-14, 112.) The Court entered the judgments and released their claims against TLT. (Dkt. Nos. 31, 50, 106, 111, 113, 114.) No attorneys' fees were paid on these amounts.

16. Plaintiffs served a Rule 30(b)(6) deposition notice regarding Defendant TLT's payroll systems, and took the deposition of Shirley Washington on December 14, 2018. The parties thereafter agreed to postpone the depositions of the remaining Rule 30(b)(6) witnesses, and TLT serving offers of judgment, so that that the parties could participate in mediation.

17. In advance of mediation, TLT produced supplemental payroll data, and Amazon produced delivery data, which Class Counsel reviewed and analyzed. On July 29, 2019, the Parties participated in mediation before an experienced mediator, Stephen Sonnenberg, Esq.

18. On September 16, 2019, pursuant to the terms of the Settlement Agreement and with consent of Defendants, Plaintiffs filed their Third Amended Complaint, substituting Michael Easterday for O'Donald Henry as the representative Named Plaintiff for the New Jersey class, in light of Mr. Easterday's acceptance of an offer of judgment. (Dkt. Nos. 112-114, 123.)

19. As a result of the three mediations and continued arm's-length negotiations between

the Parties, the Parties have agreed to settle the Action in accord with the terms of the Settlement Agreement.

20. This Settlement was reached after the substantial exchange of informal discovery, including electronic payroll records showing days worked and all forms of compensation received by the Plaintiffs and Class Members during the relevant time periods and preparation and exchange of damages analyses. The Settlement provides Plaintiffs and Settlement Class Members with substantial benefits without having to wait for years of drawn out litigation.

21. I believe that the settlement is not only fair and reasonable and in the best interests of the Settlement Class, it is excellent. This settlement presents an extremely good recovery, as it confers a substantial benefit on members of the Settlement Class. The settlement offers significant advantages over the continued prosecution of this case: the Settlement Class will receive significant and immediate financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendants would assert various defenses to their liability.

22. Some of the risks were the usual risks faced in wage and hour litigation, and others were risks unique to this case. There was a risk that Plaintiffs would not succeed in establishing joint employer liability and damages at trial against all of the Defendants.

23. While the Court had already ruled on liability – *i.e.* holding that unpaid wages were owed where a Settlement Class Member worked more than forty hours per week -- the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to the following:

    1) the amount of time that Delivery Associates spent performing their work[1];

---

[1] Because the TL Defendants did not keep accurate time records of the time that Delivery Associates worked during the relevant time period, the Parties had to use various assumptions to estimate time worked for purposes of calculating damages. Both parties modeled these damages by analyzing Amazon's delivery data, which includes various times when the Delivery Associates

6

2) whether damages should be paid at a half-time rate or a time-and-a-half rate[2];

3) whether Defendants would be able to meet their burden of demonstrating that the TL Defendants' unlawful pay system was taken in good faith with reasonable grounds for their belief that they were complying with the FLSA pursuant to 29 U.S.C. § 216(b) such that they would avoid the imposition of liquidated damages;

4) whether Amazon would be held liable for the alleged pay violations of TLT;

5) whether the Court would certify a class action under Rule 23 or grant final certification of a collective action under the FLSA; and

6) whether Plaintiffs and/or Defendants would appeal myriad legal or factual determinations, including class/collective action treatment, liability, and damages.

As a result, continued litigation would require significant factual development and any verdict at trial could be delayed based on appeals by Defendants.

24. The Gross Settlement Amount of $1,800,000 includes amounts to cover: (1) service awards for their efforts in bringing and prosecuting this matter to Named Plaintiff Tyhee Hickman in the amount of $15,000, Named Plaintiff Shanay Bolden in the amount $15,000, and Named Plaintiff O'Donald Henry in the amount of $2,500; (2) the payment of attorneys' fees in the amount

---

scan and/or deliver packages to Amazon customers. The parties engaged in numerous meet and confer calls so that Class Counsel could understand the data and could engage in fully informed settlement negotiations. As part of their exposure analysis, Class Counsel's in house data analyst matched payroll records produced by TLT with the delivery data produced by Amazon, and built in various factual assumptions on time worked in addition to the time that was captured by Amazon's delivery data. Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this issue.

