## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **TYHEE HICKMAN, SHANAY BOLDEN, and O'DONALD HENRY, individually and on behalf of all persons similarly situated,** | : : : : | **Civil Action No. 2:17-cv-01038-GAM** |
|  | : | **Class and Collective Action** |
| **Plaintiffs,** | : : |  |
| **v.** | : : |  |
| **TL TRANSPORTATION, LLC, SCOTT FOREMAN, HERSCHEL LOWE, AMAZON.COM, LLC, and AMAZON LOGISTICS, INC.,** | : : : : : |  |
| **Defendants.** | : : |  |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
## <u>APPROVAL OF THE SETTLEMENT AGREEMENT</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL HISTORY ................................................................................. 5

        A.      The Notice Provisions in the Settlement Agreement Have Been Satisfied ........... 5

        B.      Response from Class Members ........................................................................... 6

III.    ARGUMENT ........................................................................................................ 7

        A.      Applicable Legal Standard For Final Approval of Class Action Settlement
                Pursuant to Fed. R. Civ. P. 23 ........................................................................ 7

        B.      Applicable Legal Standard For Final Approval of Collective Action Settlement
                Pursuant to 29 U.S.C. § 216(b) ...................................................................... 9

        C.      The Settlement Satisfies the Relevant Criteria for Approval ............................... 11

                1.      The Proposed Settlement Terms Are Fair, Reasonable and Adequate in
                        Light of the Complexity, Expense and Likely Duration of the Litigation,
                        the Risks of Establishing Liability and Damages and of Maintaining the
                        Class Action Through Trial in this *Bona Fide* Dispute ........................... 11

                2.      The Lawsuit is at an Appropriate Stage of the Proceedings for Settlement
                        ................................................................................................................. 18

                3.      The Opinion of Experienced Counsel Supports Approval of the
                        Settlement, Which Resulted from Arm's-length Negotiations By Informed
                        and Experienced Counsel .......................................................................... 21

                4.      The Settlement Class' Response Supports the Settlement ......................... 22

        D.      The Proposed Settlement Furthers the Purpose of the FLSA ............................... 23

        E.      The Court Should Finally Certify the Settlement Class Under 29 U.S.C. § 216(**b**)
                ........................................................................................................................... 24

        F.      The Court Should Finally Certify the Settlement Class Under Fed. R. Civ. P.
                23(a) and 23(b).................................................................................................. 25

                1.      The Settlement Class Is Sufficiently Numerous ........................................ 26

                2.      The Settlement Class Seeks Resolution of Common Questions................... 27

                3.      The Named Plaintiffs' Claims Are Typical Of the Settlement Class ........ 27

4.      Class Counsel And Plaintiff Meet The Adequacy Requirements Of The Settlement Class.................................................................................. 28

5.      The Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3) ................................................ 28

G.      The Notice Provisions Were Followed and Provided Adequate Notice To The Class that Satisfies Due Process ......................................................... 30

H.      The Proposed *Cy Pres* Beneficiary Should be Approved.................................... 31

I.      The Service Awards To Named Plaintiffs Are Justified and Should Be Approved .............................................................................................................. 32

IV.   CONCLUSION............................................................................................................ 36

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Altnor v. Preferred Freezer Servs. Inc.*, 197 F. Supp. 3d 746 (E.D. Pa. 2016) ................. 9, 10, 23

*Anchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................... 29

*Baby Neal ex Rel. Kanter v. Casey*, 43 F. 3d 48 (3d Cir. 1994) ...................................... 25

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ........................... 10

*Bell Atl. Corp. v. Bolger*, 2 F. 3d 1304 (3d Cir. 1993)............................................... 19, 22

*Boone v. City of Phila.*, 668 F. Supp. 2d 693 (E.D. Pa. 2009)...................................... 19

*Bozak v. FedEx Ground Package Sys., Inc.*, No. 11-Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014) ...................................................................................... 16, 30

*Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ... 35

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) .................................................. 23

*Brown v. TrueBlue, Inc.*, No. 1:10-cv-00514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) ..... 23

*Chemi v. Champion Mortg.*, No. 2:05-cv-1238 (WHW), 2009 WL 1470429 (D.N.J. May 26, 2009) ......................................................................................................... 15, 28

*City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380 (S.D.N.Y.1972)........................................ 7

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ............... 34

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) .......................................... 19, 33

*Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464 (E.D. Pa. 2012) .................................... 9

*Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-cv-0718, 2013 WL 2338496 (M.D. Pa. May 29, 2013)....................................................................................................... 18

*Ehrheart v. Verizon Wireless*, 609 F. 3d  (3d Cir. 2010) ................................................. 8

*Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) .................................................... 7

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ........................................ 26, 27, 28

*Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483 (E.D. Pa. 2018) ........................................... *passim*

*General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982) .......................................... 27

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)........................................................... 8, 10

*Godshall v Franklin Mint Co.*, No. 01-cv-6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ..... 35

*In re Baby Products Antitrust Litig.*, 708 F. 3d 163 (3d Cir. 2013).......................................... 8, 31

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468 (E.D. Pa. 2010).... 8

*In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199 (E.D. Pa. 2014) ....... 14, 18, 22, 29

*In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ...................................................................................................................... 9, 10

*In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009) .................................................. 26

*In re General Motors Corp. PickUp Truck Fuel Tank Prod. Liability Litig.*, 55 F. 3d 768 (3d Cir. 1995) ...................................................................................................................... 8, 11, 14, 22

*In re Google Inc. Cookie Placement Privacy Litig.*, 934 F. 3d 316 (3d Cir. 2019)............ 8, 31, 32

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009)................................................ 7

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ................................................................................................. 18, 35

*In re Nat'l Football League Players Concussion Injury Litig.*, 821 F. 3d 410 (3d Cir. 2016). 8, 21

*In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012) ................... 22, 28

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) 21

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. Dec. 22, 2003)................................ 22

*In re Royal Dutch/Shell Transport Secs. Litig.*, No. 04-374 (JAP), 2008 WL 9447623 (D.N.J. Dec. 9, 2008)................................................................................................................. 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F. 3d 516 (3d Cir. 2004)....................... 11, 20, 23, 25

*Kauffman v. U-Haul Int'l Inc.*, No. 5:16-cv-04580, 2019 WL 1785453 (E.D. Pa. Apr. 24, 2019) ............................................................................................................................ 10

*Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012)............................................................. 29

*Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F. 3d 1 (1st Cir. 2016) .................................................... 14

*Lovett v. Connect America.com*, No. 14-2569, 2015 WL 5334261 (E.D. Pa. Sept. 14, 2015)..... 24

*Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ................................................ 9

*Maddy v. Gen. Elect. Co.*, No. 14-490-JBS-KMW, 2017 WL 2780741
(D.N.J. June 26, 2017) ............................................................................... 10, 18

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015) .......................................... 15

*Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2006) .................................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................... 30

*Mulroy v. Nat'l Water Main Cleaning Co. of N.J.*, No. 12-3669 (WJM)(MF), 2014 WL 7051778
(D.N.J. Dec. 12, 2014) ................................................................................. 9, 18

*Mumby v. Pure energy Servs. (USA), Inc.*, 636 F. 3d 1266 (10th Cir. 2011) .............................. 14

*Nichols v. Smithkline Beecham Corp.*, No. 00-6222, 2005 WL 950616 (E.D. Pa. April 22, 2005)
........................................................................................................................ 15

*Perry v. FleetBoston Fin. Corp*, 229 F.R.D. 105 (E.D. Pa. 2005) ................................................ 11

*Potoski v. Wyoming Valley Health Care Sys.*, No. 3:11-cv-00582, 2020 WL 207061 (M.D. Pa.
Jan. 14, 2020) ................................................................................................ 18

*Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d 1302 (S.D. Fla. 2007) ............................................. 14

*Rodriguez v. Republic Servs., Inc.*, No. SA-13-CV-20-XR, 2013 WL 5656129 (W.D. Tex. Oct.
15, 2013) ....................................................................................................... 14

*Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919 (M.D. Pa. May 8,
2014) ............................................................................................................. 35

*Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011) ..................... 34

*Singleton v. First Student Mgmt., LLC*, No. 13-cv-1744, 2014 WL 3865853 (D.N.J. Aug. 6,
2014) ....................................................................................................... 10, 24

*Sloane v Gulf Interstate Field Servs.*, No. 4:16-cv-01571, 2017 WL 1105236 (MD. Pa. Mar. 24,
2017) ............................................................................................................. 25

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ..................................................................... 26

*Sullivan v. DB Invs., Inc.*, 667 F. 3d 273 (3d Cir. 2011) ............................................................. 15

*Symczyk v. Genesis Healthcare Corp.*, 656 F. 3d 189 (3d Cir. 2011) ......................................... 23

*Tavares v. S-L Distrib. Co., Inc.*, No. 1:13-cv-1313, 2016 WL 1743268 (M.D. Pa. May 2, 2016)
........................................................................................................................ 35

