**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYHEE HICKMAN, SHANAY BOLDEN, and O'DONALD HENRY, individually and on behalf of all persons similarly situated,** | : : : | **Civil Action No.: 2:17-cv-01038-GAM** |
| | : | |
| **Plaintiffs,** | : | **Class & Collective Action** |
| | : | |
| **v.** | : : | |
| | : | |
| **TL TRANSPORTATION, LLC, SCOTT FOREMAN, HERSCHEL LOWE, AMAZON.COM, LLC, and AMAZON LOGISTICS, INC.** | : : : : | |
| | : | |
| **Defendants.** | : | |

**DECLARATION OF SARAH R. SCHALMAN-BERGEN IN SUPPORT OF
PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF THE SETTLEMENT AGREEMENT**

I, Sarah R. Schalman-Bergen, hereby declare that the following is true and correct:

1.      I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted to this Court. I am a shareholder at Berger Montague PC ("Berger Montague") and Co-Counsel for Plaintiffs and the Settlement Class in the above-captioned litigation.

2.      Berger Montague specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States. Berger Montague currently consists of over 65 attorneys who represent plaintiffs in complex civil litigation, class action, and collective action litigation, with offices in Philadelphia, Minneapolis, San Diego, and Washington D.C. The firm's Employment Law Department has extensive experience representing employees in class action and collective action litigation. Berger Montague has played lead roles in major cases for over 49 years, resulting in recoveries collectively totaling well over $30 billion for our clients and the classes they have represented. A copy of our firm's resume is attached as Exhibit

A to my Declaration filed with Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement. (Dkt. No. 125-3, Ex. A.)

3.      I am the Co-Chair of the Employment Law Department at Berger Montague, and I have an extensive background in litigation on behalf of employees. I have served and currently serve as lead or co-lead counsel in many employment class and collective action cases in federal courts across the country, brought under the Fair Labor Standards Act and related state wage laws, including unpaid wages and unpaid overtime compensation cases similar to this Lawsuit. Berger Montague has successfully resolved numerous unpaid overtime cases in district courts across the United States, including in the Eastern District of Pennsylvania and the other district courts in the Third Circuit. This level of experience enabled our firm to undertake this matter and to efficiently and successfully prosecute, negotiate, and resolve the claims on behalf of Plaintiffs and the Settlement Class Members.

4.      Practice in the area of wage and hour class and collective action litigation requires skills, knowledge, and experience in two distinct subsets of the law: (a) the substantive employment law applicable to such cases; and (b) the substantive and procedural aspects of prosecuting class and collective actions. Expertise in one of these areas does not necessarily translate into expertise in the other. Plaintiffs' Counsel in such cases – in order to be successful – must have deep expertise in both. The issues presented in this case required more than just a general appreciation of wage and hour law and/or class action/collective action procedures, as these areas of practice are often changing. Here, Class Counsel's knowledge and expertise was utilized to drill down on and narrow the key issues and ultimately, was leveraged to reach a fair and reasonable $1.8 million settlement in an efficient manner.

5.      My firm served as co-lead counsel in the case with Willig, Williams & Davidson.

Our firms worked together on the case and divided work tasks so as to avoid duplication of effort in representing Plaintiffs and Settlement Class Members.

6.      I respectfully submit this declaration in support of Plaintiffs' Unopposed Motion for Final Approval of the Settlement Agreement. The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify thereto.

7.      This lawsuit concerns TL Defendants' alleged unlawful policy and practice of failing to pay overtime compensation to Delivery Associates who, until April 15, 2017, were paid pursuant to a day rate compensation system in violation of the FLSA, and Pennsylvania, Maryland and New Jersey state laws, and whether Amazon bears legal responsibility for those violations. Specifically, Plaintiffs argued that because Defendant TLT admitted that Delivery Associates were paid other forms of compensation for services, the exception to the general rule that *overtime must be paid at a time-and-a-half rate* as set forth in 29 C.F.R. § 778.112 would not apply, and therefore, *Defendants were wrong to pay overtime at only the half-time rate*. *See* 29 C.F.R. 778.112 (permitting overtime to be paid at a half-time rate where an employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and *if he receives no other form of compensation* for services). Defendants raised various factual and legal arguments disputing that damages would be ordered to paid at a time and half rate. Ultimately, the Gross Settlement Amount that was negotiated and agreed upon ($1,800,000) represents a compromised resolution on this issue.