[2] Plaintiffs argued that, because Defendant TLT admitted that Delivery Associates were paid other forms of compensation for services, the exception to the general rule that overtime must be paid at a time-and-a-half rate as set forth in 29 C.F.R. § 778.112 would not apply. *See* 29 C.F.R. § 778.112 (permitting overtime to be paid at a half time rate where an employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services); *see also Rodriguez v. Republic Servs.*, No. SA–13–CV–20–XR, 2013 WL 5656129, at *2 (W.D. Tex. Oct. 15, 2013). Defendants raised various factual and legal arguments disputing that damages would be ordered to be paid at a time-and-a-half rate. *See, e.g., Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 10 (1st Cir. 2016); *Powell v. Carey Int'l., Inc.*, 514 F. Supp. 2d 1302, 1313 (S.D. Fla. 2007); *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1268 (10th Cir. 2011). Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this issue.

7

of up to one-third (1/3) of the Gross Settlement Amount ($600,000.00), which will compensate Class Counsel for all work performed in the litigation as of the date of the Settlement Agreement, plus all work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Action, plus the payment of out-of-pocket costs incurred by Class Counsel, not to exceed Forty Thousand Dollars ($40,000); and (4) a maximum of Twenty-Five Thousand Dollars $25,000 for the Settlement Administrator's costs of the settlement administration.

25. The Net Settlement Amount would be approximately One Million, One Hundred and Two Thousand, and Five Hundred Dollars ($1,102,500). Awards to Eligible Class Members will be made from the Net Settlement Amount. Specifically, all Eligible Class Members will receive a *pro rata* share of the Net Settlement Amount based on the total number of work weeks during which the Eligible Class Member worked four or more days and was employed by Defendant TLT to deliver packages to Amazon customers in the United States between March 8, 2014 and April 15, 2017.

26. The Net Settlement Amount represents approximately 157% percent of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions on time worked at a half time rate.

27. There is no claims process, and a Settlement Class Member need not take any action in order to receive a Settlement Award. Each Settlement Eligible Class Member will receive settlement shares based on the weeks they worked more than forty hours in a workweek. Because the formula provides a share for each day the Class Member worked when there was a service charge, it is fair and reasonable.

28. The amount of $100 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Member so that each Eligible Class Member receives at least $100 in exchange for their release of claims in this Settlement Agreement. Each Eligible Class Member will receive a minimum amount of $100, regardless of the number of settlement shares allocated to that Eligible Class Member.

29. If the Settlement is approved, Class Counsel estimates that the average award paid to Settlement Class Members will be approximately $2,377.81. These amounts are meaningful to the low wage workers who form the Settlement Class.

30. This is an excellent result for the Eligible Class Members, especially considering the risks of continued litigation and is a reflection of Class Counsel's experience. The Settlement reached with Defendants, involves complex provisions that are specific to the FLSA and state wage and hour laws. There was a risk that Plaintiffs would not succeed in maintaining a collective or class through trial and a trial on the merits would involve significant risks for Plaintiffs as to both joint liability and damages.

31. Class Counsel agreed to represent Plaintiffs on a contingency fee basis and was prepared to invest time, effort and money over a period of years with absolutely no guarantee of any recovery. Class Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial.

32. The risks Class Counsel undertook were real, and the resources that Class Counsel dedicated to this Lawsuit meant that such resources were not available to other cases. Class Counsel's contingency risk, together with the excellent result that has been achieved on behalf of the Settlement Class Members, supports the requested fees and costs.

33. The firm Angeion Group ("Angeion") was retained as Settlement Administrator to distribute the Settlement Awards and coordinate tax administration. Angeion has agreed to perform administration duties for an amount not to exceed $25,000.00. *See* Settlement Agreement ¶9(n). Notice of the Settlement was distributed on December 10, 2019, to all of the Settlement Class Members via First Class Mail and email. The Notice explicitly outlines the allocation of the Gross Settlement Fund, provides information on the meaning and nature of the terms and provisions of the Settlement Agreement; the monetary awards that the Settlement will provide to participating Class Members, the request for attorneys' fees and costs, the requests for settlement administration costs, and for a service awards to the Named Plaintiffs. In addition, the Notice explicitly sets forth the procedures and deadlines for opting out of the Settlement, or submitting objections.