*Tenuto v. Transworld Sys., Inc.*, No. 99-cv-4228, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002).... 33

*Walsh v. Great Atlantic & Pacific Tea Co.*, 96 F.R.D. 632 (D.N.J. 1983) .................................... 7

*Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir. 1984) ...................................................... 25

*Young v. Tri Cnty. Sec. Agency, Inc., 13-cv-5971*, 2014 WL 1806881 (E. D. Pa. May 7, 2014) . 33

*Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527 (3d Cir. 2012) ..................................... 24

**Statutes**

29 U.S.C. § 201 ..................................................................................................... 1

29 U.S.C. § 202 ................................................................................................... 23

29 U.S.C. § 216(b) ........................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Fed. R. Civ. P. 23(a) ..................................................................................... *passim*

Fed. R. Civ. P. 23(b) ..................................................................................... *passim*

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 30

Fed. R. Civ. P. 23(e) ............................................................................... 7, 10, 31

**Regulations**

29 C.F.R. § 778.112 ............................................................................................. 14

**Other Authorities**

CONTE & NEWBERG at §§ 8.21 ........................................................................ 31

MANUAL FOR COMPLEX LITIGATION at §§ 21.311 ........................................ 31

## I.     INTRODUCTION

This class and collective action wage and hour lawsuit against Defendants TL Transportation, LLC ("TLT"), Scott Foreman ("Foreman"), and Herschel Lowe ("Lowe") (collectively, the "TL Defendants") and Amazon.com, LLC, Amazon Logistics, Inc. (together, "Amazon")[1] has been settled, and Plaintiffs Tyhee Hickman, Shanay Bolden, and O'Donald Henry ("Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Final Approval of the Settlement Agreement.[2] The Court granted preliminary approval of this settlement on October 23, 2019 and set a Final Approval Hearing for February 18, 2020. (Dkt. No. 126.) Now, after Court-approved notice has been sent to Settlement Class Members,[3] final approval of this settlement is appropriate.

This lawsuit concerns TL Defendants' alleged unlawful policy and practice of failing to pay overtime compensation to Delivery Associates who, until April 15, 2017, were paid pursuant to a day rate compensation system in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and Pennsylvania, Maryland and New Jersey state laws, and whether Amazon bears legal responsibility for those violations. Ultimately, the Gross Settlement Amount that was negotiated and agreed upon ($1,800,000.00) represents a compromised resolution on this issue.

The Parties participated in two mediation sessions before Hon. James R. Melinson, Chief

---

[1] All Defendants are collectively referred to herein as "Defendants."

[2] A copy of the Settlement Agreement was filed on September 18, 2019 (hereinafter "Settlement Agreement"). (Dkt. No. 125-2.)

[3] "'Settlement Class'" or "'Settlement Class Member'" means the Named Plaintiffs, all Opt-in Plaintiffs, and all current or former Delivery Associates who were employed by TL Transportation, LLC to deliver packages to Amazon Customers in the United States between March 8, 2014 and April 15, 2017. There are approximately 757 members of the Settlement Class including Plaintiffs." "'Eligible Class Members'" means all Settlement Class Members who do not file timely and valid exclusion requests from the Settlement." *See* Settlement Agreement ¶¶ 23(z), (aa). When the Settlement Agreement was executed, the Parties were under the belief there were 757 Settlement Class Members.  However, after the Class List was received, there were 755 Settlement Class Members.

U.S. Magistrate Judge for the Eastern District of Pennsylvania (Ret.), at JAMS in Philadelphia on October 17, 2017 and on March 15, 2018, and in one mediation session before Stephen Sonnenberg, Esq., an experienced mediator, on July 29, 2019. Following the exchange of substantial informal discovery, extensive arm's-length settlement negotiations, three mediations, and extensive litigation, including TLT's service of offers of judgment upon 185 of the Opt-In Plaintiffs, the Parties were able to reach a settlement of this matter.  The terms of the Parties' settlement are set forth in the Settlement Agreement (the "Settlement Agreement" or "Agreement") filed on September 18, 2019. (Dkt. No. 125-2.)

In summary, the Settlement includes a gross cash payment by TLT of One Million Eight Hundred Thousand Dollars ($1,800,000) (the "Gross Settlement Amount"). *See* Settlement Agreement ¶ 23(o). TLT shall be responsible for the employer's share of applicable payroll taxes attributable to the wage portions of the Settlement Awards in addition to the Gross Settlement Amount. *Id*. After deducting attorneys' fees and costs, settlement administration costs, and service awards to the Named Plaintiffs in the amounts set forth in the Settlement Agreement, and subject to the Court's approval, the balance of the funds of $1,102,500 (the "Net Settlement Amount") will be apportioned among all Eligible Class Members. Settlement Agreement ¶ 23(r).

Specifically, every Eligible Class Member will receive a *pro rata* share of the Net Settlement Amount based on the number of weeks when he or she worked more than four days per week between March 8, 2014 through April 15, 2017 (the date when TLT changed its pay policies and practices). The Amount of $100.00 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Member so that each Eligible Class Member receives at least $100.00 in exchange for his or her release of claims in this Settlement Agreement. *See* Settlement

Agreement ¶ 37(a)(b). If the Settlement is approved, Class Counsel estimates that the average award paid to Settlement Class Members will be approximately $1,460.26. There is no claims process and a Settlement Class Member need not take any action in order to receive a Settlement Award. Notably, the Net Settlement Amount represents approximately 157% of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions on time worked at a half time rate. And, none of the funds from the Gross Settlement Amount will revert to Defendants. *Id.* at ¶¶ 34(a), 44.

The Settlement is fair, reasonable and extremely beneficial to the members of the Settlement Class. The Settlement offers the Class significant advantages over continued prosecution of their claims against Defendants: Members of the Settlement Class will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendants assert various defenses to their liability. In exchange, the Settlement Agreement contains a release of all FLSA and state wage and hour claims for unpaid overtime wages and liquidated or other damages from March 8, 2014 through April 15, 2017. *Id.* at ¶ 26. No Eligible Class Member shall be deemed to release an FLSA claim unless he/she cashes his/her Settlement Award check. *Id.* at ¶ 25.

Consistent with the Order granting preliminary approval, the Court-approved Notice was mailed to 755 Settlement Class Members listed on the database provided to the Settlement Administrator pursuant to the terms of the Settlement Agreement and the Court's Preliminary Approval Order. *See* Settlement Agreement ¶ 29(c); Declaration of Brian S. Devery of Angeion Group ("Devery Decl.") ¶¶ 6-8.[4] In addition the Settlement Administrator emailed the Notice to

---

[4] Although the Settlement Agreement states that there are "approximately 757 members of the Settlement Class," the final accurate number as provided to the Settlement Administrator and to whom notices were sent was 756. Devery Decl. ¶¶ 7, 14.

498 Class Members for whom the class data contained a valid email address. Devery Decl. ¶ 8.

Each Notice advised the Settlement Class Member of the settlement and that they could object to

the settlement or submit a written request for exclusion by February 7, 2020. *Id.* at Ex. B. **As of**

**the date of this filing, there have been zero objections and only one request for exclusion**. *See*

*Id.* at ¶ 15; Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") ¶ 29.

As discussed below, the proposed Settlement Agreement satisfies all of the criteria for final

approval under federal law and is fair, reasonable, and adequate. Accordingly, Plaintiffs request

that the Court issue an order:

1)      Granting final approval of the proposed Settlement Agreement;

2)      Granting final certification of the Settlement Class as a collective pursuant to 29 U.S.C. § 216(b) and granting final certification of the Settlement Class for state law claims pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

3)      Finally approving Tyhee Hickman, Shanay Bolden and O'Donald Henry as the representatives of the Settlement Class, and approving service awards, in the amount of $15,000.00 to Plaintiff Tyhee Hickman, $15,000.00 to Plaintiff Shanay Bolden, and $2,500.00 to Plaintiff O'Donald Henry for their service to the Settlement Class and in exchange for their additional released claims in favor of Defendants;

4)      Finally approving Berger Montague PC and Willig, Williams & Davidson as Class Counsel for the Settlement Class, and approving Class Counsel's request for attorneys' fees of $600,000.00 and costs in the amount not to exceed $40,000.00[5]

5)      Finally approving Philadelphia Legal Assistance as the *cy pres* recipient;

6)      Approving the Angeion Group as Settlement Administrator and finally approving the costs of settlement administration not to exceed $25,000.00; and

7)      Dismissing this class and collective action with prejudice.

Defendants do not oppose this motion, and Plaintiffs have submitted a proposed final

---

[5] Class Counsel filed an Unopposed Motion for Approval of Attorneys' Fees and Costs on January 10, 2020, which is also scheduled to be heard at the Final Approval Hearing. *See* Dkt. No. 128.

approval order for the Court's consideration.

## II.   PROCEDURAL HISTORY

Plaintiffs incorporate by reference the Procedural History and Terms of Settlement sections set forth in detail in the Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval, filed on September 18, 2019. (Dkt. No. 125-1, Sections II, III.)