8.      The Parties participated in two mediation sessions before Hon. James R. Melinson, Chief U.S. Magistrate Judge for the Eastern District of Pennsylvania (Ret.), at JAMS in Philadelphia on October 17, 2017 and on March 15, 2018, and in one mediation session before Stephen Sonnenberg, Esq., an experienced mediator, on July 29, 2019. Following the exchange

of substantial informal discovery, extensive arm's-length settlement negotiations, three mediations, and extensive litigation, including TLT's service of offers of judgment upon 185 of the Opt-In Plaintiffs, the Parties were able to reach a settlement of this matter.  The terms of the Parties' settlement are set forth in the Settlement Agreement (the "Settlement Agreement" or "Agreement") filed on September 18, 2019. (Dkt. No. 125-2.)

9.      The Settlement provides Plaintiffs and Settlement Class Members with substantial benefits without having to wait for years of drawn out litigation.

<u>**Summary of Settlement Terms**</u>

10.     The Settlement includes a gross cash payment by TLT of One Million Eight Hundred Thousand Dollars ($1,800,000.00) (the "Gross Settlement Amount"). Defendant TLT shall be responsible for the employer's share of applicable payroll taxes attributable to the wage portions of the Settlement Awards *in addition to* the Gross Settlement Amount. After deducting attorneys' fees and costs, settlement administration costs, and service awards to the Named Plaintiffs in the amounts set forth in the Settlement Agreement, and subject to the Court's approval, the balance of the funds of $1,102,500 (the "Net Settlement Amount") will be apportioned among all Eligible Class Members

11.     Specifically, every Eligible Class Member will receive a *pro rata* share of the Net Settlement Amount based on the number of weeks when he or she worked more than four days per week between March 8, 2014 through April 15, 2017 (the date when TLT changed its pay policies and practices). The Amount of $100.00 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Member so that each Eligible Class Member receives at least $100.00 in exchange for his or her release of claims in this Settlement Agreement.

12.     If the Settlement is approved, Class Counsel estimates that the average award paid to Settlement Class Members will be approximately $1,460.26, even after settlement administration costs, the Named Plaintiffs' service awards, and attorneys' fees and costs are deducted. As of the date of this Declaration, there are 755 Eligible Class Members.

13.     There is no claims process, and a Settlement Class Member need not take any action in order to receive a Settlement Award.

14.     Notably, the Net Settlement Amount represents approximately 157% of Class Counsel's calculations of unpaid wages owed using the most favorable assumptions on time worked at a half time rate. And, none of the funds from the Gross Settlement Amount will revert to Defendants.[1]

15.     The proposed allocation formula for distributing the Net Settlement Fund as set forth in the Settlement Agreement is also fair and reasonable. Settlement Class Members do not need to take any action in order to receive a Settlement Award. Under the proposed allocation formula, each Eligible Class Member will receive a minimum amount of $100.00 in addition to the settlement shares that bear a reasonable relationship to his/her potential damages (*i.e.*, a *pro rata* portion of the Net Settlement Amount). Settlement Agreement ¶ 37(b)(i)(ii). All Settlement Award determinations will be based on Defendant TLT's previously produced payroll and

---

[1] In preparing the Motion for Final Approval of the Settlement Agreement, Class Counsel observed that the Notice distributed to the Settlement Class contained a typo that incorrectly stated, "Uncashed checks from Eligible Class Members who worked outside of Pennsylvania, Maryland, and New Jersey shall be returned to Defendant TLT, and those Eligible Class Members shall not release any claims against Defendants." Settlement Agreement, Ex. A. However, any uncashed checks from any Eligible Class Member will ***not*** revert to Defendants, but rather will be distributed to the *cy pres* subject to Court approval.  Because this Settlement Agreement actually provides for more favorable treatment of the money than this typo stated, and because Settlement Class Members will receive a check regardless of whether they submit a Claim Form, Class Counsel does not believe that the typo implicates any due process concerns or changes whether the settlement should be finally approved.

timekeeping data for Settlement Class Members. *Id.* at ¶ 38. This allocation formula considers that Settlement Class Members worked different amounts of overtime hours on a weekly basis, and, if they prevailed, would be entitled to different amounts of damages. This formula for distribution of the Net Settlement Fund based on Qualifying Workweeks is similar to those found to be fair and reasonable in similar cases, and accordingly warrants approval.