34. The response of the Settlement Class Members has been overwhelmingly positive. To date, of the 757 Settlement Class Members, ***none*** have submitted objections, and ***none*** have requested exclusion from the Settlement.[3]

## BERGER MONTAGUE'S LODESTAR

35. In my exercise of billing judgment, I have reviewed the billing records maintained in this case, and have removed hours spent by attorneys and staff at my firm if I deemed such time to be redundant or duplicative, or if it reflected less than ten hours of work by the biller. This resulted in a reduction of 38.3 hours. After the exercise of such billing judgment, as of January 10, 2020, the total number of recorded hours spent on this litigation by Berger Montague is 1,364.1, and the lodestar amount for attorney and support staff time, based on the firm's current rates, is $607,322.00. The hourly rates shown below are the usual and customary rates charged for each individual in all of our cases. A breakdown of my firm's lodestar is reflected below:

---

[3] The deadline to object or request to be excluded is February 10, 2020.

| Name | Position | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Shanon J. Carson | Managing Shareholder | 12.8 | $820.00 | $10,496.00 |
| Sarah R. Schalman-Bergen | Shareholder | 303.7 | $620.00 | $188,294.00 |
| Lane Vines | Senior Counsel | 24.3 | $605.00 | $14,701.50 |
| Camille Fundora Rodriguez | Associate | 543.3 | $475.00 | $258,067.50 |
| Michaela Wallin | Associate | 49.8 | $435.00 | $21,663.00 |
| Deanna Kemler | Paralegal | 131.0 | $300.00 | $39,300.00 |
| Alex Grayson | Paralegal | 299.20 | $250.00 | $74,800.00 |
| **TOTAL** |  | **1,364.1** |  | **$607,322.00** |

36.     Due to the amount of privileged information contained in Berger Montague's actual hourly billing records, those detailed records are not attached here, but can easily be provided for this Court's *in camera* review should the Court wish to review them.

37.     The hourly rates for the partners, attorneys, and professional staff are the same as would be charged in non-contingent matters and/or which have been accepted and approved in other recent class and collective action wage and hour litigation by courts around the country. *See e.g.*, *Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 WL 7178338, at *2 (E.D. Pa. Dec. 9, 2016) (approving Berger Montague's hourly rates as reasonable and "within the range charged by attorneys with comparable experience levels for litigation of a similar nature."). *Fenley v. Applied Consultants, Inc.*, No. 2:15-cv-259-MRH (W.D. Pa. June 17, 2016); *Dunkel v. Warrior Energy Serv., Inc.*, No. 2:13-cv-695-MRH (W.D. Pa. Apr. 15, 2016); *Niver v. Specialty Oilfield Sols.*, No. 14-1599-JFC (W.D. Pa. Oct. 7, 2015); *Ciamillo v. Baker Hughes, Inc.*, No. 3:14-cv-00081-RRB (D. Alaska June 19, 2015); *Thompson v. Peak Energy Servs. USA, Inc.*, No. 13-cv-266 (W.D. Pa. Nov. 19, 2014); *Hively v. Archer Well Co., Inc. et al.*, No. 13-cv-106 (W.D. Pa. Aug. 12, 2014); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013); *Crawford v. Zenta Mortg. Servs. LLC,* No. 3:11-cv-129 (W.D.N.C. Jan. 16, 2013); *Bearden v. Precision Air Drilling Servs., Inc.*, No. 2:11-cv-01511-NBF (W.D. Pa. Sept. 26, 2012); *Thomas v. Allis-Chalmers*, No. 2:10-cv-01591-RCM (W.D. Pa. Sept. 11, 2012); *Choul v. Nebraska Beef, Ltd.*, No. 8:10-cv-308 (D. Neb.

May 17, 2012).

38. The time reflected above was time actually spent, in the exercise of reasonable judgment, by the attorneys and staff involved. Class Counsel was careful not to expend unnecessary hours and not to duplicate work done by others. The time submitted herein reflects only work done on behalf of the Settlement Class Members.

39. As reported above, and based also on the Declaration of Ryan Allen Hancock submitted in support of this Motion, Class Counsel has spent a total of approximately 1,593.3 hours prosecuting this litigation since our investigation first began. Class Counsel's current lodestar is approximately $709,335.50. The proposed attorneys' fees award of $600,000.00 represents a multiplier of only 0.85 of Class Counsel's *actual, current lodestar*, not including all work that will be necessary to bring this settlement to a conclusion.

## **BERGER MONTAGUE'S EXPENSES**

40. This litigation required my firm to advance costs. Because the risk of advancing costs in this type of litigation is significant, doing so is often cost prohibitive to many attorneys.