### A.   The Notice Provisions in the Settlement Agreement Have Been Satisfied

The Court granted preliminary approval of the Settlement Agreement on October 23, 2019. (Dkt. No. 126.) Thereafter, the Parties complied with the notice provisions of the Agreement. Settlement Agreement ¶¶ 29(b)-(g), 30, 31; Devery Decl. ¶¶ 6-8. Specifically, on December 9, 2019, Angeion ("Settlement Administrator" or "Angeion") mailed the Notice of Settlement ("Notice") via First Class mail to 755 Class Members contained in the Class List (provided to Angeion by Defendants and Class Counsel on December 5, 2019), and also emailed the Notice of Settlement to the 498 Class Members for whom email addresses were provided. *Id.* at ¶¶ 7-8. The Notice advised Settlement Class Members that they would automatically receive a settlement check if the Court grants final approval of the Settlement Agreement and that they could object or the settlement or submit a written request for exclusion by February 7, 2020. *Id.* at Ex. A (copy of mailed Notice of Settlement) and Ex. B (copy of emailed Notice of Settlement).

During the period from the initial notice through February 5, 2020, 168 Notices were returned by the USPS as undeliverable. Of those, 30 of the Notices contained a forwarding address and the Notice was immediately re-mailed. For the 138 Notices returned to Angeion without forwarding addresses, Angeion performed address verification searches (also referred to as "skip tracing") using LexisNexis, a nationally recognized address search firm. Skip tracing utilizes the Class Member's name, previous address and Social Security number for locating a current address. *Id.* at ¶¶ 9-10. The Class List and database were updated with the new address information and

5

Notices were promptly re-mailed to Class Members via U.S. First Class mail at the updated addresses located via skip tracing. Of all the re-mailed Notices, 10 were returned undeliverable a second time, and new addresses were located through skip tracing or as provided by counsel, and the Notices were mailed for a third time. Only one was returned as undeliverable a third time. *Id.* at ¶¶ 10-12. *Id.* Of the 24 undeliverable Notices of which no updated address was located via the skip trace process or via updates from the Parties, eleven (11) were sent a Notice of Settlement via email which did not bounce. Thus, the total number of undeliverable Notices, including via email, is thirteen (13). *Id.* at ¶ 13.

On February 4, 2020, the Parties agreed to include another Eligible Class Member who was mistakenly not included in the original Class List. Angeion emailed Notice to this individual on February 4, 2020 and by mail on February 6, 2020. *Id.* at ¶ 14.

### B.    Response from Class Members

The response to the Settlement from Class Members has been overwhelmingly positive. Class Counsel and Defendants' Counsel were responsible for receiving objections and the Settlement Administrator was responsible for receiving requests for exclusion from the Settlement. Settlement Agreement ¶¶ 30, 31; Schalman-Bergen Decl. ¶ 29. As of the date of this filing, no Settlement Class Member has objected and only one Class Member has requested to be excluded from the settlement. Schalman-Bergen ¶ 29; Devery Decl. ¶ 15. As of the date of this filing, there are 755 Eligible Class Members. Schalman-Bergen Decl. ¶ 12.

Pursuant to the terms of the Settlement Agreement, payment of the settlement awards to Eligible Class Members will be made within thirty (30) days after the Effective Date or as soon as reasonably practicable. Settlement Agreement ¶ 42. Settlement checks will be valid and negotiable for a period of 180 days from the date of their issuance. *Id.* at ¶ 43. Additionally, any remaining amounts after the 180-day period will be paid to Philadelphia Legal Assistance, the *cy pres*

6

recipient designated in the Settlement Agreement, subject to the Court's approval.[6] *Id.* at ¶ 44. The Settlement Administrator will also distribute the Settlement Awards and coordinate tax administration. Schalman-Bergen Decl. ¶ 18; Devery Decl. ¶¶ 2, 16-17. The Settlement Administrator has agreed to perform administration duties for an amount not to exceed $25,000.00 Devery Decl. ¶ 2; Schalman-Bergen Decl. ¶ 18.

## III.   ARGUMENT

### A.   Applicable Legal Standard For Final Approval of Class Action Settlement Pursuant to Fed. R. Civ. P. 23

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable and adequate. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009); Fed. R. Civ. P. 23(e). Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). This discretion is conferred in recognition that "[the] evaluation of [a] proposed settlement in this type of litigation … requires an amalgam of delicate balancing, gross approximations and rough justice." *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1385 (S.D.N.Y.1972), *aff'd in part and rev'd in part on other grounds*, 495 F.2d 448 (2d Cir. 1974). Thus, the Court considers whether the proposed settlement is within a "range of reasonableness" that experienced attorneys could accept in light of the relevant risks of the litigation. *See Walsh v. Great Atlantic & Pacific*

---

[6] In preparing this motion, Class Counsel observed that the Notice distributed to the Settlement Class contained a typo that incorrectly stated, "Uncashed checks from Eligible Class Members who worked outside of Pennsylvania, Maryland, and New Jersey shall be returned to Defendant TLT, and those Eligible Class Members shall not release any claims against Defendants." Settlement Agreement, Ex. A. However, any uncashed checks from any Eligible Class Member will ***not*** revert to Defendants, but rather will be distributed to the *cy pres* subject to Court approval. Because this Settlement Agreement actually provides for more favorable treatment of the money than this typo stated, and because Settlement Class Members will receive a check regardless of whether they submit a Claim Form, Class Counsel does not believe that the typo implicates any due process concerns or changes whether the settlement should be finally approved.

*Tea Co.*, 96 F.R.D. 632, 642 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d Cir. 1983). There is a strong

judicial policy in favor of resolution of litigation before trial, particularly in "class actions and

other complex cases where substantial judicial resources can be conserved by avoiding formal

litigation." *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,* 269 F.R.D. 468, 484 (E.D.

Pa. 2010) (quoting *Ehrheart v. Verizon Wireless*, 609 F. 3d 595 (3d Cir. 2010)). A settlement is

presumed to be fair if "(1) the negotiations occurred at arms' length; (2) there was sufficient

discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a

small fraction of the class objected." *In re Google Inc. Cookie Placement Privacy Litig*., 934 F. 3d

316, 326 (3d Cir. 2019) (*citing In re Nat'l Football League Players Concussion Injury Litig.,* 821

F. 3d 410, 436 (3d Cir. 2016)).

      The Third Circuit has set forth nine factors to be considered when determining whether a

settlement is "fair, reasonable, and adequate." The elements of this test – known as the "*Girsh*

factors" are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through trial; (7)
> the ability of the Defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; (9) the
> range of reasonableness of the settlement fund to a possible recovery in light of all
> the attendant risks of litigation …

*In re General Motors Corp. PickUp Truck Fuel Tank Prod. Liability Litig.,* 55 F. 3d 768, 785 (3d

Cir. 1995) *(citing Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and

punctuation marks omitted). *Accord Google*, 934 F. 3d at 322 & n.2 (noting that the court must

apply the *Girsh* factors in determining whether to approve a class action settlement).[7]

---

[7] *In re Baby Products Antitrust Litig*., 708 F. 3d 163 (3d Cir. 2013) (reaffirming use of *Girsh*
factors). Notably, "[t]he *Girsh* factors are a guide and the absence of one or more does not

**B.      Applicable Legal Standard For Final Approval of Collective Action Settlement Pursuant to 29 U.S.C. § 216(b)**

This case is also brought pursuant to Section 216(b) of the FLSA. When employees bring a private action under the FLSA, and present to the district court a proposed settlement pursuant to Section 216(b) of the FLSA, the district court may enter a stipulated judgment if it determines that the compromise reached "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions" rather than "a mere wavier of statutory rights brought about by an employer's overreaching." *Cuttic v. Crozer-Chester Med. Ctr.,* 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

"Although the Third Circuit has not yet specifically addressed what factors district courts should consider in evaluating settlements under the FLSA, district courts in this Circuit have referred to the considerations set forth in *Lynn's Food Stores*," *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (citations omitted). Under *Lynn's Food Stores,* a district court may find that a proposed settlement resolves a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." *Chickie's*, 2014 WL 911718 at *2 (citing *Lynn's Food Stores*, 679 F. 2d at 1354)). "In essence, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Altnor v. Preferred Freezer Servs. Inc.,* 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016). "Typically, courts regard the adversarial nature of

---

automatically render the settlement unfair. Rather the Court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness. In addition, a district court should consider whether the settlement is proposed by experienced counsel who reached the agreed-upon terms through arms-length bargaining." *Mulroy v. Nat'l Water Main Cleaning Co. of N.J.*, No. 12-3669 (WJM)(MF), 2014 WL 7051778, at *2 (D.N.J. Dec. 12, 2014) (internal citations omitted).

a litigated FLSA case to be an adequate guarantor of fairness." *Kauffman v. U-Haul Int'l Inc*., No. 5:16-cv-04580, 2019 WL 1785453, at *2 (E.D. Pa. Apr. 24, 2019). In addition, "a strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length." *Id*. "[A] dispute concerning overtime pay owed to class members is precisely the type of dispute the FLSA is designed to address" *Altnor,* 197 F. Supp. 3d at 763 (citing *Barrentine v. Arkansas-Best Freight Sys., Inc*., 450 U.S. 728, 739 (1981).