16.    Furthermore, the formula takes into account that many of these Settlement Class Members also had previously considered and turned down offers of judgment served on them by TLT, at the risk that costs would be taxed against Plaintiffs if the amount finally obtained was not more favorable than the unaccepted offer. *See* Rule 68(d). The Settlement Agreement provides Settlement Class Members with more money than was offered by the TLT Defendants in their offers of judgment (Settlement Agreement ¶ 37(b)(iii)), and also provides that 16 Settlement Class Members who previously accepted their offers of judgment will be entitled to the difference between this proposed settlement and the amounts they accepted, in light of the fact that the Court's orders only dismissed their claims against TLT. *See* Dkt. Nos. 50, 111, 114 (Orders entering Partial Judgment pursuant to Rule 54(b) in favor of Opt-In Plaintiffs and against Defendant TL Transportation).[2]

17.    Pursuant to the terms of the Settlement Agreement, payment of the settlement awards to Eligible Class Members will be made within thirty (30) days after the Effective Date or as soon as reasonably practicable. Settlement checks will be valid and negotiable for a period of 180 days from the date of their issuance. The entirety of the Net Settlement Fund will be disbursed

---

[2] TLT provided offers of judgment to 186 Eligible Class Members. Of those Eligible Class Members, 170 rejected TLT's offers and their calculated minimum settlement awards were more than the offers of judgment. On average, the awards were 26% more than the offers of judgment, the average difference being $1,867.14

to all Eligible Class Members. If any monies remain in the Qualified Settlement Fund at the end of the 180-day check-cashing period, those monies shall be paid to Philadelphia Legal Assistance, the Parties' agreed-upon *cy pres* recipient, subject to the Court's approval. There will be no reversion of any portion of the funds to Defendants.

18.     Settlement Administrator will also distribute the Settlement Awards and coordinate tax administration. The Settlement Administrator has agreed to perform administration duties for an amount not to exceed $25,000.00.

19.     The Settlement release provisions are limited to wage and hour claims that occurred prior to April 15, 2017, and Settlement Class Members will not release their FLSA claims unless they cash or deposit their settlement check. The Settlement contains no confidentiality or indemnification provisions, nor any prohibitions on future employment. *See* generally Settlement Agreement.

20.     The Settlement is fair, reasonable and extremely beneficial to the members of the Settlement Class. The Settlement Agreement offers the Class significant advantages over continued prosecution of their case against Defendants: members of the Settlement Class will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case, in which Defendant asserts various defenses to its liability. In exchange, the Settlement Agreement contains a release of all FLSA and state wage and hour claims for unpaid overtime wages and liquidated or other damages from March 8, 2014 through April 15, 2017. No Eligible Class Member shall be deemed to release an FLSA claim unless he/she cashes his/her Settlement Award check.

21.     Settlement checks will be valid and negotiable for a period of 180 days from the date of their issuance. Only after the 180-day check-cashing period has expired will the remaining

monies will be paid to the Parties' agreed-upon *cy pres* recipient, Philadelphia Legal Assistance, designated in the Settlement Agreement, and subject to the Court's approval. Philadelphia Legal Assistance is a non-profit organization which provides free civil legal services to low-income residents of Philadelphia. One important purpose of Philadelphia Legal Assistance is to provide free employment-related legal services to economically disadvantaged individuals, such as the Pennsylvania Farmworker Project which represents Pennsylvania migrant workers in FLSA and other actions under federal and state worker-protection laws.[3] Further, a Pennsylvania organization is proper since a substantial number of Settlement Class Members worked in Pennsylvania.

### Service Awards to Named Plaintiffs

22.     Defendants have agreed to pay a service award of $15,000.00 to each of Named Plaintiffs Tyhee Hickman and Shanay Bolden, and $2,500.00 to Named Plaintiff O'Donald Henry, for their efforts in bringing and prosecuting this matter, and in addition, for their general release of all waivable claims against Defendants arising out of their employment. Subject to Court approval, these amounts will be paid to Plaintiffs from the Gross Settlement Amount and shall be in addition to their recovery of compensation towards alleged underpaid overtime by their participation as an Eligible Class Member who will receive a Settlement Award.