41. As of January 10, 2020, my firm expended costs in the amount of $32,877.18 to prosecute this action, as follows:

| **Expense** | **Amount** |
|---|---|
| Court & Service Fees | $535.00 |
| Computer Research | $9,721.14 |
| Copying | $4,233.76 |
| Telephone | $28.99 |
| Travel | $141.39 |
| Production, Hosting, & Database | $107.31 |
| Postage, Delivery & Freight | $343.55 |
| Mediation | $8,767.49 |
| Notice Administrator | $7,076.79 |
| Electronic Signature Service | $674.56 |
| Transcripts | $1,247.20 |
| **Total** | **$32,877.18** |

42. As reported above, and based also on the Declaration of Ryan Allen Hancock submitted in support of this Motion, Class Counsel has spent a total of approximately $33,180.00 in out-of-pocket expenses prosecuting this litigation since our investigation first began.

43. The expenses incurred pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. All of the expenses incurred were reasonable and necessary to the prosecution of this case.

### **SUMMARY OF WORK PERFORMED BY BERGER MONTAGUE**

44. I was the lead Shareholder at Berger Montague with respect to this case. I directed the work of the other attorneys at my firm, conducted a legal analysis of the facts presented by this case and presented legal arguments to opposing counsel. In this capacity, I: 1) conducted the initial case investigation; 2) oversaw, managed, assigned and coordinated duties of a team of attorneys throughout this litigation; 3) devised and implemented strategy and participated in meetings and numerous telephone conferences with Defendants' counsel related to the litigation and settlement; 4) coordinated the review of Defendants' documents and conducted depositions of TLT's representatives and Defendants Lowe and Herschel; 5) prepared for and attended oral argument of Plaintiffs' motion for partial judgment on the pleadings; 6) reviewed the damages analyses in preparation for mediations; 7) lead attorney at all three mediations and during settlement negotiations; 8) negotiated the details and terms of the Settlement Agreement; 9) edited the Settlement Agreement; and 10) edited a number of the briefs in this case.

45. Below, I provide a summary description of the work performed by each of the Berger Montague attorneys or staff on this case who billed at least ten hours on this matter.

46. As of January 20, 2020, an associate of our firm, Camille Fundora Rodriguez, billed

13

543.3 hours to this case. Ms. Rodriguez was the primary associate on this case and researched relevant issues for litigation; reviewed documents produced by Defendants; reply correspondence in advance of the three mediations; oversaw the notice administration; drafted the mediation statements and reviewed the damages analyses; responded to TLT Defendants' offers of judgments; prepared for and second chaired the TLT depositions; drafted first and second amended complaints; prepared for and attended oral argument of Plaintiffs' motion for partial judgment on the pleadings; and edited various motions and supporting documents.

47. As of January 20, 2020, Lane Vines, a Senior Counsel, billed 24.3 hours to this case. Mr. Vines attended the first mediation, participated in meetings, and conducted research regarding financial viability of Defendants.

48. As of January 20, 2020, an associate of our firm, Michaela Wallin, billed 49.8 hours to this case. Ms. Wallin researched relevant issues in preparation for the July 29, 2019 mediation; drafted the settlement agreement and corresponding documents, third amended complaint, and the motion for preliminary approval of the settlement.

49. As of January 10, 2020, a paralegal of our firm, Deanna Kemler billed 131.0 hours to this case. Ms. Kemler prepared and calculated the damages analyses and settlement awards based on the data and information provided by Defendants.

50. As of January 10, 2020, a paralegal of our firm, Alex Grayson billed 299.2 hours to this case. Mr. Grayson assisted in the administration of notice and settlement, responses to the offers of judgments; deposition preparation, and was the line of contact for Class Members.

51. All of the work described above was reasonable and necessary to the prosecution and settlement of this case. Class Counsel collectively conducted an extensive factual investigation and engaged in significant motion practice during the prosecution of this action. Through this

comprehensive evaluation of the facts and law, Class Counsel was able to settle this case for a substantial sum. Class Counsel achieved this result in a very timely fashion, providing members of the Settlement Class with substantial and certain relief much sooner than if this matter had been extensively litigated.

52. The settlement reached with Defendants through the ADR process, which involves complex provisions that are specific to class action litigation of wage and hour law, is a reflection of Class Counsel's experience. Class Counsel negotiated a complicated settlement without significant disputes between the Parties. The settlement provides members of the Settlement Class with substantial benefits without having to wait for years of drawn out litigation. Based upon the foregoing reasons, Class Counsel respectfully requests that this motion be granted.

Dated: January 10, 2020         /s/ Sarah R. Schalman-Bergen
                                Sarah R. Schalman-Bergen