In scrutinizing an FLSA settlement agreement for reasonableness and fairness, courts generally proceed in a "two-step" analysis: (1) the court considers whether the agreement is "fair and reasonable" to the plaintiffs (*i.e*., the employees), and (2) if it is, the court next considers whether the agreement furthers or "impermissibly frustrates" the implementation of the FLSA in the workplace. *Chickie's*, 2014 WL 911718 at *2 (citations omitted).

With respect to the first step, because the Third Circuit has not yet definitively set out FLSA-specific criteria to apply to assess the fairness and reasonableness of a proposed FLSA settlement agreement, district courts have looked to the same *Girsh* factors (discussed above) used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23(e). *See id.* at *2 (citing *Girsh*, 521 F. 2d at 157).[8] Once the FLSA settlement is found to fair and reasonable, the Court also determines whether the agreement furthers the purpose of the FLSA. *See Singleton v. First Student Mgmt., LLC*, No. 13-cv-1744, 2014 WL 3865853, at *8 (D.N.J. Aug. 6, 2014).

---

[8] It should be noted that courts apply the Rule 23-applicable *Girsh* factors to consider the fairness of an FLSA settlement only where the settlement involves a "hybrid" action, like this one, alleging both FLSA *and* state wage and hours law claims. Here, Plaintiffs seek approval of the settlement of FLSA claims as a collective action under 29 U.S.C. § 216(b) *as well as* approval of a settlement class of class members of specified states under Rule 23. *See, e.g., Maddy v. Gen. Elec. Co.,* No. 14-490-JBS-KMW, 2017 WL 2780741, at *3 (D.N.J. June 26, 2017).

C.      **The Settlement Satisfies the Relevant Criteria for Approval**

1.      **The Proposed Settlement Terms Are Fair, Reasonable and Adequate in Light of the Complexity, Expense and Likely Duration of the Litigation, the Risks of Establishing Liability and Damages and of Maintaining the Class Action Through Trial in this *Bona Fide* Dispute**

The first *Girsh* factor - "the complexity, expense and likely duration of the litigation" - requires the Court to consider "the probable costs, in both time and money of continued litigation." *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018) (citing *In re General Motors,* 55 F. 3d at 812 (internal quotations and citation omitted)). *Girsh* factors four, five and six, which weigh "the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class action through the trial" require the Court to "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarin Sodium Antitrust Litig*. 391 F. 3d 516, 537 (3d Cir. 2004). In applying the risks of establishing liability and damages, "the Court need not delve into the intricacies of the merits of each sides arguments, but rather may 'give credence to the estimation of the probability of success proffered by [Class Counsel], who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.'" *Perry v. FleetBoston Fin. Corp,* 229 F.R.D. 105, 115 (E.D. Pa. 2005). Application of these *Girsh* factors support final approval of this Settlement.

Defendant TLT has agreed to pay a large gross settlement amount - $1,800,000.00 - in settlement of the claims of the Settlement Class.  Pursuant to the Settlement Agreement, if the Court approves the amounts set forth above, the Net Settlement Amount would be approximately $1,102,500.  Accordingly, Settlement Class Members will receive an average recovery of approximately $1,460.26, even after settlement administration costs, the Named Plaintiffs' service awards, and attorneys' fees and costs are deducted. *See* Schalman-Bergen Decl. ¶ 12. Every Class

Member who participates in this Settlement will receive a minimum payment of $100.00. *See id.* ¶ 15; Settlement Agreement ¶ 37(a). Notably, **the Net Settlement Amount represents approximately 157% of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions on time worked at a half-time rate**. Schalman-Bergen Decl. ¶ 14.

Awards to Eligible Class Members will be made from the Net Settlement Amount. Specifically, all Eligible Class Members will receive a *pro rata* share of the Net Settlement Amount based the total number of weeks when he or she worked more than four days per week between March 8, 2014 through April 5, 2017 (the date when TLT changed its pay policies and practices). Settlement Agreement ¶ 37(b). The entirety of the Net Settlement Fund will be disbursed to all Eligible Class Members. If any monies remain in the Qualified Settlement Fund at the end of the 180-day check-cashing period, those monies shall be paid to Philadelphia Legal Assistance, the Parties' agreed-upon *cy pres* recipient, subject to the Court's approval. There will be no reversion of any portion of the funds to Defendants. *Id.* at ¶¶ 34(a), 44.

Plaintiffs believe that the Settlement is an excellent result for the members of the Settlement Class. Defendants were prepared to vigorously defend this action by asserting a number of defenses to liability, and dispute that the claims presented were appropriate for class certification or FLSA collective action treatment. While the Court had already ruled on liability in granting Plaintiffs' Motion for Judgment on the Pleadings converted into a Motion for Summary Judgment, holding that unpaid wages were owed where a settlement Class Member worked more than forty (40) hours per week[9]—the Parties vigorously disputed a number of legal and factual issues that would have impacted the case going forward, including, but not limited to the following:

---

[9] *See* Court Order dated August 16, 2018, granting Plaintiffs' Motion for Judgment on the Pleadings converted into a Motion for Summary Judgment. (Dkt. No. 81.) *See also* Settlement Agreement ¶ 11.

1)   the amount of time that Delivery Associates spent performing their work;[10]

2)   whether damages should be paid at a half-time rate or a time-and-a-half rate

3)   whether Defendants would be able to meet their burden of demonstrating that the TL Defendants' unlawful pay system was taken in good faith with reasonable grounds for their belief that they were complying with the FLSA pursuant to 29 U.S.C. § 216(b) such that they would avoid the imposition of liquidated damages;

4)   whether Amazon would be held liable for the alleged pay violations of TLT;

5)   whether the Court would certify a class action under Rule 23 or grant final certification of a collective action under the FLSA; and

6)   whether Plaintiffs and/or Defendants would appeal myriad legal or factual determinations, including class/collective action treatment, liability, and damages.

Schalman-Bergen Decl. ¶ 30. As a result, continued litigation would require significant factual development and any verdict at trial could be delayed based on appeals by Defendants. *Id.*

Notably, among the risks particular to this case, first, there was a risk that Plaintiffs would not succeed in maintaining a collective or class through trial. Accordingly, the risks and costs of continued litigation are likely to be much higher than those of a typical single party case. Second, a trial on the merits would involve significant risks for Plaintiffs as to both the liability of joint employment by Amazon as well as the appropriate rate and calculation of damages, and any verdict at trial would be delayed by appeals by Defendants. Third, the FLSA provision at issue was hotly contested, with each side citing factual and legal support in its favor: Plaintiffs argued that, because

---

[10] Because TLT was not able to produce complete time records for Delivery Associates during the relevant time period due to changes in its timekeeping programs, the Parties had to use various assumptions to estimate time worked for purposes of calculating damages. Both parties modeled these damages by analyzing Amazon's delivery data, which includes various times when the Delivery Associates scan and/or deliver packages to Amazon customers. The parties engaged in numerous meet and confer calls so that Class Counsel could understand the data and could engage in fully informed settlement negotiations. As part of their exposure analysis, Class Counsel's in house data analyst matched payroll records produced by TLT with the delivery data produced by Amazon, and built in various factual assumptions on time worked in addition to the time that was captured by Amazon's delivery data. Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this issue. Schalman-Bergen Decl. ¶ 30, n. 4.

Defendant TLT admitted that Delivery Associates were paid other forms of compensation for services, the exception to the general rule that overtime must be paid at a time-and-a-half rate as set forth in 29 C.F.R. § 778.112 would not apply. *See* 29 C.F.R. § 778.112 (permitting overtime to be paid at a half time rate where an employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services).[11] In response, Defendants raised various factual and legal arguments disputing that damages would be ordered to be paid at a time-and-a-half rate.[12] Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this central issue. *Id.* at ¶ 31.

Similarly, the Settlement satisfies *Girsh* factors eight and nine - the "range of reasonableness of the settlement fund in light of the best possible recovery" and "in light of all the attendant risks of litigation" – which weigh the risks of proceeding to trial against the value of an immediate settlement, and recognizes that "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 218 (E.D. Pa. 2014) (citing *In re General* Motors, 55 F. 3d at 806). Here, the settlement is substantial and eminently reasonable given the magnitude of the risks in proceeding to trial. Moreover, the Net Settlement Amount represents approximately 157% of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions on time worked at a half-time rate. The Settlement, thus, represents a high percentage of the maximum expected recovery if Plaintiffs prevailed. This is a remarkable recovery and weighs heavily in favor of approval of

---

[11] *See, e.g., Rodriguez v. Republic Servs., Inc.*, No. SA-13-CV-20-XR, 2013 WL 5656129, at *2 (W.D. Tex. Oct. 15, 2013).