23.     The proposed additional payment is justified by the benefits that Plaintiffs' diligent efforts have brought to the Settlement Class Members. Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. Plaintiffs worked with Class Counsel, providing background information about their employment, about Defendants' policies and practices, and about the allegations in this lawsuit. Plaintiff Hickman and Bolden provided integral

---

[3]  *See* Philadelphia Legal Assistance, Migrant Farmworker Legal Problems, https://www.philalegal.org/taxonomy/term/33 (last visited Jan. 29, 2020).

assistance to Class Counsel in the prosecution of this class and collective action lawsuit against Defendants. They specifically assisted by: (1) providing the documents and input necessary for drafting each Complaint; (2) consulting with Class Counsel in connection with discovery demands, critical motions, and deposition preparation on a routine basis; (3) preparing and executing declarations; (4) reviewing their offers of judgement served by Defendant TLT; and (5) not withdrawing as a Named Plaintiff as this class and collective action lawsuit became subject to national media coverage regarding Defendants' alleged delivery practices. Plaintiffs Hickman and Bolden also participated at each mediation (Plaintiff Hickman in person at the first two and then telephonically at the third mediation, and Plaintiff Bolden telephonically at all three mediations).

24.     Plaintiff Henry similarly provided critical assistance to Class Counsel. Plaintiff Henry provided Class Counsel with critical insights regarding the alleged deficits with Defendant TLT's payroll data produced, participated in multiple interviews with Class Counsel regarding his experiences as a Delivery Associate, took a personal risk to represent New Jersey Class Members, and rejected an offer of judgement served by Defendant TLT that was hard to resist during the holiday season when his expenses exceeded his earnings.

25.     The smaller service award allotted to Plaintiff Henry simply reflects the shorter length of time that he has served as a Named Plaintiff which began with Plaintiffs' filing of the Third Amended Complaint on September 16, 2019.

26.     These individuals work in an industry in which workers are largely fungible, and they bravely took the risk to step forward on behalf of their fellow workers, knowing that their names would be on a public docket available through an internet search, and knowing that prospective employers might take their participation in such a lawsuit in consideration when making hiring decisions. Despite this, Plaintiffs risked their reputation in the community and in

their field of employment in order to participate in this case on behalf of the Class.

27.     For these reasons, the service award payments of $15,000 to each of Named Plaintiffs Tyhee Hickman and Shanay Bolden, and $2,500 to Named Plaintiff O'Donald Henry should be finally approved as fair and reasonable.

## Settlement Administration

28.     The Angeion Group ("Angeion") was retained as Settlement Administrator to distribute the Notice, Settlement Awards and coordinate tax administration. Angeion has agreed to perform administration duties for an amount not to exceed $25,000.

29.     The response to the settlement from Class Members has been overwhelmingly positive. Class Counsel and Defendants' Counsel were responsible for receiving objections and the Settlement Administrator was responsible for receiving requests for exclusion from the Settlement. **As of the date of this filing, no Settlement Class Member has objected and only one Class Member has requested to be excluded from the settlement**.

## The Settlement is an Excellent Result for the Class

30.     Plaintiffs believe that the Settlement is an excellent result for the members of the Settlement Class. Defendants were prepared to vigorously defend this action by asserting a number of defenses to liability, and dispute that the claims presented were appropriate for class certification or FLSA collective action treatment. While the Court had already ruled on liability in granting Plaintiffs' Motion on the Pleadings (which the Court converted into a Motion for Summary Judgment) holding that unpaid wages were owed where a settlement Class Member worked more than forty hours per week—the Parties vigorously disputed a number of legal and factual issues that would have impacted the case going forward, including, but not limited to the following:

1)     the amount of time that Delivery Associates spent performing their work;[4]

2)     whether damages should be paid at a half-time rate or a time-and-a-half rate

3)     whether Defendants would be able to meet their burden of demonstrating that the TL Defendants' unlawful pay system was taken in good faith with reasonable grounds for their belief that they were complying with the FLSA pursuant to 29 U.S.C. § 216(b) such that they would avoid the imposition of liquidated damages;

4)     whether Amazon would be held liable for the alleged pay violations of TLT;

5)     whether the Court would certify a class action under Rule 23 or grant final certification of a collective action under the FLSA; and

6)     whether Plaintiffs and/or Defendants would appeal myriad legal or factual determinations, including class/collective action treatment, liability, and damages.

As a result, continued litigation would require significant factual development and any verdict at trial could be delayed based on appeals by Defendants.