[12] *See, e.g., Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F. Supp. 2d 1302, 1313 (S.D. Fla. 2007); *Mumby v. Pure energy Servs. (USA), Inc.*, 636 F. 3d 1266, 1268 (10th Cir. 2011).

the Settlement.  Indeed, Courts routinely approve class action settlements where the settlement amount is only a relatively small percentage of the claimed amount of damages. *See., e.g., McDonough v. Toys R Us, Inc*., 80 F. Supp. 3d 626, 646 (E.D. Pa. 2015) (approving settlement which constituted 24% of estimated loss to the class, and noting that courts in the Third Circuit consistently approve settlements that equal between 9% and 24% of the total potential liability to the class); *Nichols v. Smithkline Beecham Corp*., No. 00-6222, 2005 WL 950616, at *16 (E.D. Pa. April 22, 2005) (approving settlement that represented between 9.3% and 13.9% of claimed damages); *Mehling v. N.Y. Life Ins. Co.,* 248 F.R.D. 455, 462 (E.D. Pa. 2006) (approving settlement that represented 20% of best possible recovery and noting that courts have approved settlements with even lower ratios); *Galt*, 310 F. Supp. 3d at 495 (settlement which represented approximately 62.5% of maximum total compensatory damages was a "significant recovery of the unpaid wages that could have reasonably been proven at trial" especially "in light of the risk associated with further litigation" and satisfied eighth and ninth *Girsh* factors).[13]

In addition, the proposed allocation formula is fair and reasonable and should be preliminarily approved. The Court's "[a]pproval of a plan of allocation of a settlement fund… is governed by the same standards of review applicable to approval of the settlement as whole; the distribution plan must be fair, reasonable and adequate." *Mehling*, 248 F.R.D. at 463 (citation omitted.). "A district court's principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Sullivan v. DB Invs., Inc*., 667 F. 3d 273, 326 (3d Cir. 2011) (internal quotations and citation omitted).

---

[13] *See also Chemi v. Champion Mortg*., No. 2:05-cv-1238 (WHW), 2009 WL 1470429, at *5 (D.N.J. May 26, 2009) (approving FLSA collective settlement as "reasonable, fair and adequate" given the magnitude of the risk of continued litigation, and explaining that a settlement can be "reasonable" even if "significantly less" than the "best recovery" the class might obtain by continuing to trial).

"Generally, a plan that reimburses class members based on the nature and extent of their injuries is considered reasonable." *Mehling*, 248 F.R.D. at 463. "In determining the fairness, reasonableness, and adequacy of a plan of allocation, courts give great weight to the opinion of qualified counsel." *In re Royal Dutch/Shell Transport Secs. Litig.,* No. 04-374 (JAP), 2008 WL 9447623, at *23 (D.N.J. Dec. 9, 2008) (citations omitted).

Here, Settlement Class Members do not need to take any action in order to receive a Settlement Award. Under the proposed allocation formula, each Eligible Class Member will receive a minimum amount of $100.00 in addition to the settlement shares that bear a reasonable relationship to his/her potential damages (*i.e.*, a *pro rata* portion of the Net Settlement Amount). Settlement Agreement ¶ 37(b)(i).(ii). All Settlement Award determinations will be based on Defendant TLT's previously produced payroll and timekeeping data for Settlement Class Members. *Id.* at ¶ 38. This allocation formula considers that Settlement Class Members worked different amounts of overtime hours on a weekly basis, and, if they prevailed, would be entitled to different amounts of damages. This formula for distribution of the Net Settlement Fund based on Qualifying Workweeks is similar to those found to be fair and reasonable in similar cases, and accordingly warrants approval.[14]

---

[14] *See, e.g., Holbert v. Waste Management,* 2:18-cv-02649-CMR (E.D. Pa. August 6, 2019) (approving FLSA collective action settlement where allocation formula featured *pro rata* distribution based on number of workweeks of each settlement collective member, in addition to automatic minimum payment); *Gundrum v Cleveland Integrity Servs. Inc.*, No. 4:17-cv-000550TCK-JFJ (N.D. Okla. Dec. 4, 2017) (Dkt. No. 102) (granting final approval of settlement agreement with allocation formula comprised of distribution of minimum payment, plus, for those who submit a claim form, a *pro rata* share of net settlement amount based on number of workweeks in which he/she worked in qualifying position for defendant and were paid on daily rate basis) (Dkt. No. 11, at 7-8); *See Lopez v. T/J Inspection, Inc*., No. 5:16-cv-148-M (W.D. Okla. April 12, 2017) (Dkt. No. 59) (approving day rate overtime settlement with allocation formula based on workweeks); *Fenley v. Applied Consultants, Inc.,* No. 2:15-CV-00259-MRH (W.D. Pa. June 17, 2016) (Dkt. No. 65) (same); *McGeary v. North Am. Pipeline Insp*., LLC, No. 2:14-cv-992-JFC

Furthermore, the formula takes into account that many of these Settlement Class Members also had previously considered and turned down offers of judgment served on them by TLT, at the risk that costs would be taxed against Plaintiffs if the amount finally obtained was not more favorable than the unaccepted offer. *See* Rule 68(d). The Settlement Agreement provides Settlement Class Members with more money than was offered by the TLT Defendants in their offers of judgment (Settlement Agreement ¶ 37(b)(iii)), and also provides that 16 Settlement Class Members who previously accepted their offers of judgment will be entitled to the difference between this proposed settlement and the amounts they accepted, in light of the fact that the Court's orders only dismissed their claims against TLT. *See* Dkt. Nos. 50, 111, 114 (Orders entering Partial Judgment pursuant to Rule 54(b) in favor of Opt-In Plaintiffs and against Defendant TL Transportation).[15]

In the instant case, the Parties have vigorously litigated this case for over two (2) years and continued to dispute key factual and legal issues. The complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.  Thus, the *Girsh* factors relating to the complexity, expense and likely duration of the litigation, the risks of establishing liability and damages and of maintaining the class action through trial, and the range of reasonableness of the settlement in light of the best possible recovery given the attendant risks of litigation, strongly support final approval of this Settlement. *See Galt,*

---

(W.D. Pa. Dec. 22, 2014) (Dkt. No. 97) (same); *Bozak, Inc*., 2014 WL 3778211 at *3 (approving collective action settlement in case brought by current and former FedEx group Package line haul services managers in which allocation formula took into account number of workweeks each class member worked in relevant period).

[15] TLT provided offers of judgment to 186 Eligible Class Members. Of those Eligible Class Members, 170 rejected TLT's offers and their calculated minimum settlement awards were more than the offers of judgment. On average, the awards were 26% more than the offers of judgment, the average difference being $1,867.14. *See* Schalman-Bergen Decl. ¶ 16, n. 2.

310 F. Supp. 3d at 493-94 (*Girsh* factors favored settlement where "action involves complex factual issues relating to Defendants' policies and practices that, if litigated to trial would require substantial additional class-wide merits and damages discovery" including multiple depositions by both sides, and extensive motion practice concerning class certification and summary judgment, while "settlement at this stage avoids the significant costs and risk associated with protracted litigation"); *Potoski v. Wyoming Valley Health Care Sys.*, No. 3:11-cv-00582, 2020 WL 207061, at *4 (M.D. Pa. Jan. 14, 2020) (applying pertinent *Girsh* factors, court approved settlement, where "contentious" litigation had gone on for years, class had survived summary judgment and would likely next face other pre-trial motions as well as the issue of final certification: "This is to say that the litigation is far enough along that settlement is appropriate, but no so far [a]long that is clearly near completion.") *In re Janney Montgomery Scott LLC Fin. Consultant Litig*., No. 06-3202, 2009 WL 2137224, at *8 (E.D. Pa. July 16, 2009) ("settlement allows both the class and Defendant to avoid the obstacles presented by protracted litigation" and "[c]onsiderable time, money and resources will be saved by approving the settlement."); *Mulroy*, 2014 WL 7051778 at *3 (application of *Girsh* factors weighed in favor of approving settlement of Rule 23 class and FLSA collection action: "Since continued litigation would be time-consuming and expensive, settlement makes eminent sense.").[16]

### 2.    The Lawsuit is at an Appropriate Stage of the Proceedings for Settlement

"Approval of a settlement is favored where '[t]he parties arrived at an arms-length

---

[16] *See also Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-cv-0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013) ("The Court sees no reason to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate."); *Maddy v. General Electric*, 2017 WL 2780741 at *7 ("[T]here is tremendous benefit to the Class Members in light of the stage of the litigation, the remaining hurdles prior to even arriving at a trial date, and the risks associated with continued litigation").

settlement…[with] a clear view of the strengths and weaknesses of their case.'" *CertainTeed,* 303 F.R.D. at 217 (citation omitted). "[C]ourts generally recognize that a proposed class action settlement is presumptively valid where…the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 144-45 (E.D. Pa. 2000). Settlements arrived at following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila*., 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp. v. Bolger,* 2 F. 3d 1304, 1314 (3d Cir. 1993)).