31.     Among the risks particular to this case, first, there was a risk that Plaintiffs would not succeed in maintaining a collective or class through trial. Accordingly, the risks and costs of continued litigation are likely to be much higher than those of a typical single party case. Second, a trial on the merits would involve significant risks for Plaintiffs as to both the liability of joint employment by Amazon as well as the appropriate rate and calculation of damages, and any verdict at trial would be delayed by appeals by Defendants. Third, the FLSA provision at issue was hotly contested, with each side citing factual and legal support in its favor: Plaintiffs argued that, because Defendant TLT admitted that Delivery Associates were paid other forms of compensation for

---

[4] Because the TL Defendants did not keep accurate time records of the time that Delivery Associates worked during the relevant time period, the Parties had to use various assumptions to estimate time worked for purposes of calculating damages. Both parties modeled these damages by analyzing Amazon's delivery data, which includes various times when the Delivery Associates scan and/or deliver packages to Amazon customers. The parties engaged in numerous meet and confer calls so that Class Counsel could understand the data and could engage in fully informed settlement negotiations. As part of their exposure analysis, Class Counsel's in house data analyst matched payroll records produced by TLT with the delivery data produced by Amazon, and built in various factual assumptions on time worked in addition to the time that was captured by Amazon's delivery data. Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this issue.

services, the exception to the general rule that overtime must be paid at a time-and-a-half rate as set forth in 29 C.F.R. § 778.112 would not apply. *See* 29 C.F.R. § 778.112 (permitting overtime to be paid at a half time rate where an employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services). In response, Defendants raised various factual and legal arguments disputing that damages would be ordered to be paid at a time-and-a-half rate. Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on this central issue.

32.     In this case, the proposed Settlement was reached after contested litigation, extensive factual discovery and a series of serious arm's-length negotiations through the ADR process at various junctures over the course of two years. Specifically, the Settlement was reached only after (1) the exchange of substantial documents and records, including electronic payroll records showing days worked and all forms of compensation received by Plaintiffs and Class Members during the relevant time periods; (2) multiple pre-settlement conference calls; (3) multiple depositions; (4) extensive briefing and oral argument on a motion for summary judgment; (5) preparation and exchange of mediation statements; and (6) three in person-mediations in Philadelphia, Pennsylvania before experienced mediators, which included additional extensive arm's-length negotiations between counsel for the Parties both before and after the mediation.

33.     For example, following the first two unsuccessful ADR attempts, Plaintiffs filed a partial judgment on the pleadings regarding Defendant TLT's payment scheme. The Court after briefing and oral argument converted the motion to a partial motion for summary judgment. (Dkt. Nos. 67, 69.) The Court granted Plaintiffs' motion on August 16, 2018. (Dkt. No. 81.) In addition, litigation of this matter was complex and laborious. The Parties stipulated to notice after the

Plaintiffs filed their motion for conditional certification and to facilitate notice pursuant to 29 U.S.C.§ 216(b) (Dkt. Nos. 46-64), and Plaintiffs then oversaw the notice administration process in which notice was distributed on August 10, 2018 to 757 individuals. (Dkt. Nos. 13, 83, 85, 87-90, 94-101, 107-110, 115). Plaintiffs also filed two Amended Complaints, responded to a Motion to Dismiss, conducted three (3) depositions of Defendant TLT's representative, and responded to hundreds of offers of judgment from Defendant TLT. Prior to the mediations, the Parties engaged in multiple pre-mediation meet and conference calls. In preparation for these mediations, Class Counsel prepared and provided a comprehensive damages analysis to Defendants' counsel. There was sufficient investigation and discovery conducted in this matter to allow counsel and the Court to act intelligently concerning the settlement of the claims.

34.     Further, because TLT was not able to produce complete time records for Delivery Associates during the relevant time period due to changes in its timekeeping programs, the Parties had to use various assumptions to estimate time worked for purposes of calculating damages. Both Parties modeled these damages by analyzing Amazon's delivery data, which includes various times when the Delivery Associates scan and/or deliver packages to Amazon customers. The Parties engaged in numerous meet and confer calls so that Class Counsel could understand the data and could engage in fully informed settlement negotiations.

Dated: February 10, 2020                    /s/ Sarah R. Schalman-Bergen
                                            Sarah R. Schalman-Bergen