In this case, the proposed Settlement was reached after contested litigation, extensive factual discovery and a series of serious arm's-length negotiations through the ADR process at various junctures over the course of two years. Specifically, the Settlement was reached only after (1) the exchange of substantial documents and records, including electronic payroll records showing days worked and all forms of compensation received by Plaintiffs and Class Members during the relevant time periods; (2) multiple pre-settlement conference calls; (3) multiple depositions; (4) extensive briefing and oral argument on a motion for summary judgment; (5) preparation and exchange of mediation statements; and (6) three in person-mediations in Philadelphia, Pennsylvania before experienced mediators, which included additional extensive arm's-length negotiations between counsel for the Parties both before and after the mediation. *See* Schalman-Bergen Decl. ¶ 32; Settlement Agreement ¶¶ 3-18.

For example, following the first two unsuccessful ADR attempts, Plaintiffs filed a partial judgment on the pleadings regarding Defendant TLT's payment scheme. The Court after briefing and oral argument converted the motion to a partial motion for summary judgment. (Dkt. Nos. 67, 69.) The Court granted Plaintiffs' motion on August 16, 2018. (Dkt. No. 81.) In addition, litigation of this matter was complex and laborious. The Parties stipulated to notice after the Plaintiffs filed

their motion for conditional certification and to facilitate notice pursuant to 29 U.S.C.§ 216(b) (Dkt. Nos. 46-64), and Plaintiffs then oversaw the notice administration process in which notice was distributed on August 10, 2018 to 757 individuals. (Dkt. Nos. 13, 83, 85, 87-90, 94-101, 107-110, 115). Plaintiffs also filed two Amended Complaints, responded to a Motion to Dismiss, conducted three (3) depositions of Defendant TLT's representative, and responded to hundreds of offers of judgment from Defendant TLT. *See* Settlement Agreement ¶¶ 5,7, 10, 12, 13. Prior to the mediations, the Parties engaged in multiple pre-mediation meet and conference calls. In preparation for these mediations, Class Counsel prepared and provided a comprehensive damages analysis to Defendants' counsel. There was sufficient investigation and discovery conducted in this matter to allow counsel and the Court to act intelligently concerning the settlement of the claims. Schalman-Bergen Decl. ¶ 33.

Further, because TLT was not able to produce complete time records for Delivery Associates during the relevant time period due to changes in its timekeeping programs, the Parties had to use various assumptions to estimate time worked for purposes of calculating damages. Both Parties modeled these damages by analyzing Amazon's delivery data, which includes various times when the Delivery Associates scan and/or deliver packages to Amazon customers. The Parties engaged in numerous meet and confer calls so that Class Counsel could understand the data and could engage in fully informed settlement negotiations. *Id.* at ¶ 34.

Accordingly, the *Girsh* factor concerning the "stage of the proceedings" strongly favors final approval of the Settlement. *In re Warfarin,* 391 F. 3d at 537 ("[b]ased on the type and amount of discovery undertaken by the parties…. class counsel adequately appreciated the merits of the case before negotiating, and we agree that this factor strongly favors approval of the settlement"); *Galt,* 310 F. Supp. 3d at 494 (in the course of negotiating the settlement, "Class Counsel collected

and reviewed a substantial volume of documents pertaining to Defendant's policies and procedures as well as payroll records of each of the FLSA collective members in order to investigate the factual support for the legal claims"; thus, court found that the settlement "resulted from informed negotiations between experienced counsel who fully appreciated the merits and risks of this case"). For the same reasons, the settlement is fair and reasonable under the relevant "*Prudential*" factor which similarly considers "the maturity of the underlying substantive issues." *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) (finding class counsel's "vigorous litigation," pursuit of discovery, and use of informal discovery supported settlement).[17]

### 3. The Opinion of Experienced Counsel Supports Approval of the Settlement, Which Resulted from Arm's-length Negotiations By Informed and Experienced Counsel

As discussed above, the Settlement was reached after an intensive arms-length ADR process, through which the Parties participated in three in-person mediation sessions in Philadelphia, Pennsylvania before Hon. James R. Melinson (Ret.) on October 17, 2017 and March 15, 2018, and Stephen Sonnenberg, Esq. on July 29, 2019. *See* Settlement Agreement ¶¶ 4, 8, 16. The participation by such neutral and well-respected facilitators, and the adversarial nature of those negotiations illustrates that this case was resolved and settled only after sufficient arm's-length bargaining. Counsel for both sides are highly experienced in wage and hour class action litigation. The Declarations of Class Counsel filed in support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Costs describe Class Counsel's experience in this area. *See* Pl.'s Motion for Approval of Attys' Fees & Costs, Declaration of Sarah R. Schalman-Bergen (Dkt. No. 128-2)

---

[17] In *Prudential*, the Third Circuit held that expanding the *Girsh* factors, while not mandatory, but "permissive and non-exhaustive," might be useful to the extent they are relevant to the proposed settlement. *In re Nat'l Football*, 821 F. 3d at 437 (citing *Prudential,* 148 F. 3d at 323).

21

and Declaration of Ryan A. Hancock (Dkt. No. 128-3). These experienced wage and hour attorneys believe that this case is appropriate for settlement and that the substantial Gross Settlement Amount of $1,800,00.00 (amounting to a Net Settlement Amount of approximately $1,102,500.00 that will actually be paid out to Settlement Class Members) will provide significant relief to Plaintiffs and Settlement Class Members. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. Dec. 22, 2003) ("settlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight")

### 4.    The Settlement Class' Response Supports the Settlement

Finally, the Settlement Class Members' collective response to the Settlement overwhelmingly supports final approval. To date, there have been **<u>zero objections to the proposed Settlement and only one request for exclusion</u>**. *See* Schalman-Bergen Decl. ¶ 29; Devery Decl. ¶ 15. This overwhelmingly positive response from the Settlement Class demonstrates the fairness and adequacy of the Settlement's terms. Given the Court's preliminary approval and the complete absence of any objections by Class Members, final approval of the settlement is warranted. *See Bell Atl. Corp.*, 2 F.3d at 1313 n.15 (noting that it is generally appropriate to assume that "silence constitutes tacit consent to the agreement" in the class settlement context); *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 269 (E.D. Pa. 2012) (holding that no objections supports final approval of settlement).[18] Thus, the *Girsh* factor weighing "reaction of

---

[18] *See also Galt,* 310 F. Supp. 3d at 493 ("In this Circuit, a settlement is entitled to an initial presumption of fairness where it resulted from arm's-length negotiations between experienced counsel, there was sufficient discovery, and there were no objectors and only a small percentage of opt-outs") (citing *In re General Motors*, 55 F. 3d at 785).

the class to the settlement" weighs in favor of approval.[19]

### D.   The Proposed Settlement Furthers the Purpose of the FLSA

The Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. *See Brown v. TrueBlue, Inc.*, No. 1:10-cv-00514, 2013 WL 5408575, at \*3 (M.D. Pa. Sept. 25, 2013) (finding settlement agreement frustrated the implementation of the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards). *Altnor*, 197 F. Supp. 3d at 764 (settlement did not frustrate FLSA's implementation where it does not contain impermissibly broad release provisions).

Indeed, the settlement *furthers* the purposes of the FLSA by providing the low-wage workers with substantial recovery for their alleged unpaid overtime wages, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency…"). *See also Symczyk v. Genesis Healthcare Corp.*, 656 F. 3d 189, 199 (3d Cir. 2011) (§ 216(b) affords plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.").

---

[19] With respect to the *Girsh* factor which considers "Defendant's ability to withstand a greater judgment," courts typically consider this factor neutral, weighing neither for or against approval of the settlement. *CertainTeed*, 303 F.R.D. at 218 (ability to pay more than settlement is neutral factor in approving the settlement). Thus, even if, as Plaintiffs presume, Amazon has ample resources and its ability to pay exceeds its potential liability, this was not a factor in settlement negotiations. *See In re Warfarin*, 391 F.3d at 538 (approving settlement even where settling defendant had ability to pay greater amount.).

Moreover, the Settlement release provisions are limited to wage and hour claims that occurred prior to April 15, 2017, and Settlement Class Members will not release their FLSA claims unless they cash or deposit their settlement check. *See* Settlement Agreement ¶¶ 25-26. The Settlement contains no confidentiality or indemnification provisions, nor any prohibitions on future employment. *See generally* Settlement Agreement.

Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### E.   The Court Should Finally Certify the Settlement Class Under 29 U.S.C. § 216(b)

In the context of a collective action settlement, the Court must complete the second stage of certification and determine whether Plaintiffs are similarly situated under Section 216(b) of the FLSA to finally certify the collective action. *See Lovett v. Connect America.com*, No. 14-2569, 2015 WL 5334261, *2 (E.D. Pa. Sept. 14, 2015); *Singleton*, 2014 WL 3865853 at *3 (certifying collective action for settlement).[20] To determine whether members of the collective action are similarly situated, the Court must evaluate a number of factors, including but not limited to: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Galt*, 310 F. Supp. 3d at 492 (citing *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536-37 (3d Cir. 2012)). The Court must "consider[ ] all the relevant factors and make[ ] a factual determination on a case-by-case basis." *Zavala,* 691 F. 3d at 536.

Here, all of the Settlement Class Members are current or former employees of Defendant

---

[20] The Court previously conditionally certified the Settlement Class as a collective pursuant to 29 U.S.C. § 216(b) for settlement purposes in its Preliminary Approval Order. Dkt. No. 126, ¶ 3.

TLT who worked as Delivery Associates at some point during the applicable time period to deliver packages to Amazon customers in the United States. *See* Settlement Agreement ¶ 23(z). Settlement Class Members did not receive the lawful amount of overtime compensation for hours worked in excess of forty (40) hours in a workweek. For settlement purposes only, Defendants have agreed that the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) are met. *See* Settlement Agreement ¶ 21. Accordingly, the Court should grant final certification to the Settlement Class under Section 216(b) of the FLSA. [21]

### F.   The Court Should Finally Certify the Settlement Class Under Fed. R. Civ. P. 23(a) and 23(b)

In addition, the Settlement Class should be finally certified. A case may be certified as a class action under Fed. R. Civ. P. 23 when:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp*., 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985). These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See, e.g., In re Warfarin*, 391 F.3d at 527. In addition, a plaintiff must satisfy one of the prongs of Rule 23(b). *See Baby Neal ex Rel. Kanter v. Casey*, 43 F. 3d 48, 55 (3d Cir. 1994). Here, the parties request

---

[21] Notably, the requirements for collective action certification 29 U.S.C. § 216(b) are less stringent than those listed in Rule 23. *See Sloane v Gulf Interstate Field Servs*., No. 4:16-cv-01571, 2017 WL 1105236, at *21 (MD. Pa. Mar. 24, 2017). Because, as discussed below, Plaintiffs have met the standards for certification of the Settlement Class under Rule 23, they have also met the criteria for certification of the FLSA class as "similarly situated" under 29 U.S.C. § 216(b).

certification under Rule 23(b)(3) which permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These dual requirements are commonly referred to as "predominance" and "superiority," respectively. *See, e.g.*, *In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

On October 23, 2019 the Court preliminarily certified the Settlement Class under Rule 23 for settlement purposes (Dkt. No. 126, ¶ 4), and Plaintiff now moves for final certification of the Settlement Class under Rule 23(a) and 23(b)(3). Pursuant to the terms of the Settlement Agreement, Defendant has stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3) are met. Settlement Agreement ¶ 21.

### 1.     The Settlement Class Is Sufficiently Numerous

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). The proposed Settlement Class here easily meets the numerosity requirement because approximately 755 Settlement Class Members have been identified through Defendant TLT's payroll records. Settlement Agreement ¶ 23(z). Each Eligible Settlement Class Member (*i.e.*, Settlement Class Members who do not exclude themselves from the Settlement) will receive a settlement award. *See id.* ¶¶ 37. *See S*tewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (although "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing "that the potential number of plaintiffs exceeds 40"). Numerosity is satisfied.

### 2.      The Settlement Class Seeks Resolution of Common Questions

The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if the named Plaintiff shares at least one question of fact or law with the grievances of the prospective class. *See id.*, 275 F.3d at 227. Here, Named Plaintiffs and the Settlement Class Members' claims arise from their common work as Delivery Associates, working under Defendant TLT's common pay policies and alleged failure to pay Delivery Associates the proper amount of overtime premiums. This pay plan applied to all Members of the Settlement Class, who all performed similar work delivering packages to Amazon customers on similar schedules (*i.e.*, on a daily route basis assigned by Defendants.). Amazon also raised the same joint employer defense to all Delivery Associates. These sample common questions of law and fact, which Plaintiffs contend apply uniformly to all members of the Settlement Class, are sufficient to satisfy the commonality requirement.

### 3.      The Named Plaintiffs' Claims Are Typical Of the Settlement Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied for purposes of approving the settlement because Plaintiffs' claims are reasonably coextensive with those of the Settlement Class Members, and because Plaintiffs possess the same interest and suffered the same injury as the absent class members. *See Fry*, 198 F.R.D. at 468; *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). Plaintiffs' claims for unpaid overtime compensation during weeks when they worked as Delivery Associates are typical of the claims of the Settlement Class. *Galt*, 310 F. Supp. 3d at 490-491 (typicality satisfied where "Named Plaintiffs' claims are based on Defendant's alleged failure to compensate them for time spent working during meal breaks, and they seek compensation for this unpaid time [and, thus] [t]he prospective class members have claims that rely on the same policies and procedures and entitle them to the same types of relief.")

27

4.   **Class Counsel And Plaintiff Meet The Adequacy Requirements Of The Settlement Class**

To meet the adequacy requirement of Fed. R. Civ. P. 23(a)(4), a named Plaintiff must show: (1) that he or she has the ability and incentive to represent the claims of the class vigorously; (2) has obtained adequate counsel; and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class. *Fry*, 198 F.R.D. at 469; *Galt,* 310 F. Supp. 3d at 491.

The adequacy of representation requirement is met here because each Named Plaintiff has the same interests as the Settlement Class Members in the recovery of unpaid overtime wages. There is no conflict between the Plaintiffs and the Settlement Class in this case, and Plaintiffs' claims are in line with the claims of the Class. Plaintiffs have aggressively and competently asserted the interests of the Settlement Class, and Plaintiffs' counsel (preliminarily approved as Class Counsel, Dkt. No. 126, ¶ 6) are skilled and experienced in wage and hour class action litigation, as set forth in the declarations of Class Counsel submitted with Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs. (Dkt. Nos. 128-2, 128-3).

5.   **The Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3)**

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *In re Processed Egg Prods.*, 284 F.R.D. at 263 (citation omitted). For the reasons discussed above, the Settlement Class satisfies the predominance requirement. Plaintiffs assert that all Settlement Class Members were affected by Defendants' policies that allegedly

denied all Settlement Class Members overtime wages. *See, e.g., Chemi*, 2009 WL 1470429 (predominance established where each class member shares a similar legal question: whether the alleged failure to pay them overtime violated applicable wage laws, a common question which predominates over any factual variations of individual worker's claims, such as number of hours worked or hourly wage).

"Superiority" requires the Court to consider "(1) class members' interests in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the likely difficulties in managing a class action." *CertainTeed*, 303 F.R.D. at 214 (citation omitted). Here, allowing the Settlement Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. *CertainTeed*, 303 F.R.D. at 214 (finding class action "superior to other potential avenues of recovery" for plaintiffs and settlement class members; class action "provides persons with smaller claims who would otherwise be economically precluded from doing so with the opportunity to assert their rights," while permitting the "right to opt-out," and, at the same time, "serves to promote judicial economy through the efficient and consistent resolution of multiple claims in a single action").[22] Moreover, the Third Circuit has ruled that there is no reason to preclude federal jurisdiction over class actions

---

[22] Finally, in the context of a settlement-only certification under Rule 23(b)(3), a district court need not consider manageability issues that may have been presented if the case went to trial, because the point of a settlement is that there will be no trial. *CertainTeed*, 303 F.R.D. at 227 n. 1 (citing *Anchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

asserting claims under state statutory wage and overtime laws paralleling the FLSA. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012).

Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class for settlement purposes only.

### G.     The Notice Provisions Were Followed and Provided Adequate Notice To The Class that Satisfies Due Process

The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Bozak v. FedEx Ground Package Sys.*, Inc., No. 11-Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class").

Here, the content of the proposed Notice and manner of distribution negotiated and agreed upon by the parties was "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B). The Notice was highly informative, setting forth, in simple terms (1) the factual and procedural background of this action; (2) the terms of the Settlement, including the Gross Settlement Amount, the amount each Eligible Class Members will receive, the amounts that are being requested for attorneys' fees and costs, settlement administration costs, and service awards; (3) the method of allocation of the Net Settlement Amount among participants; (4) Settlement Class Members' rights to exclude themselves from, or object to, the Settlement; (6) information about the Final Approval Hearing; (7) and contact information for the Settlement Administrator and Class Counsel.  As described above, and in the accompanying Declaration of Brian S. Devery of the Angeion Group, the Notice provisions of the Settlement Agreement were all followed by the Settlement

Administrator. *See generally* Devery Decl.  All of the Eligible Class Members will receive monetary compensation. *See* Schalman-Bergen Decl. ¶ 17. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. CONTE & NEWBERG at §§ 8.21 and 8.39; MANUAL FOR COMPLEX LITIGATION at §§ 21.311 and 21.312.[23]

## H.      The Proposed *Cy Pres* Beneficiary Should be Approved

The Third Circuit instructs that district courts are to assess the fairness, reasonableness, and adequacy of a *cy pres* award under Rule 23(e)(2) by applying the same Girsh factors used to assess other aspects of the class action settlement. *See Google*, 934 F. 3d at 329. *Cy pres* distribution of excess settlement funds is appropriate where some class members are compensated directly and "further individual distributions are economically infeasible." *Id.* at 327 (citation omitted). Courts in the Third Circuit routinely approve distributions to *cy pres* recipients, such as the Philadelphia Legal Assistance. *See In re Baby Products*, 708 F.3d at 172 ("When excess settlement funds remain after claimants have received the distribution they are entitled to under the terms of the settlement agreement, there are three principal options for distributing the remaining funds—reversion to the defendant, escheat to the state, or distribution of the funds *cy pres.* Among these options, *cy pres* distributions have benefits over the alternative choices. [. . .] *Cy pres* distributions also preserve the deterrent effect, but (at least theoretically) more closely tailor the distribution to the interests of class members, including those absent members who have not received individual distributions."). "[C]y pres awards should generally represent a small percentage of total settlement funds," unless a

---

[23] Plaintiffs have requested payment of up to $25,000.00 to the appointed Settlement Administrator, the Angeion Group, which will be paid from the Gross Settlement Amount, subject to the Court's approval. Settlement Agreement ¶ 23(r); Devery Decl. ¶ 2. No Class Member has objected. *See Galt*, 310 F. Supp. 3d at 499 ("In the absence of any objections from class members, the Court finds the requested payment to be fair and reasonable in light of the efforts expended").

district court finds "sufficient justification." *Google*, 934 F.3d at 329 (citing *In re Baby Products*, 708 F. 3d at 174). These conditions are met here.

Settlement checks will be valid and negotiable for a period of 180 days from the date of their issuance. Only after the 180-day check-cashing period has expired will the remaining monies will be paid to the Parties' agreed-upon *cy pres* recipient, Philadelphia Legal Assistance, designated in the Settlement Agreement, and subject to the Court's approval. Settlement Agreement ¶¶ 43-44.

Philadelphia Legal Assistance is a non-profit organization which provides free civil legal services to low-income residents of Philadelphia. One important purpose of Philadelphia Legal Assistance is to provide free employment-related legal services to economically disadvantaged individuals, such as the Pennsylvania Farmworker Project which represents Pennsylvania migrant workers in FLSA and other actions under federal and state worker-protection laws.[24] Further, a Pennsylvania organization is proper since a substantial number of Settlement Class Members worked in Pennsylvania. Schalman-Bergen Decl. ¶ 21. *See Google*, 934 F. 3d at 327 (district court properly approving class action settlement that included *cy pres* distribution of excess settlement funds to third party to be used for purpose related to the class injury).[25]

## I.   The Service Awards To Named Plaintiffs Are Justified and Should Be Approved

Defendants have agreed to pay a service award of $15,000.00 to each of Named Plaintiffs Tyhee Hickman and Shanay Bolden, and $2,500.00 to Named Plaintiff O'Donald Henry, for their efforts in bringing and prosecuting this matter, and in addition, for their general release of all

---

[24] *See* Philadelphia Legal Assistance, Migrant Farmworker Legal Problems. https://www.philalegal.org/taxonomy/term/33 (last visited Jan. 29, 2020).
[25] Further, to the best of the Parties' knowledge, Philadelphia Legal Assistance has "no significant prior affiliation with any party, counsel, or the court." *Google,* 934 F. 3d at 331.

waivable claims against Defendants arising out of their employment. *See* Settlement Agreement ¶¶ 23(r), 24, 35(a). Subject to Court approval, these amounts will be paid to Plaintiffs from the Gross Settlement Amount and shall be in addition to their recovery of compensation towards alleged underpaid overtime by their participation as an Eligible Class Member who will receive a Settlement Award. *Id.* ¶ 23(o), 35(a).

"[C]ourts routinely approve incentive awards to compensate named Plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen*, 197 F.R.D. at 145 (E.D. Pa. 2000). It is particularly appropriate to compensate named representative Plaintiffs with an incentive award where they have actively assisted Plaintiffs' counsel in their prosecution of the litigation for the benefit of a class. *Tenuto v. Transworld Sys., Inc.*, No. 99-cv-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002); *Young v. Tri Cnty. Sec. Agency, Inc.*, 13-cv-5971, 2014 WL 1806881, at *1 (E. D. Pa. May 7, 2014) (approving incentive award for named representative in action alleging FLSA and PMWA violations).

Here, the proposed additional payment is justified by the benefits that Plaintiffs' diligent efforts have brought to the Settlement Class Members. Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. Plaintiffs worked with Class Counsel, providing background information about their employment, about Defendants' policies and practices, and about the allegations in this lawsuit. Schalman-Bergen Decl. ¶ 23.

Plaintiff Hickman and Bolden provided integral assistance to Class Counsel in the prosecution of this class and collective action lawsuit against Defendants. They specifically assisted by: (1) providing the documents and input necessary for drafting each Complaint; (2) consulting with Class Counsel in connection with discovery demands, critical motions, and deposition preparation on a routine basis; (3) preparing and executing declarations; (4) reviewing

their offers of judgement served by Defendant TLT; and (5) not withdrawing as a Named Plaintiff as this class and collective action lawsuit became subject to national media coverage regarding Defendants' alleged delivery practices. Plaintiffs Hickman and Bolden also participated at each mediation (Plaintiff Hickman in person at the first two and then telephonically at the third mediation, and Plaintiff Bolden telephonically at all three mediations). *See id.*

Plaintiff Henry similarly provided critical assistance to Class Counsel. Plaintiff Henry provided Class Counsel with critical insights regarding the alleged deficits with Defendant TLT's payroll data produced, participated in multiple interviews with Class Counsel regarding his experiences as a Delivery Associate, took a personal risk to represent New Jersey Class Members, and rejected an offer of judgement served by Defendant TLT that was hard to resist during the holiday season when his expenses exceeded his earnings. *Id.* at ¶ 24.

These individuals work in an industry in which workers are largely fungible, and they bravely took the risk to step forward on behalf of their fellow workers, knowing that their names would be on a public docket available through an internet search, and knowing that prospective employers might take their participation in such a lawsuit in consideration when making hiring decisions. Despite this, Plaintiffs risked their reputation in the community and in their field of employment in order to participate in this case on behalf of the Class. *Id.* at ¶ 26; *see Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation."). The smaller service award

allotted to Plaintiff Henry simply reflects the shorter length of time that he has served as a Named Plaintiff which began with Plaintiffs' filing of the Third Amended Complaint on September 16, 2019. Schalman-Bergen Decl. ¶ 25; Settlement Agreement ¶ 29(a).

The service awards requested in this case are also in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g.*, *Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named Plaintiff's] cooperation. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (D.N.J. Apr. 8, 2011) (approving service payments of $10,000 to each of eight named Plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney Montgomery*, 2009 WL 2137224 at *12 (approving $20,000 enhancement awards for each of three named Plaintiffs in wage and hour settlement).[26] Moreover, the Notice explicitly informed Settlement Class Members of the amounts of these three service awards to be deducted from the Gross Settlement Amount, and none has objected.

For these reasons, the service award payments of $15,000.00 to each of Named Plaintiffs Tyhee Hickman and Shanay Bolden, and $2,500.00 to Named Plaintiff O'Donald Henry should

---

[26] *See also Tavares v. S-L Distrib. Co., Inc.,* No. 1:13-cv-1313, 2016 WL 1743268, at *9 (M.D. Pa. May 2, 2016) ($15,000 service award each to both named plaintiffs), *Godshall v Franklin Mint Co*., No. 01-cv-6539, 2004 WL 2745890, at *4 (E.D. Pa. Dec. 1, 2004) ($20,000 incentive award approved each to two named plaintiffs); and other cases cited in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of the Settlement Agreement. (Dkt. No. 125-1 at 23 n. 13.)

be finally approved as fair and reasonable.

## IV.     CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this

Motion for Final Approval of Settlement Agreement and enter the accompanying proposed Final

Approval Order.

Dated: February 10, 2020                    Respectfully submitted,


                                            *s/ Sarah Schalman-Bergen*
                                            Sarah R. Schalman-Bergen
                                            Camille Fundora Rodriguez
                                            BERGER MONTAGUE PC
                                            1818 Market Street, Suite 3600
                                            Philadelphia, PA 19103
                                            Telephone: (215) 875-3000
                                            Facsimile: (215) 875-4604
                                            sschalman-bergen@bm.net
                                            crodriguez@bm.net

                                            Ryan Allen Hancock
                                            WILLIG, WILLIAMS & DAVIDSON
                                            1845 Walnut Street, 24th Floor
                                            Philadelphia, PA 19103
                                            Telephone: (215) 656-3679
                                            Facsimile: (215) 561-5135
                                            Email: rhancock@wwdlaw.com

                                            *Attorneys for the Plaintiffs and the Settlement*
                                            *Class*